IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION

**FILED**

OCT 1 0 2000

Date 8:00-CV-2080-T-26C    Time

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IMC MORTGAGE COMPANY, as
successor in interest by merger with
Industry Mortgage Company, L.P.

    Plaintiff,

v.

INTERSTATE RESOURCES CORP.,

    Defendant.

_____/

Case No: _____

Division: _____

## COMPLAINT

Plaintiff, IMC Mortgage Company ("IMC"), through its undersigned counsel, hereby sues

Interstate Resources Corp. ("IRC") and states as follows:

### General Allegations

1.    This is an action for damages in excess of $15,000.00, exclusive of interest, costs

and attorneys' fees.

2.    IMC is a Florida corporation with its principal place of business in Hillsborough

County, Florida.  IMC is the successor in interest by merger with Industry Mortgage Company,

L.P.

3.    IRC is a corporation which is organized and existing under the laws of the State

of Indiana.

4.    IMC is engaged in the business of purchasing and selling loans secured by various

mortgage liens against real property.



5.     Upon information and belief, IRC is engaged in the business of originating, selling and servicing loans secured by mortgage liens against real properties in various states.

6.     On November 18, 1996, IMC and IRC executed an agreement titled Master Agreement for the Sale and Purchase of Mortgages and an Addendum (collectively the "Contract").

7.     A true and correct copy of the Contract is attached hereto as **Exhibit "A."**

8.     Jurisdiction is proper in this Court as the material actions occurred in Hillsborough County, and the cause of action accrued in Hillsborough County, moreover, IRC has submitted to the jurisdiction of this Court under paragraph X(M) of the Contract.

9.     All conditions precedent to the institution and maintenance of this action have occurred or have been performed.

10.     IMC has a right to recover its attorneys fees and costs incurred in connection with this action under the terms of the Contract.

11.     IMC has retained the law firm of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. to represent its interest in this case and is obligated to pay it a reasonable fee for its services.

## COUNT I
### *Breach of Contract*

12.     The allegations set forth in the General Allegations above are realleged and incorporated by reference as though fully set forth herein.

-2-

13.    During the term of the Contract, IRC sold IMC promissory notes and mortgages (collectively the " Loans") which secured the promissory notes with parcels of real property as follows:

| Borrower | Loan No. | Location of collateral |
|---|---|---|
| Jose Cruz | 576355 | 151 Beach 96th Street, Rockaway, NY (the "151 Beach 95th Street Property") |
| Jose Cruz | 526806 | 152 Beach 96th Street, Rockaway, NY (the "152 Beach 96th Street Property") |
| Udi Farin | 722165 | 142-144 Beach 96th Street, Rockaway, NY (the "142-144 Beach 96th Street Property") |
| Eyal Cohen | 526772 | 146 Beach 9th Street, Rockaway, NY (the "146 Beach 9th Street Property") |
| Mariana Sanchez | 526756 | 145 Beach 96th Street, Rockaway, NY (the "145 Beach 96th Street property") |

14.    IRC provided IMC with an appraisal of each of the above-referenced properties (the " Appraisals") when it sold IMC the Loans.

15.    True and correct copies of the Appraisals are attached hereto as **Composite Exhibit "B."**

16.    The Appraisals were not performed in accordance with industry standards, and contained material inaccuracies which lead to the over-valuation of each of the above-reference properties (the "Properties").

17.    IMC has obtained re-appraisals of the Properties (collectively the "Re-Appraisals").

18.    Each of the Re-Appraisals is more than 10% lower than its corresponding Appraisal.

19.    Under the terms of the Contract, IRC represented and warranted that the Appraisals provided to IMC in connection with each loan purchased was performed in accordance with the industry standards as set forth within the Contract.

-3-

20. The Contract provides that if IMC obtains a reappraisal of a property which secures a loan that IMC has purchased from IRC and the reappraisal determines the value of the subject property to be more than ten percent (10%) less than the amount of the appraisal that IRC submitted to IMC in connection with the sale of the Loan, then IMC may demand that IRC repurchase the subject loan for the "Buy-Back Price" as defined within the Contract, and IRC is further required to pay IMC for the cost of the re-appraisal.

21. On or about June 9, 2000, IMC demanded that IRC repurchase the Loans based upon the above referenced breaches, for the following amounts:

| | |
|---|---|
| Cruz Loan #576355 Principal (plus interest after July 1, 2000 of $37.28 per day) | $111,092.43 |
| Cruz Loan #526806 Principal (plus interest after July 1, 2000 of $43.49 per day) | 126,996.57 |
| Cruz Loan #574004 Principal (plus interest after July 1, 2000 of $37.13 per day) | 110,637.83 |
| Farin Loan #722165 Principal (plus interest after July 1, 2000 of $50.59 per day) | 160,583.52 |
| Cohen Loan #526772 Principal (plus interest after July 1, 2000 of $43.67 per day) | 138,608.28 |
| Sanchez Loan #526756 Principal (plus interest after July 1, 2000 of $44.97 per day) | 136,900.04 |

but IRC has failed and or refused to do so.

22. A true and correct copy of IMC's letter demanding that IRC repurchase of the Loans is attached hereto as **Exhibit "C."**

23. IRC has materially breached the terms of the Contract in connection with the sale of the Loans to IMC, and IMC has suffered damages as a direct proximate result of these breaches.

**WHEREFORE**, IMC hereby demands judgment against IRC:

a. Awarding damages as established by the evidence;

b. Requiring IRC to repurchase the Loan;

c. Awarding attorneys' fees and costs incurred in connection with the prosecution of this action; and

-4-

d.    Awarding such further relief as this Court deems appropriate.

RICHARD J. MCINTYRE
Florida Bar No. 962708
TRENAM, KEMKER, SCHARF, BARKIN,
  FRYE, O'NEILL & MULLIS
Professional Association
2700 Bank of America Plaza
Post Office Box 1102
Tampa, Florida 33601
Telephone: (813) 223-7474
Telefax: (813) 229-6553
Attorneys for Plaintiff

Dated this 27th day of August 2000.

# EXHIBIT A

# MASTER AGREEMENT FOR
# SALE AND PURCHASE OF MORTGAGES

## BY AND BETWEEN

## INDUSTRY MORTGAGE COMPANY, L.P.

### BUYER

### AND

### SELLER

# MASTER AGREEMENT
## FOR
## SALE AND PURCHASE OF MORTGAGES


This Master Agreement for Sale and Purchase of Mortgages is made this _18_ day of _NOV_ , 199_6_, by and between Industry Mortgage Company, L.P. located at 3450 Buschwood Park Drive, Ste. 250, Tampa, FL 33618 a limited partnership organized and existing under the laws of the State of Delaware ("Buyer") and _INTERSTATE RESURCE_ . located at _254 Pt Pik LENBRIGH er CT570_ .a corporation organized and existing under the laws of the state of _NY_ ("Seller").


## I.     RECITALS

WHEREAS, the Seller desires from time to time to offer for sale to the Buyer and the Buyer desires from time to time to purchase from the Seller on the terms and subject to the conditions set forth herein certain Loans owned by the Seller evidenced by notes and secured by mortgages of the agreed-upon priority on real property owned by the borrowers ("Borrowers").

WHEREAS, the Buyer and the Seller desire to enter into this agreement to govern the sale and purchase of said Loans.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants contained herein, the parties hereto hereby agree as follows:


## II.     DEFINITIONS

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

(A)     **Agreement:**   shall mean this Agreement as same may be amended and supplemented from time to time.  The parties agree that this Agreement shall be used as the master sale and purchase agreement for those Loans, purchased by Buyer from Seller in the future, unless otherwise agreed in writing by the parties.

(B)     **Loan to Value Ratio:**  shall mean the sum of the original principal amount of the Mortgage Loan and the outstanding principal balance of the first Mortgage (the "First Mortgage"), if any, at the time of origination of the Mortgage Loan divided by the lesser of the original purchase price of the Mortgaged Property if Borrower purchased the Mortgaged Property within twelve (12) months of the Mortgage Loan origination date or the appraised value of the Mortgaged Property.

(C)    Loan:  the Note, the related Mortgage and the Related Assets are referred to as "Loan," and collectively as "Loans."

(D)    "Marked-Up" Title Insurance Policy, Binder or Certificate:  a title insurance policy as further defined in Article V(B)9 of this Agreement in which all liens, mortgages, claims, assessments, defects, encumbrances and other exceptions affecting or against the Mortgaged Property have been removed and are insured against in favor of Buyer by the title insurance company unless otherwise agreed or approved by the Buyer in writing.

(E)    Mortgage:  the Note, bond, deed of trust, Mortgage, mortgage warranty, extension agreement, assumption of indebtedness, assignment and any other documents constituting the basic instruments for real estate security on real property owned by the Borrower in the state in which the Mortgaged Property is located.

(F)    Essential Mortgage File Documents:  as to each Mortgage Loan, the original Note and Mortgage, or in the event the original Mortgage is out for recordation, a certified true copy thereof, title insurance policy including endorsements or "marked-up" title commitment, Related Assets and the additional documents as described in Exhibit "A," attached hereto and made a part hereof, as applicable.

(G)    Mortgage Loans:  the Loans identified in the Schedule of Loans delivered as from time to time are subject to this Agreement.

(H)    Mortgaged Property or Subject Property:  the residential real property subject to the Mortgage which secures the Mortgage Loan.

(I)    Mortgagor or Borrower:  the obligor under a Mortgage Loan.

(J)    Note:  the original Note or bond or other evidence of indebtedness evidencing the indebtedness of the Borrower/Mortgagor under a Mortgage Loan.

(K)    Purchase Price:  the purchase price for the Loan(s) described on each Schedule of Loans delivered shall be an amount as of the Settlement Date equal to the sum of: (1) unpaid principal balances of the Note(s); (2) all interest accrued (up to but not including the Settlement Date) but unpaid on the Note(s) (prorated on a 365-day year); and (3) any premiums due Seller, if applicable, in accordance with the Approval Advice or Schedule of Loans delivered; (4) less any discount due Buyer, if applicable, in accordance with the Approval Advice or Schedule of Loans delivered.

(L)    Related Assets:  the documents as further defined in Article IV(A)(iv) of this Agreement.

(M)    Settlement Date:  the date of the funding or payment of Purchase Price by the Buyer for Loans purchased pursuant to this Agreement.  Each Settlement shall be held at the offices of Buyer located at 3450  Buschwood Park Drive,  Ste 250, Tampa, FL   33618.

(N)    Underwriting Guidelines/Purchasing Guidelines:  **Exhibit "B"** attached hereto and made a part hereof as may from time to time be amended by Buyer.

## III.    OFFER TO SELL AND ACCEPTANCE OF OFFER

(A)    Offer.  The Seller may offer from time to time to submit to the Buyer a list of the Loans, along with the Essential Mortgage File Documents, as defined herein, for each of the Loans, for the Buyer's review.  The Buyer shall then deliver to the Seller a Schedule of Loans delivered on which the Buyer has indicated which Loans, if any, the Buyer is offering to purchase from the Seller and the Purchase Price for the Loans Buyer is willing to purchase.

(B)    Acceptance.  The Seller shall endorse the Notes and provide a blank assignment of Mortgages in recordable form signed by Seller, evidencing the Loans on which the Seller agrees to accept the Buyer's offer to purchase.  Such endorsement shall constitute the Seller's acceptance of the Buyer's offer to purchase the indicated Loans pursuant to the terms and conditions of this Agreement.

On occasion, Buyer may issue to Seller a written Approval Advice in the form attached hereto, made a part hereto and marked **Exhibit "C,"** to cover a specific Loan purchase by Buyer hereunder which is approved by Buyer in advance of said specific Loan being made by Seller. Any purchase made hereunder that is subject to an Approval Advice shall be governed first by the terms of such Approval Advice and then by the terms of this Agreement, and to the extent of a conflict between the Approval Advice and this Agreement, the Approval Advice shall govern for that purchase and only that purchase.

Buyer shall have the absolute and sole discretion and option to agree or decline to purchase any Loan(s) submitted by Seller for review.

## IV.    PURCHASE AND SALE OF LOANS

(A)    **Delivery of Loans.**

On or before the business day immediately preceding each Settlement Date, the Seller shall deliver to the Buyer the following for each Loan purchased:

(i) Those Loans described by the Buyer on each Schedule of Loans delivered which are purchased by Buyer pursuant to this Agreement.

(ii)  The agreed-upon priority liens and/or Mortgages, or a true certified copy thereof, on Subject Property.

3

(iii)  The original Note(s) and the Mortgage(s), or a true certified copy thereof, endorsed by an authorized Officer of Seller to the Buyer pursuant to the language set forth on **Exhibit "D."** attached hereto and made a part hereof together with an individual assignment to the Buyer (certified copy of the recorded assignment) and originals of all intervening assignments, if any, of the Seller's beneficial interest in the Mortgage, showing a complete chain of title from origination to the Seller, including warehousing assignment, with evidence of recording thereon and a release of any intervening assignee's interest, if any, in the event that such assignment was not recorded.

(iv)  Any and all documents, instruments, collateral agreements, and assignments and endorsements for all documents, instruments and collateral agreements, referred to in the Notes and/or Mortgages or related thereto, including, without limitation, current insurance policies (private mortgage insurance, if applicable; flood insurance, if applicable; hazard insurance; title insurance; and other applicable insurance policies) covering the Subject Property or relating to the Notes and all files, books, papers, ledger cards, reports and records including, without limitation, loan applications, Borrower financial statements, separate assignment of rents, if any, credit reports and appraisals, relating to the Loans (the "Related Assets"). In all cases, the Related Assets shall be the original documents.

(v)  The Essential Mortgage File Document List, including all writings evidencing the Loan(s) purchased by Buyer. In all cases, these documents shall be the original documents.

(vi)  In the event that Seller cannot deliver to Buyer a duly recorded assignment of Mortgage or any other document required to be recorded under this Agreement on the Settlement Date solely because of a delay caused by the public recording office when such document(s) has been delivered for recordation, Seller shall deliver to the Buyer a certified copy of each such document(s) with a statement thereon signed by an Officer of the Seller certifying each to be a true and correct copy of documents(s) delivered to the appropriate public recording official for recordation. Seller shall deliver to Buyer such recorded document(s) with evidence of recording indicated thereon no later than 15 days after Seller receives such document, but in any event, no later than 120 days from the Settlement Date. In the event that missing documents are not received by the Buyer within the above-stated time frame, strictly as a result of a delay caused by the public recording office(s), Buyer may extend this period of document delivery time by written consent if in Buyer's sole opinion the Seller is using prudent and diligent follow-up.

(B)  **Purchase and Sale.** On each Settlement Date hereunder, Seller shall sell, assign, transfer, convey and deliver to Buyer all of its right, title and interest in and to the Loans, assets and documents as more fully enumerated and set forth in Article IV(A)(i) through (vi) inclusive, which is incorporated herein by reference.

(C)  **Purchase Price.** The Purchase Price for the Loans described on each Schedule of Loans delivered shall be an amount as defined in Article II(K) above. The Purchase Price shall be payable as set forth in Article IV(D) below.

4

(D)    **Payment of Purchase Price.**  On each Settlement Date. the Purchase Price shall be paid as follows:  The Buyer shall deposit funds by wire to the Seller's bank at: _____ _Houston Savings Bk_ _____ .

(E)    **Premium Rebate.**  In the event that a premium is paid by the Buyer to the Seller on a Loan and such Loan is prepaid by the Borrower. other than by a refinancing by the Buyer or any of its subsidiaries or affiliates or a refinancing by the Seller which is purchased by the Buyer, (Seller agrees to give Buyer a right of first refusal to repurchase the aforementioned refinance, and in the event Buyer repurchases said refinance, Buyer agrees to pay Seller a premium, if any, on the new advance over and above the refinanced amount only.  In the event Buyer elects not to purchase said refinance, then Seller shall pay to Buyer the premium rebate as set forth below). within twenty-four (24) months of Settlement Date, the Seller shall. upon demand by the Buyer, refund to the Buyer. in the appropriate percentage specified below. the premium paid by the Buyer to the Seller. In the event such Loan is prepaid within one hundred eighty (180) days of the Settlement date of such Loan. the refund due Buyer from Seller will equal one hundred (100%) percent of the premium paid to Seller by Buyer for such Loan.  In the event such Loan is prepaid during the period of one hundred eighty-one (181) days to three hundred and sixty (360) days of the Settlement Date of such Loan, the refund due Buyer from Seller will equal seventy-five (75%) percent of the premium paid to Seller by Buyer.  In the event such Loan is prepaid during the period of three hundred and sixty-one (361) days to five-hundred and forty (540) days of the Settlement Date of such loan, the refund due Buyer from Seller will equal fifty (50%) percent of the premium paid to Seller by Buyer.  In the event such loan is prepaid during the period of five hundred and forty-one (541) days to seven hundred and thirty (730) days of the Settlement Date of such loan, the refund due Buyer from Seller will equal twenty-five (25%) percent of the premium paid by Buyer to Seller.  In the event such Loan is prepaid later than twenty-four (24) months of the Settlement Date of such Loan, no refund shall be due; however, in the event any Loan contract provides for a prepayment penalty, and said prepayment penalty is collected by Buyer (Buyer agrees to use its best efforts to collect said prepayment penalty), then Buyer agrees to offset the amount of any prepayment penalty against any Premium Rebate due Buyer from Seller. _PLEASE SEND 1/n Pro Rata Addendum_

## V.    REPRESENTATIONS AND WARRANTIES OF THE SELLER

(A)    **Representations and Warranties of the Seller - General**.  It is understood and agreed by Seller and Buyer that as a material inducement to Buyer to enter into this Agreement the Seller hereby represents and warrants to the Buyer as follows:

1.    The Seller is an organization as set forth in the introductory paragraph of this Agreement and is duly organized, validly existing and in good standing under the laws of the state of its organization and existence, and is duly qualified as a **\*\*CORPORATION \*\*** in all jurisdictions wherein the character of the property owned or leased or the nature of the business transacted by it makes qualification as a foreign organization necessary.

2.    The execution and delivery of the Agreement by the Seller and the performance by the Seller of the obligations to be Performed by it hereunder have been duly

authorized by all necessary corporate or other similar action. Prior to the first Settlement Date, the Seller shall deliver to the Buyer certified copies of relevant corporate or similar resolutions and a good standing certificate for the state of its organization and, as requested by Buyer, for each state in which Seller is registered to do business. It is within Buyer's discretion to periodically request good standing certificates for all states in which Seller is registered to do business.

3.    The execution and delivery of this Agreement by the Seller and the performance by the Seller of the obligations to be performed by it hereunder do not, and will not, violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to the Seller or to the charter or bylaws of the Seller. All parties which have had any interest in the Mortgages, whether as Mortgagee, assignee (other than Buyer or assignee of Buyer) or pledgee are (or during the period in which they held and disposed of such interest, were) in compliance with all applicable licensing requirements of the federal, state, and local government wherein the Subject Property is located.

4.    The execution and delivery of this Agreement by the Seller and the performance by the Seller of the obligations to be performed by it hereunder do not and will not result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease or instrument to which the Seller is a party or by which it or its properties be bound or affected.

5.    This    Agreement constitutes, when duly executed and delivered by the Seller, a legal, valid and binding obligation of the Seller enforceable against the Seller according to its terms, except as such enforcement be limited by bankruptcy, insolvency, reorganization, receivership, moratorium, or similar laws affecting creditors' rights in general, including equitable remedies.

6.    There are no actions, suits or proceedings pending or, to the knowledge of the Seller, threatened against or affecting the Seller or the properties of the Seller before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to the Seller, would have a material adverse effect on the financial condition, properties or operation of the Seller. Any consent by the Buyer to purchase pursuant to this Agreement shall automatically terminate if: (a) a decree or order of a court or agency supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities, bankruptcy proceeding or any similar proceedings, or for the winding up or liquidation or its affairs, shall have been entered against the Seller or a Borrower and such decree or order shall have remained in force undischarged or unstated for a period of 60 days; or (b) the Seller or a Borrower shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities, bankruptcy or similar proceedings relating to the Seller or relating to all or substantially all of its property; or (c) the Seller or Borrower shall admit in writing its inability to pay its debts as they are due, file a petition to take advantage of any applicable insolvency, reorganization or bankruptcy statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations.

(B)    <u>Representations and Warranties of the Seller as to Each Loan.</u> It is understood and agreed by Seller and Buyer that as a material inducement to Buyer to enter into this Agreement the Seller hereby represents and warrants to the Buyer as of each Settlement Date with respect to each Loan purchased:

1.    The Seller is the Payee and Holder of each Note within the meaning of the Uniform Commercial Code and is the sole owner of the Loan and has the right to assign and transfer the Loan to the Buyer. The Seller has not sold, assigned or otherwise transferred any right or interest in or to the Loan and has not pledged the Loan as collateral for any Loan or obligation of Seller or other purpose. The assignment of the Loan by the Seller to Buyer validly transfers such Loan to Buyer free and clear of any pledges, liens, claims, encumbrances, Mortgages, charges, exceptions and/or security interests.

2.    Except as expressly disclosed to and agreed to by the Buyer in writing, each Loan conforms to: (a) Underwriting Guidelines of Buyer, and (b) the conditions of the Approval Advice (if applicable).

3.    All information set forth in any Schedule of Loans delivered is true and correct in all respects, and all other information furnished to Buyer by Seller with respect to the Loan(s) purchased is true and correct as of the Settlement Date.

4.    Each Note and Mortgage and the Related Assets are in every respect genuine, are the valid instrument they purport on their face to be, are the legal, valid, binding and enforceable obligation of the Borrower thereunder and not subject to any discount, allowance, setoff, counterclaim, presently pending bankruptcy or other defenses; none of the Notes, Mortgages, or Related Assets are forged or have affixed thereto any unauthorized signature or have been entered into by any persons without the required legal capacity; and no foreclosure (including any non-judicial foreclosure) or any other legal action has been brought by the Seller or any senior lienholder in connection therewith.

5.    No instruments other than those delivered herewith are required under applicable law to evidence the indebtedness represented by the Loan(s) or to perfect the lien of the Mortgage(s).

6.    Except as has been disclosed to and agreed to by the Buyer in writing, there is no agreement with the Borrower regarding any variation of the interest rate and schedules of payment (except as described in the Note and Mortgage) or other terms and conditions of the Loan, no Borrower has been released from liability on the Note, and no property has been released from the Mortgage. If the Loan is a variable rate loan, the Seller represents and warrants as of each Settlement Date that all applicable notices required by law or regulation have been provided to the Borrower and that the right to future changes in the interest rate and payment schedules has not been waived by the Seller or any previous holder of the Loan.

7.    The Loan is secured by a valid Mortgage/Deed of Trust, of the agreed-upon priority, on real property, and such Mortgage has been properly received by the appropriate public recording official to be filed, recorded or otherwise perfected in due course in accordance with applicable law in the appropriate jurisdiction.

8.      There are no violations of any applicable federal or state law or regulation, including, without limitation, Fair Credit Reporting Act and Regulations, the Federal Truth-in-Lending Act and Regulation Z, the Federal Equal Credit Opportunity Act and Regulation B, the Federal Real Estate Settlement Procedures Act and Regulations, the Federal Debt Collection Practices Act and any federal or state usury laws and regulations.   All disclosures required by law, federal, state or local, were properly made by the Seller prior to the closing of the Loan.

9.      The Seller holds a marked-up title policy or title insurance binder or title certificate which is in full force and effect; which has an insurance limit at least as great as the outstanding principal balance of the Loan; which names the Seller, its successors and assigns as the insured party; and which is issued by a title insurer which has been approved by the Buyer in writing and is qualified to do business in the jurisdiction where the Subject Property is located. Said policy shall:

(i)  insure the absence of any lien of taxes and other assessments which are due and payable;

(ii) disclose whether all taxes and other assessments due as of the date of the policy have been paid in full; and

(iii) disclose all other matters to which like properties are commonly subject.

If the Buyer purchases a Loan having relied on a marked-up title insurance binder or title certificate rather than a title insurance policy, the Seller shall have sixty (60) days to deliver to the Buyer the title insurance policy.  In the event that missing documents are not received by the Buyer within the above-stated time frame, strictly as a result of a delay caused by the public recording office(s), Buyer may extend this period of document delivery time by written consent if in Buyer's sole opinion the Seller is using prudent and diligent follow-up.

10.     As of the Settlement Date the Seller has transferred to Buyer all of its right, title and interest in the Note(s), Mortgage(s) and Related Assets for each Loan purchased free and clear of any pledge, liens, claims, encumbrances, Mortgages, charges, exceptions or security interests other than as is disclosed in the title insurance policy to each Loan, together with an individual flood Insurance policy (to the extent required by the Flood Disaster Protection Act) and an individual current hazard insurance policy (including fire and extended coverage and other matters as are customary in the area of the Subject Property), or a blanket policy in lieu thereof, or a certificate if the Buyer agrees in writing to accept a certificate, insuring the Subject Property, with a loss payable clause in favor of the Seller, its successors and assigns in an amount equal to the lower of:  (a) the replacement value of the Subject Property, or (b) the unpaid principal balance of the Loan and the senior mortgage deed(s) of trust loan, provided, however, that the amount is sufficient to protect the insured and mortgagee from co-insurers in the event of a partial loss.

11.     The Note and Mortgage contain customary, valid, legal and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Subject Property of the benefits of the security created thereby.

8

12.    The proceeds of the Loan have been fully disbursed and any and all requirements as to completion of on-site and off-site improvements and disbursement of any escrow funds therefore have been complied with.

13.    To the best of Seller's knowledge, there are no mechanic's liens or similar liens or claims which have been filed for work, labor or material affecting the Subject Property which are or may be liens prior to or equal with the lien of the Mortgage and senior Mortgage(s).

14.    To the best of Seller's knowledge, the Subject Property is free of material damage and waste and is in average repair and there is no proceeding pending or threatened for the total or partial condemnation of the Subject Property, and the Subject Property is free and clear of all hazardous material.

15.    All matured obligations pursuant to the Note and Mortgage have been paid or performed and the Seller has not waived any defaults, breach, violation or event of acceleration.

16.    The Seller has no knowledge of any fact as to such Loan which it has failed to disclose which would materially and adversely affect the value or marketability of such Loans.

17.    The Seller has no knowledge of any impediments to title that adversely affect the value, enjoyment or marketability of the Subject Property.

18.    Where required by state law, the Seller has filed for record a request for notice of any action by a senior lienholder under a senior lien, and the Seller has notified any superior lienholder in writing of the existence of the Loan and requested notification of any action to be taken against the Borrower by the superior lienholder. The Seller shall, upon request of the Buyer, cooperate in recording a new request for action in favor of the Buyer and in providing superior lienholders with written requests for notification to the Buyer of action against the Borrower.

19.    There is no default, breach, violation or event of acceleration existing under any senior Mortgage which, with notice, and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration.

20.    Each Note and Mortgage contains a provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder, or applicable by state law.

21.    All real estate appraisals made in connection with each Loan shall have been performed in accordance with industry standards in the appraising industry in the area where the appraised property is located  and have been performed by an appraiser who satisfies the requirements of the Financial Institutions Reform,  Recovery and Enforcement Act of 1989. Appraisers must be state licensed and must be on IMC's approved appraiser list.

22.    To the best of Seller's knowledge, no hazardous or toxic materials or wastes or products regulated by any law or ordinance or asbestos or asbestos products or materials or

polychlorinated biphenyls or urea formaldehyde insulation have been used or employed in the construction. use or maintenance of the Subject Property or have ever been stored. treated at or disposed of on the Subject Property. However. in the event it has been determined that asbestos or asbestos products or asbestos materials have been used or employed in construction. use, or maintenance in Subject Property, a duly qualified appraiser or engineer must state that the material is in good repair or removed.

23.    To the best of Seller's knowledge, there has not nor has any person or entity alleged that there has occurred, upon the Subject Property any spillage, leakage, discharge or release into the air, soil or groundwater of any hazardous material or regulated wastes.

24.    The Seller has not, in connection with each Loan purchased by Buyer. incurred any obligation, made any commitment or taken any action which might result in a claim against the Buyer or an obligation by the Buyer to pay a sales brokerage commission, finder's fee or similar fee in respect to the transactions between Buyer and Seller as described in this Agreement. The Seller agrees to indemnify and hold the Buyer harmless from and against any claims, liabilities, damages or costs (including reasonable attorney fees) relating to any broker. agent or finder or other person, who shall claim to have dealt on behalf of the Seller in connection with the transactions contemplated by this Agreement.

25.    Seller agrees not to take any action to solicit Borrowers individually in order to effect the refinancing of any Loans previously purchased by Buyer from Seller. In the event a Borrower elects to refinance with Seller a Loan purchased by Buyer from Seller, and such Loan is currently owned or serviced by Buyer or Buyer otherwise retains a financial interest in the Loan, Buyer will have the right of first refusal on the purchase of the refinancing. Buyer will pay to Seller the normal premium percentage on the refinanced Loan, but only on the amount that the refinanced Loan balance exceeds the balance of the original Loan purchased by Buyer from Seller. General advertising to the public shall not be deemed to violate this non-solicitation provision.

## VI.   BREACH OF REPRESENTATION AND WARRANTIES

A.    **Remedy For Breach.** In addition to any rights or remedies the Buyer has at law or in equity, if at any time there is a breach of any representation or warranty set forth herein by Seller, the Buyer shall give written notice to Seller of the breach. If after thirty (30) days following Seller's receipt of such notice the breach has not been cured by Seller, the Seller shall upon demand of the Buyer and at the sole option and absolute discretion of Buyer, immediately repurchase the loan affected for the Buy-Back Price (as defined in VI(C) below). If the loan has been sold by Buyer or the subject property has been liquidated or sold by Buyer, the Seller shall. within thirty (30) days of the aforementioned notification, pay the Buyer the amount of loss (as defined in VI(D) below).

B.    **Reassignments.** Upon receipt of the Buy-Back Price, in full, in immediately available funds, the Buyer shall reassign the Loan affected and any right it may have in the relevant Subject Property, as well as other documents necessary to reflect the reassignment of any title protection and insurance policies.

C.    **"Buy-Back Price"**.  The term "Buy-Back Price" shall mean the sum total of:  (1) the outstanding principal balance of the Loan, with accrued interest thereon through the date the Loan is repurchased by Seller; (2) all advances made by Buyer and all charges due from the Borrower; (3) the total amount, including accrued interest and other expenses paid by the Buyer to any senior lienholders, if any, to secure a priority lien position; (4) all reasonable and necessary expenses, losses and damages paid or incurred by the Buyer in connection with the Loan or an investigation of said Loan and/or the related collateral, including, but not limited to, property taxes, maintenance costs, interest expense, insurance, appraisals, advertising, sales commissions, reasonable attorney fees, expenses and costs, fines and penalties; and (5) rebate of premium due Buyer, if applicable.

D.    **Definition of "Loss"**:  The term "Loss" shall mean the negative result, if any, of the following calculations:  (a) the sum total of:  (i) the outstanding principal balance of the Loan, with accrued interest thereon and not paid through the date the Loan is sold or date the collateral is liquidated; (ii) all advances by Buyer and all charges due from the Borrower; (iii) the total amount paid by the Buyer to any senior lienholders, if any, to secure a first lien position; (iv) accrued interest on all Mortgage Loans purchased from senior lienholders from the date such Mortgage Loans were purchased through the date the Loan is sold or the date the collateral is liquidated; and (v) all other reasonable and necessary expenses, losses and damages incurred by and/or paid by the Buyer in connection with the Loan or an investigation of said Loan or the sale or liquidation of the Loan and/or the related collateral, including, but not limited to, reasonable attorney fees, expenses and costs, property taxes, maintenance costs, insurance, appraisals, advertising, sales commissions, fines and penalties; less the (b) net proceeds from the sale of the Loan or the sale or liquidation of the Subject Property or the collateral.

E.    **Remedy For Non-Delivery of Documents.**  However, anything to the contrary notwithstanding, in the event that the Seller is required to deliver to the Buyer any documents related to a purchased Loan and the Seller fails to deliver such document in the proper form on the date or within the time period specified by the controlling section of this Agreement, Buyer shall notify the Seller of the breach, and the Seller shall have thirty (30) days from the date of notice to cure the breach.  If the Seller has not cured the breach within the thirty (30) day cure period, the Seller shall immediately repurchase the Loan upon Buyer's demand.  The Buy-Back Price shall be determined in accordance with Article VI(C).  Any Loan returned by the Buyer pursuant to this paragraph shall be without recourse, representation or warranty; however, Buyer represents and warrants to Seller, that Buyer, its affiliates, subsidiaries, servicers, or employees have done nothing to cause the Loan to become uncollectible in whole or in part.

F.    **Remedy to Insure Accuracy of Real Estate Appraisals.**

Buyer may, at its own expense, in order to verify the accuracy of real property appraisals prepared for Seller, order a re-appraisal of the property secured by a Mortgage.  If the reappraisal obtained by Buyer indicates a fair market value which is more than ten(10) percent less than the original appraisal value, then upon receipt by Seller from Buyer of a signed copy of the reappraisal, Seller shall repurchase the Loan by the Buy-Back Price (as defined in Article VI(c)) and reimburse Buyer for the cost of the appraisal subject to the following:  If Seller disputes the validity of the reappraisal prepared by Buyer's appraiser, Seller may, at its own expense, request

Buyer to obtain a third appraisal, and only if such third appraisal is also more than ten(10) percent less than the original appraisal value shall the Seller be required to repurchase the Loan at the Buy-Back Price.  Buyer shall choose the appraiser for the third appraisal with Seller's approval, which shall not be unreasonably withheld, but such appraiser must possess the minimum qualifications specified in Buyer's Underwriting Guidelines.  The appraisal must be performed in accordance with industry standards for the appraising industry in the area in which the property is located, and the appraiser must be independent with respect to both parties unless otherwise agreed to by the parties.  In determining the appropriate appraisal value, the review appraiser must determine the fair market appraised value as of the original appraisal date using comparable sales that were available as of the date of the original appraisal.  The original reappraisal must be ordered within four(4) years of the Buyer's purchase of the Loan from the Seller.  After four (4) years, the above variance does not apply unless it can be proved that there was fraud.

However, anything to the contrary notwithstanding, the Buyer reserves the sole right not to request the Seller to repurchase the Loan should the reappraisal cause the combined loan-to-value not to exceed the maximum allowable combined loan-to-value of the loan class under which the Loan was purchased.


## VII.    RELATIONSHIP OF THE PARTIES

Solely by virtue of the parties' execution of this Agreement, it is agreed that the Seller and the Buyer are not partners or joint venturers and that the Seller is not to act as an agent of the Buyer in originating, administering or collecting any Loan, but shall have the status of and shall act in all matters hereunder as an independent contractor.


## VIII.   OPINION OF COUNSEL

The Seller shall deliver to the Buyer in form and substance satisfactory to the Buyer and its counsel on or before the first Settlement Date hereunder, an opinion of the Seller's independent outside counsel pursuant to **Exhibit "E,"** attached hereto and made a part hereof, opining on the provisions of Articles V(A)1 through V(A)6, inclusive and the Opinion of Counsel will cover all Loans purchased by Buyer under this Agreement unless the opinion is rescinded or revoked by the Law Firm rendering the Opinion.


## IX.    DESIGNATION OF AUTHORIZED OFFICERS

The Seller shall have delivered to Buyer an officer's certificate, attested to by the Secretary of the Seller, stating the names and showing the facsimile signatures of the officers of Seller authorized to execute and deliver this Agreement; endorse Note(s),Mortgage(s), and Assignment(s); and authorize the bank accounts for Buyer to utilize for funding Loans.

## X.   MISCELLANEOUS

### A.   Additional Covenants.

1.     Each party shall, from time to time, execute and deliver or cause to be executed and delivered, such additional instruments, assignments, endorsements, papers and documents as the other party may at any time reasonably request for the purpose of carrying out the terms of this Agreement and the transfers provided for herein.

2.     The Seller shall, upon request of the Buyer, sign a letter in form to be approved by the Buyer and in conformity with the terms and conditions hereof, addressed to all the Borrowers on the Loans, announcing the sale evidenced hereby and instructing such Borrowers to recognize the Buyer as the Seller's successor in interest to such Loans.

3.     After any Settlement Date hereunder, the Seller will hold in trust for the Buyer all sums received by the Seller from Borrower(s) on any Loan purchased pursuant to this Agreement and pay them to the Buyer within three (3) business days of the receipt of those sums.

4.     Any and all decisions made by Buyer in good faith to take action or to not take action relative to a Loan, including, but not limited to, the sale or liquidation of a Loan in a commercially reasonable manner, Subject Property or collateral shall be final and conclusively binding upon Seller in the event Seller does not repurchase a Loan within ten (10) days of notification by Buyer pursuant to Section VI of this Agreement.

5.     In order to enforce Buyer's rights under this Agreement, Seller shall, upon the request of Buyer or its assigns, do and perform or cause to be done and performed, every reasonable act and thing necessary or advisable to put Buyer or its assigns in position to enforce the payment of the Loans and to carry out the intent of this Agreement, including the execution of and, if necessary, the recordation of additional documents including separate endorsements and assignments upon request of Buyer.  In addition, Seller hereby irrevocably appoints any officer or employee of Buyer or its assigns its true and lawful attorney to do and perform every act necessary, requisite, proper, or advisable to be done to put Buyer or its assigns in position to enforce the payment of the Loans, its rights under this Agreement, and to carry out the intent of this Agreement, including, but not limited to, the right to sign, execute, endorse and/or assign, and deliver to Buyer or its assigns on behalf of Seller any Mortgage Note, Mortgage, security interest, or any other Loan document and also any other writing of any other kind or nature whatsoever which may be used in connection therewith to evidence any obligation of Seller or any Borrower to Buyer or its assigns, pursuant to this Agreement and to endorse any check or other instrument for the payment thereof.  Seller does hereby forever renounce all rights to revoke this power of attorney or any of the above conferred upon Buyer or its assigns hereby or to appoint any other person to execute the said power.

### B.   Survival of Covenants, Agreements, Representations and Warranties; Successors and Assigns.  All warranties, representations and covenants made by either party in this Agreement or in any other instrument delivered by either party to the other, including those made by third parties for the benefit of either party, shall be considered to have been relied upon by the other party (unless otherwise agreed in writing by the parties) and shall survive the

13

termination of this Agreement. The Buyer reserves the right to proceed against third parties to enforce any representations. warranties and covenants made by them for the benefit of the Seller.

     C.    **Severability.**  If any provision, or part thereof, of this Agreement is invalid or unenforceable under any law. such provision. or part thereof, is and will be totally ineffective to that extent, but the remaining provisions. or part thereof. will be unaffected.

     D.    **Attorneys' Fees.** However, anything to the contrary notwithstanding, in the event of any action at law, in equity, arbitration or otherwise between the parties in relation to this Agreement or any Loan or other instrument or agreement required or purchased or sold hereunder, the non-prevailing party. in addition to any other sums which such party shall be required to pay pursuant to the terms and conditions of this Agreement. at law. in equity. arbitration or otherwise shall also be required to pay to the prevailing party all costs and expenses of such litigation. including reasonable attorney fees.

     E.    **Waivers.**  No waiver of any term. provision or condition of this Agreement. whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or construed as a further or continuing waiver of any such term, provision or condition, or of any other term, provision or condition of this Agreement.

     F.    **Notice.**  Any notice or other communication in this Agreement provided or permitted to be given by one party to the other must be in writing and given by personal delivery or by depositing the same in the United States mail (certified mail, return receipt requested), addressed to the other party to be notified, postage prepaid. For purposes of notice, the addresses of the parties shall be as follows:

         BUYER:          Industry Mortgage Company, L.P.
                             3450 Buschwood Park Drive, Suite 250
                             Tampa, Florida  33618

         ATTENTION:     George Nicholas

         SELLER:          *INTERSTATE RESOURCE CORP*
                             *254 Rt 17 k*
                             *Newburgh NY 12550*

         ATTENTION:     *Jim Lincoln*

     The above address may be changed from time to time by written notice from one party to the other.

     G.    **Insurance Prepayment.**  Insurance refund or credits of any kind whatsoever, for insurance of any kind sold by Seller (or Seller's originating source, whether a loan Broker or Correspondent) in conjunction with the Loan, shall be the sole responsibility of the Seller in the event of prepayment of any Loan, cancellation of insurance or any other event requiring refunding or crediting of unearned insurance premiums. Upon the Buyer's demand, Seller shall pay to the Buyer, from the Seller's own funds, any required insurance premium rebate resulting

from the prepayment, cancellation, refinancing or other termination of any Mortgage Loan. Upon such payment, Buyer shall assign in writing any rights it had to require that the insurer reimburse user for any rebate made to Borrower.

H.    **Assignment.**   The Seller shall not, without the prior written consent of the Buyer, assign any of its rights or obligations hereunder.

I.    **Captions.**   Paragraph or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

J.    **Entire Agreement.**   This Agreement and the Exhibits attached hereto, and the documents referred to herein or executed concurrently herewith regard to the subject matter hereof, and there are no prior agreements, understandings, restrictions, warranties or representations between the parties with respect thereto.

K.    **Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.  The provisions of this paragraph shall not affect the provisions of any Note, Mortgage or Related Assets which cause the laws of the United States or other state to be applicable.  This Agreement shall be interpreted fairly in accordance with its provisions and without regard to which party drafted it.

L.    **Termination.**   Buyer has the option of terminating this Agreement immediately upon notice to the Seller upon the Seller's breach of any of the Representations and Warranties contained in Article V of this Agreement, however, subject to the rights to cure as outlined in Article VI. Buyer shall have no obligation to honor any commitment or Approval Advice after such termination.

M.    **Arbitration, Jurisdiction and Venue.**

With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof (including, but not limited to, a request for emergency relief), the parties hereby consent to the exclusive jurisdiction of the state and federal courts having jurisdiction over Buyer at the time any such controversy, argument or claim arises, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing.  The parties waive trial by jury and waive any objection to jurisdiction and venue of any action instituted hereunder, agree not to assert any defense based on lack of jurisdiction or venue and consent to the granting of such legal or equitable relief as is deemed appropriate by the court, including, but not limited to, any emergency relief, injunctive or otherwise.

However, anything to the contrary notwithstanding, except with respect to emergency relief, Buyer shall have the sole and exclusive option and discretion to have any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof, settled in the county and state of Buyer's principal office, in accordance with the Rules of the American

Arbitration Association (as modified below), and judgment upon the award may be entered in any Court having jurisdiction thereof.

The arbitration panel shall be made up of three members which shall be appointed: one by Buyer, one by Seller and the third by the first two arbitrators. Each arbitrator shall be a lawyer experienced in matters relating to real estate and mortgage banking. Discovery shall be permitted in connection with the arbitration proceeding within the reasonable discretion of the arbitration panel. The decision (award) shall be in writing and shall set forth the rationale and legal basis therefor, and such decision may be appealed by either party if the party believes that the written decision (award) is based upon an error of law. The facts determined by the original panel will be final and no appeal of such findings may be made. Such appeal shall be taken to a three-member arbitration panel, the members of which shall be selected in accordance with the above-described procedures, and the panel's review shall be limited to the application of the statutory and decisional law of the state of Florida (as modified by Paragraph XI(K) above) to the facts of the dispute as determined in writing by the original arbitration panel.

N.     Endorsements.

In the event that the remedies or other terms outlined in this Agreement conflict with the terms of any endorsement by the Seller of any Note evidencing a Loan purchased by the Buyer from the Seller, including, but not limited to, an endorsement stating that the assignment of the Note is without recourse, the remedies and terms of this Agreement shall govern and control.

O.     Indemnification  (Holder in Due Course)

In the event Buyer purchases a Loan from Seller in which all or part of the proceeds of such Loan were paid to a home improvement or building contractor (including if proceed checks were made payable to the Borrower and the contractor jointly) for the purpose of repairs or improvements to the subject property, Seller agrees to indemnify Buyer against any loss, damages, forfeitures, legal fees and other costs resulting from any demand, defense or assertion based, grounded upon or arising from Borrower's rights, claimed or granted, to withhold payment of the Loan due to the incompletion or unsatisfactory completion of said repairs or improvements.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written:

BUYER:  Industry Mortgage Company. L.P.
By:      Industry Mortgage Corporation,
         General Partner

By:      _George Nicholas, Chief Executive Officer_

SELLER:  _INTERSTATE RESOURCE_

By:      _____

DCR00991

**17**

## ADDENDUM

This Addendum is made this ___ day of _____, 199__, and is hereby made a part of the Master Agreement for Sale and Purchase of Mortgages dated _____,199__, by and between Industry Mortgage Company L.P. ("Buyer") and Interstate Resource Corp ("Seller").

Article IV, Section (E) is hereby amended to read:

(E)    **Premium Rebate.**    In the event that a premium is paid by the Buyer to the Seller on a Loan and such Loan is prepaid by the Borrower, other than by a refinancing by the Buyer or any of its subsidiaries or affiliates or a refinancing by the Seller which is purchased by the Buyer, (Seller agrees to give Buyer a right of first refusal to repurchase the aforementioned refinance, and in the event Buyer repurchases said refinance, Buyer agrees to pay Seller a premium, if any, on the new advance over and above the refinanced amount only. In the event Buyer elects not to purchase said refinance, then Seller shall pay to Buyer the premium rebate as set forth below), the Seller shall, upon demand by the Buyer, refund to the Buyer, in the appropriate percentage specified below, the premium paid by the Buyer to the Seller.

The amount due to Buyer as premium rebate from Seller shall be calculated by a prorata method using a twelve (12) month basis. Example: if a loan is prepaid in month seven (7) after Settlement Date, five (5) months would be remaining in the rebate period; therefore, the prorata calculation of rebate due Buyer would be five/twelfth's (5/12th's) of the premium originally paid to Seller by Buyer. If such Loan is prepaid later than twelve (12) months of the Settlement Date, no refund shall be due. In the event the Loan contract provides for a prepayment penalty and such prepayment penalty is not prohibited by law, than Buyer agrees to offset the amount of any prepayment penalty against any Premium Rebate due Buyer from Seller.

IN WITNESS WHEREOF, the parties have executed this Addendum on the date first above written:

Buyer:                                                      Seller:
Industry Mortgage Company, L.P.
By:
Industry Mortgage Corporation
General Partner

By: _____            By: _INTERSTATE RESOURCE CORP_
George Nicholas                                      Name: _Tim Vologou_
Chief Executive Officer                             Title: _Pres_

# COMPOSITE EXHIBIT B

RESIDENTIAL APPRAISAL FIELD REVIEW REPORT

The purpose of this review is to determine the completeness and accuracy of the data on the appraisal report and to verify the accuracy of the market value estimate as to the effective date of the appraisal report. It is __ review __ intended to be used as a new appraisal. (Please attach a copy of the original appraisal __ to this report.)

| | | | | |
|---|---|---|---|---|
| Property Address | BEACH 96TH STREET | City FAR ROCKAW. | State N.Y. | Zip Code 11693 |
| Legal Description | SEC. 62 BLK. 16168 LOT. 17 | | | |
| Property Rights Appraised | FEE SIMPLE | Client Reference Number | NC 7035485/0698-10 | |
| Effective Date of Original Appraisal and Field Review | ORIG: 1/28/97 | REVIEW: 6/25/98 | | |
| Borrower | EYAL COHEN | | | |
| Review Appraiser | | Company Name | U S APPRAISALS | |
| Address | 110 WALT WHITMAN RD. SUITE 104, HUNTINGTON STATION, N.Y. 11746 | | | |
| Telephone Number | 516 351-4950 | Soc. Sec. or Tax ID. Number | N.A | |

INSTRUCTIONS: The review appraiser must personally inspect (by, at least, driving by) the exterior of the subject property and the comparables used in the analysis. Photographs are required for : the front of the comparables; the front of the subject; and the street scene of the subject property. Additional photographs are suggested if any adverse conditions that were not noted in the original appraisal are observed. (NOTE: The review appraiser is not required to inspect the interior of the subject property. The review appraiser should verify the data in the original appraisal report, using the assessment records, the real estate broker, or any other data source that he or she considers to be reliable and reasonably available.) Based on the exterior inspection of the subject and the comparables, a thorough desk review of the appraisal report, and a review of the relevant market data for the subject area, respond to the following questions, form an opinion about the appropriateness of the appraisal methods and techniques that were used, and indicate any areas of disagreement (giving reasons for the differences). Do not limit your responses to the space provided; attach an addendum if necessary:

1. Provide a sales and finance history for the subject property for the past three years (if it is reasonably available from a data source that the review appraiser considers to be reliable).

Conveyance

| Recordation Date | Sales Price | Asking Price | Mortgage Amount | Grantor / Grantee | Data Source |
|---|---|---|---|---|---|
| 9/22/96 | 50,00C | N/A | N/A | MURPHY,T.&C TO MURPY T. | COMPS INC |
| 12/31/96 | 290,00C | N/A | N/A | MURPHY,T. TO OCEANFRONT INC. | COMPS INC. |
| 1/2/97 | 500,00C | N/A | N/A | OCEANFRONT INC TO LARGO PROPERTIES | COMPS INC. |

2. Is the appraiser's overall description of the neighborhood complete and accurate ( location, general market conditions (i.e. price changes, crop failures, etc.), property values, demand / supply, marketing time, general appearance of properties, appeal to market, etc. ) ?   [X] Yes   [ ] No   (If no, explain.)

3. Is the appraiser's overall description of the site complete and accurate (zoning compliance, apparent adverse conditions, apparent environmental hazards, etc.)?   [ ] Yes   [X] No
(If no, explain.)   CURRENT AVAIABLE QUEENS ASSESSMENT RECORD INDICATES  THE SUBJECT PROPERTY IS  GARDEN APARTMENTS ,WHICH HAS 9 BUILDINGS  WITH  19 UNITS, WHICH ARE ALL ASSIGNED THE ADDRESS OF 142 BEACH 96TH STREET. THERE IS NO INDICATION THAT THIS PROPERTY IS A 2 FAMILY OR IS ON SEPARATE PARCELS.  THE APPRAISER WAS UNABLE TO DETERMINE WHICH OF THE 9 BUILDINGS WAS THE SUBJECT. ALL OF THE BUILDINGS APPEAR VACANT AND EXHIBIT CONSIDERABLE  DEFFERED MAINTANANCE. THE SUBJECT PROPERTY IS GATED WITH A PRIVATE WALKWAY TO EACH INDIVIDUAL UNIT.

4. Is the appraiser's overall description of the improvements complete and accurate (property description, depreciation, condition, apparent environmental hazards, etc.)?   [ ] Yes   [X] No
(If no, explain.)   ASSESSMENT RECORD INDICATES THE PROPERTY SIZE AS 131X100.

5. Are the design and appeal, quality of construction, and size of the subject property similar to others in this area?   [ ] Yes   [X] No
(If no, how is the subject different?)   THE SUBJECT PROPERTY IS IN DISREPAIR. MULTIPLE UNITS ON A SINGLE PROPERTY ARE NOT COMMON IN THE AREA.

6. Are the comparables used in the analysis truly comparable to the subject property, representative of the subject market, and were they the best ones available as of the effective date of this appraisal?   [ ] Yes   [X] No   (If no, explain and provide an adjustment grid with the appropriate comparables and adjustments on an addendum.)   DUE TO AN INABILITY TO DETERMINE IF THE SUBJECT PROPERTY HAS BEEN CONVERTED INTO SEPARATE DWELLINGS,  THE COMPARABLES USED IN THE REPORT MAY NOT REPRESENT THE INDICATED VALUE.

7. (a) Can the date of sale (contract date and/or closing/settlement date), sales price, and sales or financing concessions for the comparables be confirmed through the data source that the appraiser indicated?   [ ] Yes   [X] No   (If no, explain.)   CANNOT VERIFY COMP3 SALE ON M.L.S. OR COMPS INC.

(b) Were the comparables actual closed or settled sales as of the effective date of the original appraisal?   [ ] Yes   [X] No   (If no, explain.)   CANNOT VERIFY COMP3 DATE OF SALE.

... DISTANCE AND COMPASS DIRECTION INFORMATION IS INCORRECT. ALL COMPS EXCEED THE FNMA 1 MILE DISTANCE GUID!

9. Are the individual adjustments to the comparables reasonable and supported (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)?  [X] Yes  [ ] No  (If no, explain.)

10. If the subject property is a small residential property (2-4) or a single-family investment property, are the comparable rental and expense data accurate and reasonable?  [ ] Yes  [ ] No  [X] N/A  (If no, explain.)  **SEE COMMENTS ON #6.**

11. If the subject property is an individual unit in a condominium or PUD project, is the project description complete and accurate?  [ ] Yes  [ ] No  [X] N/A  (If no, explain.)  **SEE COMMENTS ON #6.**

12. Is the estimate of market value for subject property reasonable as of the effective date of the appraisal?  [ ] Yes  [X] No  (If no, provide an appropriate estimate of the market value for the subject property and state the assumptions (exterior inspection only, property description and condition, etc.) that the opinion is subject to.)  **SEE COMMENTS ON # 6.**

13. Has there been a substantial change in the basis economy in the area since the effective date of the appraisal?  [ ] Yes  [X] No  (If yes, explain.)

14. If the subject property is a cooperative unit, the review appraiser must address the completeness and accuracy of the original appraiser's description and analysis of the cooperative project and specifically comment on the accuracy of: (a) the number of shares attributable to the unit; (b) the pro-rata share of the blanket mortgage payments; and (c) the treatment of the monthly assessments of the comparable sales.

I certify that, to the best of my knowledge and belief, the facts and data used herein are true and correct; that I personally inspected the exterior of the subject property and the comparables used in the report; that the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions and conclusions; that I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved; that my compensation is not contingent on any action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report; and that my analyses, opinions, and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

Signature of Review Appraiser _____  Date  6/29/98

Client Use Only

Review Underwriter's Comments _____

Signature of Review Underwriter _____  Date _____

COMP ARABLES PHOTOGRAPH ADDENDUM

37802

| Borrower / Client | EYAL COHEN | | | | | |
|---|---|---|---|---|---|---|
| Property Ac | 150 BEACH 96TH STREET | | | | | |
| City | FAR ROCKAWAY | County | San Francisco | State | N.Y. | Zip Code | 11693 |
| Lender | FREDDIE MAC | | | | | |



### COMPARABLE SALE # 1

Date of Sale :
Sale Price :
Sq. Ft. :
$ / Sq. Ft. :



### COMPARABLE SALE # 2

Date of Sale :
Sale Price :
Sq. Ft. :
$ / Sq. Ft. :



### COMPARABLE SALE # 3

Date of Sale :
Sale Price :
Sq. Ft. :
$ / Sq. Ft. :

Day One Forms for Windows, 1995 - 1 800-GET-DAY1

| | |
|---|---|
| Property Address | Beach 96th Street |
| Legal Description | Section:62 Block:16168 Lot:17 |
| City | Far Rockaway | State | NY | Zip Code | 11693 |
| Assessor's Parcel No. | SMSA 5600 | County | Queens |
| Tax Year 1997 | R.E. Taxes $ 2,000E | Special Assessments $ NA |
| Neighborhood or Project Name | | Map Reference 018 L19 | Census Tract 0942.01 |
| Borrower Eyal Cohen | Current Owner Ocean Front | Occupant: ☐ Owner ☐ Tenant ☒ Vacant |
| Property rights appraised | ☒ Fee Simple | ☐ Leasehold | Project Type | ☐ PUD | ☐ Condominium | HOA $ /Mo. |
| Sales Price $ 160,000 | Date of Sale Pending | Description and $ amount of loan charges/concessions to be paid by seller Unknown |
| Lender/Client Interstate Resources | Address 254 Route 17K, Newburgh, NY 12550 |
| Appraiser M.A.P Appraisals 5/1/5 | Address 114 Old Country Road, Suite 308, Mineola NY 11501 |

| Location | ☒ Urban | ☐ Suburban | ☐ Rural | Predominant Single family housing | | Single family housing | | | Predominant 2-4 family Occupancy | 2-4 family housing | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | PRICE $ (000) | AGE (yrs) | | | PRICE $ (000) | AGE (yrs) | |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Occupancy | | | | | | Low 20 | 100 | Low 20 |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☒ Owner | | 70 Low 20 | | | ☒ Owner | | | |
| Property value | ☐ Increasing | ☒ Stable | ☐ Declining | ☐ Tenant | | 190 High 90 | | | ☒ Tenant | 250 | High 90 | |
| Demand/Supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☐ Vacant (0-5%) | | Predominant | | | ☒ Vacant (0-5%) | Predominant | | |
| Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. | ☐ Over 6 mos. | ☐ Vacant (over 5%) | | 110 | 70 | | ☐ Vacant (over 5%) | 175 | 70 | |

| Typical 2-4 family bldg. Type 2 Family | No. stories 2 | No. units 2 | Age 67 yrs. | Present land use % | | Land use change | |
|---|---|---|---|---|---|---|---|
| Typical rents $ 450 to $ 750 | ☐ Increasing ☒ Stable ☐ Declining | One family 55 | ☒ Not likely ☐ Likely |
| Est. neighborhood apt. vacancy 2 % | ☐ Increasing ☒ Stable ☐ Declining | 2-4 family 30 | ☐ In process to: |
| Rent controls ☐ Yes ☒ No ☐ Likely If yes or likely, describe | | Multi-family 10 | |
| | | Commercial 5 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 89 Street.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject property is located in a residential area improved with a mixture of one and two family dwellings. Two family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.

The following available listings represent the most current, similar, and proximate competitive properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market competing with the subject property in the subject neighborhood and recent price and marketing time trends affecting the subject property. (Listings outside the subject neighborhood are not considered applicable. The listing comparables can be rental or sale comparables if they are currently for sale.)

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| Address | 150 Beach 96th Street<br>Far Rockaway | 2954 Oceancrest Blvd<br>Far Rockaway | 468 Beach 63 Street<br>Far Rockaway | 361 Beach 69 Street<br>Far Rockaway |
| Proximity to subject | | 1/2 Mile | 1/2 Mile | 1/2 Mile |
| Listing price | $ 160,000 | ☒ Unit. ☐ Rent $ 169,000 | ☒ Unit. ☐ Rent $ 170,000 | ☒ Unit. ☐ Rent $ 172,000 |
| Approximate GBA | 1,140 | 1,800 | 1,700 | 1,760 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Tot.rms./BR／BA | 2 \|10\|6\|2 | 2 \|11\|5\|2 | 2 \|10\|6\|2 | 2 \|11\|5\|2 |
| Approximate year built | 1930 | 1965 | 1960 | 1920 |
| Approximate days on market | 60 +/- | 30 +/- | 90 +/- | 15 +/- |

Comparison of listings to subject property: All three listings are similar two-family colonials located in the subject area and utilize the same support facilities.

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above mentioned indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on the market and any change over past year, etc.): The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.

| | | | |
|---|---|---|---|
| Dimensions | 18.8 x 65.0. | Topography | Level |
| Site area | 1,222.0 Sq Ft | Corner lot ☐ No ☒ Yes | Size | Average |
| Specific zoning classification and description | Residential (R6) | Shape | Rectangular |
| Zoning compliance | ☒ Legal | ☐ Legal nonconforming (Grandfathered use) | ☐ Illegal | ☐ No zoning | Drainage | Appears Adequate |
| Highest & best use as improved: | ☒ Present use | ☐ Other use (explain) | View | Average |
| | | Landscaping | Average |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | 110 Amps | Street | Macadam | ☒ | | Driveway | None |
| Gas | ☒ | | Curb/Gutter | Concrete | ☒ | | Apparent easements | Typical Utility |
| Water | ☒ | | Sidewalk | Concrete | ☒ | | | |
| Sanitary sewer | ☒ | | Street lights | Electric | ☒ | | FEMA Special Flood Hazard Area ☒ Yes ☐ No | |
| Storm sewer | ☒ | | Alley | None | | | FEMA Zone A Map Date 5-18-92 | |
| | | | | | | | FEMA Map No. 360497-0111C | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): Typical utility easements for electricity, sewer, gas and telephone do not effect value. There are no apparent adverse easements or encroachments that would impede marketability.

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| General description | | Exterior description (Materials/condition) | | Foundation | | Insulation (R-value if known) | |
|---|---|---|---|---|---|---|---|
| Units/bldgs | 2  /1 | Foundation | Conc. Block | Slab | Yes | ☒ Roof | Unknown |
| Stories | 2 | Exterior walls | Wood | Crawl space | No | ☒ Ceiling | Unknown |
| Type (det./att.) | Detached | Roof surface | Asphalt | Sump Pump | Not Noted | ☒ Walls | Unknown |
| Design (style) | Colonial | Gutters/downspouts | Aluminum | Dampness | Not Noted | ☒ Floor | Unknown |
| Existing/proposed | Yes/No  4 | Window type | Dbl Hng | Settlement | Not Noted | ☒ None | Unknown |
| Under construction | No | Storm sash/Screens | Yes/Yes | Infestation | Not Noted | Adequacy | Unknown |
| Year Built | 1930 | Manufactured housing ☐ | ☐ Yes ☒ No | Basement | % of 1st floor area | Energy efficient items | |
| Effective age(yrs.) | 15-20 | *(Complies with the HUD Manufactured Housing Construction and Safety Standards.) | | Basement finish | | Insulated Windows | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrms | # Baths | Laundry | Other | Sq. ft. Area | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | | 1 | | | 3 | 1 | | | 570 | 570 |
| 1 | 1 | | 1 | | 1 | | | 3 | 1 | | | 570 | 570 |

Improvements contain   10   Rooms;   6   Bedrooms;   2   Bath(s);   1,140   Square feet of GROSS BUILDING AREA

**GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.**

| Surfaces | (Materials/condition) | Heating | | Kitchen equip. (/Unit-cond.) | | Attic | | Car Storage | No. Cars |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Avg | Type | Steam | Refrigerator | 2/Avg | ☒ None | | Garage | ☐ |
| Walls | Drywall/Avg | Fuel | Gas | Range/oven | 2/Avg | Stairs | | Carport | ☐ |
| Trim/finish | Wood/Avg | Condition | Average | Disposal | | Drop stair | | Attached | ☐ |
| Bath floor | Lino/Avg | | | Dishwasher | | Scuttle | | Detached | ☐ |
| Bath wainscot | Fiberglass/Avg | Cooling | | Fan/hood | 2/Avg | Floor | | Adequate | ☐ |
| Doors | Wooden/Avg | Central | No | Compactor | | Heated | | Inadequate | ☐ |
| | All of the above | Other | No | Washer/dry | | Finished | | Offstreet | ☐ |
| | are in Avg Cond | Condition | N/A | Microwave | | ☐ Unfinished | | None | ☒ |
| Fireplace(s) | None   # 0 | | | Intercom | | | | | |

Conditions of the improvements, repairs needed, quality of construction, additional features, modernization, etc.:   None.

Depreciation (physical, functional, and external inadequacies, etc.):   The subject property was in average condition for it's neighborhood at the time of inspection.  External obsolescence: none noted. Functional obsolescence: none noted. Repairs/Modernization: none noted.  The subject's construction quality was average.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property:   Please see the attached Statement of Limiting Conditions.

## VALUATION ANALYSIS

ESTIMATED SITE VALUE .......................... = $   70,000

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | | | |
|---|---|---|---|
| 1,140 | Sq.Ft. @ $ 95 | = $ | 108,300 |
| | Sq.Ft. @ $ | = $ | |
| | Sq.Ft. @ $ | = $ | |
| | Sq.Ft. @ $ | = $ | |
| | Sq.Ft. @ $ | = $ | |
| | | = $ | |
| | | = $ | |
| | | = $ | |
| | | = $ | |
| Special Energy Efficient Items | | = $ | |
| Porches, Patios, etc. | | = $ | |
| Total Estimated Cost New | | = $ | 108,300 |

| | Physical | Functional | External | | |
|---|---|---|---|---|---|
| Less | 25% | | | | |
| Depreciation | 27,075 | | | = $ | 27,075 |
| Depreciated Value of Improvements | | | | = $ | 81,225 |
| "As Is" Value of Site Improvements | | | | = $ | 12,000 |
| INDICATED VALUE BY COST APPROACH | | | | = $ | 163,225 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life of the property):

See attached floor plan & calculations addendum.

Physical depreciation was calculated using the economic age-life method.

There was no functional or external obsolescence noted at time of inspection.

The land value ratio is typical for the area and does not impede marketability.

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should assure the reader that the units and properties selected as comparables are comparable to the subject property. Both the units and the overall property and reasonably represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 150 Beach 96th Street Far Rockaway | 431 Beach 63 Street Far Rockaway | 427 Beach 66 Street Far Rockaway | 6312 Beach Channel Dr Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Lease dates (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |

| Description of property—units, design, appeal, age, vacancies, and condition | # Units 2  # Vac. 2 | # Units 2  # Vac. 2  Yr. Blt: | # Units 2  # Vac. 2  Yr. Blt: | # Units 2  # Vac. 2  Yr. Blt: |
|---|---|---|---|---|
| | Yr. Blt: 1930 | 1940 | 1920 | 1940 |
| | 2 Family | 2 Family | 2 Family | 2 Family |
| | Frame | Frame | Frame | Frame |
| | Avg. Appeal | Avg. Appeal | Avg. Appeal | Avg. Appeal |
| | Detached | Detached | Detached | Detached |

| Individual unit breakdown | Rm. Count Tot Br Bath | Size Sq.Ft. | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 3 1 | 570 | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |
| | 5 3 1 | 570 | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |

| Utilities, furniture and amenities included in rent | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished |
|---|---|---|---|---|

| Functional utility, basement, housekeeping, project amenities, etc. | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling |
|---|---|---|---|---|

Analysis of rental data and support for estimated market rents for the individual subject units including the adjustments used, the adequacy of comparables, rental concessions, etc.)

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most two family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income producing potential.

**Subject's rent schedule**    The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics of the comparable rents to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date Began | End | No. Units Vacant | Per Unit Unfurnished | Furnished | Total Rents | Per Unit Unfurnished | Furnished | Total Rents |
| 1 | Vacant | | 1 | Vacant | $ | $ | $ | 650 | $ | $ 650 |
| 1 | Vacant | | 1 | Vacant | | | | 650 | | 650 |
| | | | 2 | | | | | | | $ 1,300 |

Other monthly income (itemize) $ 

| Vacancy: Actual last year | 0 % | Previous year | 0 % | Estimated: | 2 % = | 312 Annually | Total gross estimated rent $ 1,300 |

Utilities included in estimated rental: ☐ Electric ☒ Water ☒ Sewer ☐ Gas ☐ Oil ☒ Trash Collection ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rentals, utilities, etc.): The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

M.A.P. Appraisals

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The undersigned has recited three recent sales of properties most similar and proximate to the subject property and has considered these in the analysis. If there is a significant variation between the subject and comparable property, a dollar adjustment reflecting the market reaction to those items or an explanation supported by the market data. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the adjusted sales price of the comparable; if a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the adjusted sales price of comparable. **Gross Monthly Rent+**  **+ Gross Monthly Rent**

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 150 Beach 96th Street | 6923 Decosta Avenue | 1420 E Mott Avenue | 3001 Seagirt Avenue |
| | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile NE | 3/4 Mile NE | 1/2 Mile NE |
| Sales price | $ 160,000 | $ 150,000 | $ 185,000 | $ 174,000 |
| Sale price per GBA | $ 140.35 | $ 83.33 | $ 91.40 | $ 87 |
| Gross monthly rent | $ 1,300 | $ 1,200 | $ 1,600 | $ 1,500 |
| Gross rne. mitmult (1) | 123 | 125 | 115.6 | 116 |
| Sales price per unit | $ 80,000 | $ 75,000 | $ 92,500 | $ 87,000 |
| Sales price per room | $ 16,000 | $ 18,750 | $ 15,416 | $ 14,500 |
| Data and/or Verification Sources | Inspection | Comps Inc Closed | Comps Inc Closed | Comps Inc Closed |

| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjstmnt | DESCRIPTION | +(-)$ Adjstmnt | DESCRIPTION | +(-)$ Adjstmnt |
|---|---|---|---|---|---|---|---|
| Sales or financing concessions | | Unknown | | FHA | | FHA | |
| | | None Noted | | None Noted | | None Noted | |
| Date of sale/time | | 5/96 | | 9/96 | | 7/96 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 18.8x65/Avg | 30x100/Avg | | 34x93/Avg | | 32x100/Avg | |
| View | Waterview | Average | 15,000 | Average | 15,000 | Average | 15,000 |
| Design and appeal | Colonial/Det | Colonial/SD | 5,000 | Colonial/Det | | Colonial/Det | |
| Quality of construction | Frame/Avg | Brk/Frm/Avg | -2,500 | Frame/Avg | | Frame/Avg | |
| Age | 67 | 57 | | 47 | | 47 | |
| Condition | Average | Average | | Average | | Average | |
| Gross Building Area | 1,140 Sq.ft. | 1,800 Sq.ft. | -10,000 | 2,024 Sq.ft. | -13,500 | 2,000 Sq.ft. | -13,000 |

| Unit breakdown | No. units | Tot Br Bath | Vac. | | No. units | Rm count Tot Br Bath | Vac. | | No. units | Rm count Tot Br Bath | Vac. | | No. units | Rm count Tot Br Bath | Vac. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 5 2 1 | 1 | | 1 | 3 1 1 | 0 | | 1 | 6 3 1.5 | 0 | -1,500 | 1 | 6 3 1 | 0 | |
| | 1 | 5 2 1 | 1 | | 1 | 5 1 0.5 | 0 | -1,500 | 1 | 6 3 1.5 | 0 | -1,500 | 1 | 6 3 1 | 0 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basement description | Slab | Full-Finish | -8,000 | Full-Finish | -8,000 | Full-Finish | -8,000 |
| Functional utility | Average | Average | | Average | | Average | |
| Heating/cooling | Steam/None | Steam/None | | Steam/None | | Steam/None | |
| Parking on/off site | None | 1 Car | -4,000 | 1 Car | -4,000 | 1 Car | -4,000 |
| Project amenities & fee (if applicable) | Average Amenities | Average Amenities | | Average Amenities | | Average Amenities | |
| Net Adj. (total) | | + [x] - | -6,000 | + [x] - | -13,500 | + [x] - | -10,000 |
| Adjusted sales price of comparable | | | 144,000 | | 171,500 | | 164,000 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchaser's motivation in this market):
The GLA was adjusted at $15 per square foot. Subject has superior waterview. Comparable 1 slightly exceeds the 6 month guideline however it was utilized due stable market conditions in last 1 year.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | None | None | None | None |
| | Public Record | Public Record | Public Record | Public Record |

Analysis of any current agreements of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal:
There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,300   X gross rent multiplier (GRM) 125   = $ 162,500   INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including expense ratios, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

INDICATED VALUE BY SALES COMPARISON APPROACH .................................................. $ 160,000
INDICATED VALUE BY INCOME APPROACH ............................................................ $ 162,500
INDICATED VALUE BY COST APPROACH............................................................... $ 163,225

This appraisal is made [x] "as is" ☐ subject to the repairs, alterations, inspections, or conditions listed below ☐ subject to completion per plans and specifications.
Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 160,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature |
| Name Michael Palmieri | Name |
| Date Report Signed January 28, 1997 | Date Report Signed |
| State Certification # 45000012890   State NY | State Certification #   State |
| Or State License # | Or State License #   State |
| | ☐ Did ☐ Did Not Inspect Property |



## SKETCH/AREA TABLE ADDENDUM

File No.  97000048

| Property Address | 150 Beach 96th Street | | | | | |
|---|---|---|---|---|---|---|
| City  Far Rockaway | | State  NY | | County  Queens | | Zip Code  11693 |
| Borrower  Eyal Cohen | | | | | | |
| Lender/Client  Interstate Resources | | | | | | |



**1st Floor**

**2nd Floor**

SCALE: 1 inch = 15.00 feet

### AREA CALCULATIONS SUMMARY

| Area | Name of Area | Size | Totals |
|---|---|---|---|
| GLA1 | First Floor | 570.00 | 570.00 |
| GLA2 | Second Floor | 570.00 | 570.00 |

### LIVING AREA CALCULATIONS

| Breakdown | | | Subtotals |
|---|---|---|---|
| 15.00 | X | 38.00 | 570.00 |
| 15.00 | X | 38.00 | 570.00 |

TOTAL LIVABLE  (rounded)        1140                    1140

M.A.F. Appraisals                              MCB, Richardson, TX (214) 699-7763                              APX-6100 Apex 6

## OPERATING INCOME STATEMENT

### One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property

| Property Address | | | |
|---|---|---|---|
| 150 Beach 96th Street | Far Rockaway | NY | 11693 |
| Street | City | State | Zip Code |

General Instructions: This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☐ No ☒ | Vacant | $_____ | $650 | Electricity......... | ☐ | ☒ |
| Unit No. 2 | Yes ☐ No ☒ | Vacant | $_____ | $650 | Gas .............. | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | _____ | $_____ | $_____ | Fuel Oil .......... | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | _____ | $_____ | $_____ | Fuel (Other) ...... | ☒ | ☐ |
| | | | | | Water/Sewer ...... | ☒ | ☐ |
| Total ................... | | | $_____ | $1,300 | Trash Removal ..... | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 Months

| Income  (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented)................. | $15,600 | $_____ |
| Other Income (include sources) ..................... | +_____ | +_____ |
| Total ................................. | $15,600 | $_____ |
| Less Vacancy/Rent Loss ...................... | -312 (2 %) | - ( %) |
| Effective Gross Income. .................. | $15,288 | $_____ |
| Expenses (Do not include expenses for owner-occupied units) | | |
| Electricity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 500 | _____ |
| Gas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Fuel Oil  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Fuel . . . . . . . . . . . . . . . . (Type - Gas                    ) | 1,500 | _____ |
| Water/Sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 800 | _____ |
| Trash Removal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Pest Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100 | _____ |
| Other Taxes or Licenses  . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Casual Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating . . . . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2  . . . . . . . . . . . . | 478 | _____ |
| Miscellaneous Insurance . . . . . . . . . . . . . . . . . . . . . . . . . | 1,200 | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| Total Operating Expenses . . . . . . . . . . . . . . . . . . . . . . | $5,328 | $_____ |

## REPLACEMENT RESERVE SCHEDULE

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.-should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | Remaining Life | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|
| Stoves/Ranges .... | $500 | ea. ÷ 10 Yrs. x | 2 | Units = | $100 | $ |
| Refrigerators ..... | $500 | ea. ÷ 10 Yrs. x | 2 | Units = | $100 | $ |
| Dishwashers ..... | $ | ea. ÷ Yrs. x | | Units = | $ | $ |
| A/C Units........ | $ | ea. ÷ Yrs. x | | Units = | $ | $ |
| C. Washer/Dryers .. | $ | ea. ÷ Yrs. x | | Units = | $ | $ |
| HW Heaters ..... | $800 | ea. ÷ 15 Yrs. x | 1 | Units = | $53.33 | $ |
| Furnace(s)....... | $2500 | ea. ÷ 20 Yrs. x | 1 | Units = | $125 | $ |
| (Other) ......... | $ | ea. ÷ Yrs. x | | Units = | $ | $ |
| Roof........... | $2000 | ÷ 20 Yrs. x One Bldg. | | ............. = | $100 | $ |

Carpeting (Wall to Wall)

Remaining Life

| | | | | | | |
|---|---|---|---|---|---|---|
| (Units) | ___ Total Sq. Yds. @ $ ___ Per Sq. Yd. ÷ ___ Yrs. = | | | | $ ___ | $ ___ |
| (Public Areas) | ___ Total Sq. Yds. @ $ ___ Per Sq. Yd. ÷ ___ Yrs. = | | | | $ ___ | $ ___ |

Total Replacement Reserves. (Enter on Pg. 1)     $478     $ ___

## OPERATING INCOME RECONCILIATION

$ 15,288    - $ 5,328    = $ 9,960    ÷ 12 = $ 830

Effective Gross Income    Total Operating Expenses    Operating Income    Monthly Operating Income

$ ___ - $ ___ = $ ___

Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's Instructions for 2-4 Family Owner-Occupied Properties

■ If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's Instructions for 1-4 Family Investment Properties

■ If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (Including sources for data and rationale for the projections)
The reported income and expenses are in accordance with normal expectations for a dwelling the size, age and condition as the subject.

Michael Palmieri                                 January 28, 1997
Appraiser Name                          Appraiser Signature                   Date
Underwriter's Comments and Rationale for Adjustments

Underwriter Name                        Underwriter Signature                   Date



**First American Field Services**
Operations Center
P.O. Box 2057. Lakewood. New Jersey. 08701-8057
1125 Ocean Avenue. Lakewood. New Jersey. 08701-4598
Telephone: 732-363-3626 • Fax: 732-363-0319

## Property Inspection

### Client # 7800 = IMC Mortgage Company - Richard Davenport

=================== PRINT DATE: 07/08/99 =======================

```
  : 574004
--------------------------------
  : 850324    Insp: 3882
--------------------------------
  : Unknown
--------------------------------
  : JOSE CRUZ
--------------------------------
eet: 150 BEACH 96TH ST
--------------------------------
y  : FAR ROCKAWAY
--------------------------------
te : NY   Zip: 11693
--------------------------------
.# : 1255693
--------------------------------
rge: $  9.95
--------------------------------
Amt :
--------------------------------
Dt :
--------------------------------
ck :
--------------------------------
e  : $  9.95
--------------------------------
 Dt: 06/07/99
--------------------------------
 Dt: 06/16/99
```

ATTACH

PHOTOGRAPH

HERE

=========================================================================

----------------- CONDITIONS AND RESULTS AS OF 06/16/99 -----------------

```
CANT                            POOR Condition

ame Construction                Duplex

proving Area Conditions         VACANT & BOARDED

ir Grounds Maintenance          Visually Verified Status

her=See Comments                2 Story/

ite/                            Blue Trim
```

----------------- COMMENTS FOR THIS WORK ORDER -----------------

```
spectors Opinion of Value: $   50,000
bject Property Vacancy Control #: 617009  Vacancy Date: 06/17/99
```

L# 574004

850324



574004
NC 7035485

CRUZ, JOSE              NC7035485              3/11/97
150 BEACH 96TH STREET
ROCKAWAY BEACH, NY 11693

CLOSING AGENT:         WEIDER & MASTROIANNI
                       1819 WILLIAMSBRIDGE RD, BRONX, NY 10461
                       PLACE OF SETTLEMENT: 2562 86TH ST
                       BROOKLYN, NY 11214

TITLE COMPANY:         HEIGHTS ABSTRACT
                       356 COURT ST/BROOKLYN,NY 11231

VESTED:                LARGO PROPERTIES, INC-FROM OCEAN FRONT
                       TO JOSE CRUZ

APPRAISER:             M.A.P./MICHAEL PALMIERI
                       APPRAISAL FOR THIS LOAN AND LOAN #NC7035175
                       ARE IDENTICAL AND ARE WORD FOR WORD, SAME
                       COMPS/DONE SAME DAY.  APPEARS A ROW OF
                       HOUSES ALL SAME, STEET SCENE IS SAME ON
                       BOTH.

HOMEWOWNERS/FLOOD:     AGENT:   ALL PURPOSE INS AGENCY
                       AGENT:   ANNA KITSIS  718-646-5500

EMPLOYMENT:            HB DEVELOPMENT
                       148-05 HILL SIDE AV
                       JAMAICA, NY 11432
                       ASST MGR/MANAGEMENT CORP  212-565-3500

SELLER:                LARGO PROPERTIES/EYAL COHEN

M.A.F. Appraisals

SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

Summary Appraisal Report

NC 7035485

| | | | |
|---|---|---|---|
| Property Address 150 Beach 96th Street | City Far Rockaway | State NY | Zip Code 11693 |
| Legal Description Section: 62 Block: 16168 Lot: 17 | | County Queens | |
| Assessor's Parcel No. SMSA 5600 | Tax Year 1997 | R.E. Taxes $ 2,000E | Special Assessments $ NA |
| Neighborhood or Project Name | Map Reference 018 L19 | Census Tract 0942.01 | |
| Borrower Eyal Cohen | Current Owner Ocean Front | Occupancy ☐ Owner ☐ Tenant ☒ Vacant | |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Present Use ☐ PUD ☐ Condominium | HOA $ | /Mo. |
| Sales Price $ 160,000 | Date of Sale Pending Description and $ amount of loan charges/concessions to be paid by seller Unknown | | |
| Lender/Client Interstate Resources | Address 254 Route 17K, Newburgh, NY 12550 | | |
| Appraiser M.A.F Appraisals | Address 114 Old Country Road, Suite 308, Mineola NY 11501 | | |

| | | | | Single family housing | | | Predominant | | 2-4 family housing | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☒ Urban | ☐ Suburban | ☐ Rural | PRICE $ (000) | AGE (yrs) | Predominant | 2-4 family Occupancy | PRICE $ (000) | AGE (yrs) | | |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Occupancy | | | | | | | |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☒ Owner | 70 Low 20 | | ☒ Owner | 100 Low 20 | | | |
| Property values | ☐ Increasing | ☒ Stable | ☐ Declining | ☐ Tenant | 190 High 90 | | ☐ Tenant | 250 High 90 | | | |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☐ Vacant (0-5%) | Predominant | | ☐ Vacant (0-5%) | Predominant | | | |
| Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. | ☐ Over 6 mos. | ☐ Vacant (over 5%) | 110 70 | | ☐ Vacant (over 5%) | 175 70 | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Typical 2-4 family bldg. Type 2 Family | No. stories 2 | No. units 2 | Age 67 yrs. | Present land use % | | Land use change | | | |
| Typical rents $ 450 to $ 750 | ☐ Increasing | ☒ Stable | ☐ Declining | One family 55 | | ☒ Not likely | ☐ Likely | | |
| Est. neighborhood apt. vacancy 2 % | ☐ Increasing | ☒ Stable | ☐ Declining | 2-4 family 30 | | ☐ In process to: | | | |
| Rent controls ☐ Yes ☒ No | ☐ Likely If no or likely, describe | | | Multi-family 10 | | | | | |
| | | | | Commercial 5 | | | | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 89 Street.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject property is located in a residential area improved with a mixture of one and two family dwellings. Two family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.

The following available listings represent the most current, similar, and proximate competitive properties in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market comparing with the subject property in the subject neighborhood and recent prices and marketing time trends affecting the subject property. (Listings outside the subject neighborhood are not considered applicable. The listing comparables can be rental or sale comparables if they are currently for sale.)

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| | 150 Beach 96th Street | 2954 Oceancrest Blvd | 468 Beach 63 Street | 361 Beach 69 Street |
| Address Far Rockaway | | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile | 1/2 Mile | 1/2 Mile |
| Listing price | $ 160,000 | ☒ Unf. ☐ Furn. $ 169,000 | ☒ Unf. ☐ Furn. $ 170,000 | ☐ Unf. ☐ Furn. $ 172,000 |
| Approximate GBA | 1,140 | 1,800 | 1,700 | 1,760 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Tot.rms./BR/BA | 2 10 6 2 | 2 11 5 2 | 2 10 6 2 | 2 11 5 2 |
| Approximate year built | 1930 | 1965 | 1960 | 1920 |
| Approximate days on market | 60 +/- | 30 +/- | 90 +/- | 15 +/- |

Comparison of listings to subject property: All three listings are similar two-family colonials located in the subject area and utilize the same support facilities.

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on the market and any change over past year, etc.: The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers and is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.

| | | | |
|---|---|---|---|
| Dimensions 18.8 x 65.0 | | Topography | Level |
| Site area 1,222.0 Sq Ft | Corner lot ☐ No ☒ Yes | Size | Average |
| Specific zoning classification and description Residential (R6) | | Shape | Rectangular |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage | Appears Adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View | Average |
| | | Landscaping | Average |
| | | Driveway | None |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | 110 Ampos | Street | Macadam | ☒ | ☐ | Apparent easements | Typical Utility |
| Gas | ☒ | | Curb/gutter | Concrete | ☒ | ☐ | | |
| Water | ☒ | | Sidewalk | Concrete | ☒ | ☐ | FEMA Special Flood Hazard Area ☒ Yes ☐ No | |
| Sanitary sewer | ☒ | | Street lights | Electric | ☒ | ☐ | FEMA Zone A | Map Date 5-18-92 |
| Storm sewer | ☒ | | Alley | | | | FEMA Map No. 360497-0111C | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): Typical utility easements for electricity, sewer, gas and telephone do not effect value. There are no apparent adverse easements or encroachments that would impede marketability.

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| General description | | | Exterior description | (Materials/condition) | Foundation | | | Insulation (R-value if known) | |
|---|---|---|---|---|---|---|---|---|---|
| Units/Bldgs. | 2 | /1 | Foundation | Conc. Block | Slab | Yes | | [x] Roof | Unknown |
| Stories | 2 | | Exterior walls | Wood | Crawl space | No | | [x] Ceiling | Unknown |
| Type (det./att.) | Detached | | Roof surface | Asphalt | Sump Pump | Not Noted | | [x] Wall | Unknown |
| Design (style) | Colonial | | Gutters&Dwnspts | Aluminum | Dampness | Not Noted | | [x] Floor | Unknown |
| Existing/proposed | Yes/No | | Window Type | Dbl Hng | Settlement | Not Noted | | [x] None | Unknown |
| Under construction | No | | Storm sash/Screens | Yes/Yes | Infestation | Not Noted | | Adequacy | Unknown |
| Year Built | 1930 | | Manufactured housing | [ ] Yes [x] No | Basement | % of 1st floor area | | Energy efficient items: | |
| Effective age(yrs.) | 15-20 | | *(Complies with the HUD Manufactured Housing Construction and Safety Standards.) | | Basement finish | | | Insulated Windows | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrms | # Baths | Laundry | Other | Sq. ft. Area | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | | 1 | | | 3 | 1 | | | 570 | 570 |
| 1 | 1 | | 1 | | 1 | | | 3 | 1 | | | 570 | 570 |

Improvements contain **10** Rooms; **6** Bedroom(s); **2** Bath(s); **1,140** Square feet of GROSS BUILDING AREA

**GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.**

| Surfaces | (Materials/condition) | Heating | | Kitchen equip. (#/Amt-cond.) | Attic | | Car Storage | No. Cars |
|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Avg | Type | Steam | Refrigerator 2/Avg | [x] None | | Garage | |
| Walls | Drywall/Avg | Fuel | Gas | Range/oven 2/Avg | [ ] Stairs | | Carport | |
| Trim/Finish | Wood/Avg | Condition | Average | Disposal | [ ] Drop stair | | Attached | |
| Bath floor | Lino/Avg | | | Dishwasher | [ ] Scuttle | | Detached | |
| Bath wainscot | Fiberglass/Avg | Cooling | | Fan/hood 2/Avg | [ ] Floor | | Adequate | |
| Doors | Wooden/Avg | Central | No | Compactor | [ ] Heated | | Inadequate | |
| | All of the above | Other | | Washer/dryer | [ ] Finished | | Offstreet | |
| | are in Avg Cond | Condition | N/A | Microwave | [ ] Unfinished | | None | |
| Fireplace(s) | None | # | 0 | Intercom | | | | |

Condition of the improvements, repairs needed, quality of construction, additional features, modernization, etc.: **None.**

_____
_____
_____
_____
_____
_____

Depreciation (physical, functional, and external inadequacies, etc.): **The subject property was in average condition for it's neighborhood at the time of inspection. External obsolescence: none noted. Functional obsolescence: none noted. Repairs/Modernization: none noted. The subject's construction quality was average.**

_____
_____
_____

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: **Please see the attached Statement of Limiting Conditions.**

_____
_____
_____
_____
_____
_____
_____

## VALUATION ANALYSIS

| | | | | |
|---|---|---|---|---|
| ESTIMATED SITE VALUE | | = $ | 70,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life of the property): |
| ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS: | | | | |
| 1,140 Sq.Ft. @ $ 95 | = $ | | 108,300 | **See attached floor plan & calculations addendum.** |
| Sq.Ft. @ $ | = $ | | | |
| Sq.Ft. @ $ | = $ | | | **Physical depreciation was calculated using the economic age-life method.** |
| Sq.Ft. @ $ | = $ | | | |
| Sq.Ft. @ $ | = $ | | | |
| | = $ | | | **There was no functional or external obsolescence noted at time of inspection.** |
| | = $ | | | |
| Special Energy Efficient Items | = $ | | | **The land value ratio is typical for the area and does not impede marketability.** |
| Porches, Patios, etc. | = $ | | | |
| Total Estimated Cost New | = $ | | 108,300 | |
| Less Physical 25% Functional External | | | | |
| Depreciation 27,075 | = $ | | 27,075 | |
| Depreciated Value of Improvements | = $ | | 81,225 | |
| "As is" Value of Site improvements | = $ | | 12,000 | |
| INDICATED VALUE BY COST APPROACH | = $ | | 163,225 | |

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (The comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should assure the reader that the units and properties selected as comparables are comparable to the subject property. Both the units and the overall property and accurately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 150 Beach 96th Street Far Rockaway | 431 Beach 63 Street Far Rockaway | 427 Beach 66 Street Far Rockaway | 6312 Beach Channel Dr Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Lease dates (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |
| Description of property-units, design, appeal, age, vacancies, and conditions | # Units 2  # Vac. 2  Yr.Blt: Yr.Blt: 1930 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr.Blt: 1940 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr.Blt: 1920 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr.Blt: 1940 2 Family Frame Avg. Appeal Detached |

| Individual unit breakdown | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 / 3 / 1 | 570 | 5 / 2 / 1 | 882 | 850 | 4 / 2 / 1 | 710 | 750 | 4 / 2 / 1 | 880 | 800 |
| | 5 / 3 / 1 | 570 | 5 / 2 / 1 | 882 | 850 | 4 / 2 / 1 | 710 | 750 | 4 / 2 / 1 | 880 | 800 |

| Utilities, furniture and amenities included in rent | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most two family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income producing potential.

Subject's rent schedule   The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must remove the rent characteristics of the comparables to the subject whenever estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date Begin | End | No. Units Vacant | Per Unit Unfurnished | Furnished | Total Rents | Per Unit Unfurnished | Furnished | Total Rents |
| 1 | Vacant | | 1 | Vacant | | | 650 | | 650 |
| 1 | Vacant | | 1 | Vacant | | | 650 | | 650 |
| | | | 2 | | | | | | 1,300 |

Other monthly income (itemize)

Vacancy: Actual last year __0__ %   Previous year __0__ %   Estimated __2__ % = __312__ Annually   Total gross estimated rent __1,300__

Utilities included in estimated rents: ☐ Electric ☒ Water ☒ Sewer ☐ Gas ☐ Oil ☒ Trash Collection ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rental, unless, etc.): The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The undersigned has related three recent sales of properties most similar and proximate to the subject property that has described and analyzed those in this analysis. If there is a significant variation between the subject and comparable properties, the analysis includes a dollar adjustment reflecting the market reaction to those items of significance. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the adjusted sales price of the comparable property; if a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the adjusted sales Price of the comparable property.   ITI Sales Price    ÷ Gross Monthly Rent)

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 150 Beach 96th Street | 6923 Decosta Avenue | 1420 E Mott Avenue | 3001 Seagirt Avenue |
|  | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject |  | 1/2 Mile NE | 3/4 Mile NE | 1/2 Mile NE |
| Sales price | $ 160,000 | ☑ Unf. ☐ Furn. $ 150,000 | ☑ Unf. ☐ Furn. $ 185,000 | ☑ Unf. ☐ Furn. $ 174,000 |
| Sale price per GLA | $ 140.35 | $ 83.33 | $ 91.40 | $ 87 |
| Gross monthly rent | $ 1,300 | $ 1,200 | $ 1,600 | $ 1,500 |
| Gross rent. mult./unit (1) | 123 | 125 | 115.6 | 116 |
| Sales price per unit | $ 80,000 | $ 75,000 | $ 92,500 | $ 87,000 |
| Sales price per room | $ 16,000 | $ 18,750 | $ 15,416 | $ 14,500 |
| Data and/or | Inspection | Comps Inc | Comps Inc | Comps Inc |
| Verification Sources |  | Closed | Closed | Closed |

| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust |
|---|---|---|---|---|---|---|---|
| Sales or financing concessions |  | Unknown |  | FHA |  | FHA |  |
|  |  | None Noted |  | None Noted |  | None Noted |  |
| Date of sale/time |  | 5/96 |  | 9/96 |  | 7/96 |  |
| Location | Average | Average |  | Average |  | Average |  |
| Leasehold/Fee Simple | Fee Simple | Fee Simple |  | Fee Simple |  | Fee Simple |  |
| Site | 18.8x65/Avg | 30x100/Avg |  | 34x93/Avg |  | 32x100/Avg |  |
| View | Waterview | Average | 15,000 | Average | 15,000 | Average | 15,000 |
| Design and appeal | Colonial/Det | Colonial/SD | 5,000 | Colonial/Det |  | Colonial/Det |  |
| Quality of construction | Frame/Avg | Brk/Frm/Avg | -2,500 | Frame/Avg |  | Frame/Avg |  |
| Age | 67 | 57 |  | 47 |  | 47 |  |
| Condition | Average | Average |  | Average |  | Average |  |
| Gross Building Area | 1,140 Sq.ft. | 1,800 Sq.ft. | -10,000 | 2,024 Sq.ft. | -13,500 | 2,000 Sq.ft. | -13,000 |

| Unit breakdown | No. | Rm. count | | | | | Vac. | No. | Rm. count | | | | | Vac. | No. | Rm. count | | | | | Vac. | No. | Rm. count | | | | | Vac. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| units | Tot | Br | Bath | | | Vac. | | | | | | | | | | | | | | | | | | | | | | | | |
| | 1 5 | 2 1 | 1 | | | 0 | | 1 3 1 1 | | | | | 0 | | 1 6 3 1 | | | | 0 | -1,500 | | 1 6 3 1 | | | | 0 | -1,500 | | |
| | 1 5 | 2 1 | 1 | | | 0 | -1,500 | 1 5 3 1 5 | | | | | 0 | | 1 6 3 1.5 | | | | 0 | | | 1 6 3 1 | | | | 0 | | | |

| Basement description | Slab | Full-Finish | -8,000 | Full-Finish | -8,000 | Full-Finish | -8,000 |
|---|---|---|---|---|---|---|---|
| Functional utility | Average | Average |  | Average |  | Average |  |
| Heating/cooling | Steam/None | Steam/None |  | Steam/None |  | Steam/None |  |
| Parking on/off site | None | 1 Car | -4,000 | 1 Car | -4,000 | 1 Car | -4,000 |
| Project amenities & fee (if applicable) | Average Amenities | Average Amenities |  | Average Amenities |  | Average Amenities |  |
| Net Adj. (total) |  | ☐+ ☑- $ | -6,000 | ☐+ ☑- $ | -13,500 | ☐+ ☑- $ | -10,000 |
| Adjusted sales price of comparable |  | $ | 144,000 | $ | 171,500 | $ | 164,000 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchaser's movement in that market:
The GLA was adjusted at $15 per square foot. Subject has superior waterview. Comparable 1 slightly exceeds the 6 month guideline however it was utilized due stable market conditions in last 1 year.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | None | None | None | None |
| Source for prior sales within year of appraisal | Public Record | Public Record | Public Record | Public Record |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal:
There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,300    X gross rent multiplier (GRM) 1,300    = $ 162,500    INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including expense ratios, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

| INDICATED VALUE BY SALES COMPARISON APPROACH | $ 160,000 |
|---|---|
| INDICATED VALUE BY INCOME APPROACH | $ 162,500 |
| INDICATED VALUE BY COST APPROACH | $ 163,225 |

This appraisal is made ☑ "as is"  ☐ subject to the repairs, alterations, inspections, or conditions listed below  ☐ subject to completion per plans and specifications.

Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 )

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 160,000

APPRAISER:    SUPERVISORY APPRAISER (ONLY IF REQUIRED):

Signature _____    Signature _____    ☐ Did  ☐ Did Not
Name  Michael Palmieri    Name _____    Inspect Property
Date Report Signed  January 28, 1997    Date Report Signed _____
State Certification # 45000012890    State    State Certification # _____    State
Or State License # _____    State    Or State License # _____    State

# SKETCH/AREA T/ .E ADDENDUM



File No.  97000048

| Property Address | 150 Beach 96th Street | | | | | |
|---|---|---|---|---|---|---|
| City  Far Rockaway | | State  NY | County  Queens | | Zip Code  11693 | |
| Borrower  Eyal Cohan | | | | | | |
| Lender/Client  Interstate Resources | | | | | | |



1st Floor

2nd Floor

SCALE: 1 inch = 15.00 feet

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA CALCULATIONS | | | |
|---|---|---|---|---|---|---|---|
| Area | Name of Area | Size | Totals | Breakdown | | | Subtotals |
| GLA1 | First Floor | 570.00 | 570.00 | 15.00 | X | 38.00 | 570.00 |
| GLA2 | Second Floor | 570.00 | 570.00 | 15.00 | X | 38.00 | 570.00 |

| TOTAL LIVABLE  (rounded) | 1140 | 1140 |
|---|---|---|

M.A.P. Appraisals                    MCS, Richardson, TX (214) 699-7763                    APX-5100 Apex 5

## OPERATING INCOME STATEMENT
### One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property

**Property Address**

| 150 Beach 96th Street | Far Rockaway | NY | 11693 |
|---|---|---|---|
| Street | City | State | Zip Code |

General Instructions: This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☐ No ☒ | Vacant | $ | $650 | Electricity......... | ☐ | |
| Unit No. 2 | Yes ☐ No ☒ | Vacant | $ | $650 | Gas ............ | | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | | $ | $ | Fuel Oil ......... | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $ | $ | Fuel (Other) ...... | ☒ | ☐ |
| | | | | | Water/Sewer ..... | ☒ | ☐ |
| Total ................. | | | $ | $1,300 | Trash Removal ..... | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 Months

| Income (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented).................. | $15,600 | $ |
| Other Income (include sources) ........................... | + | + |
| Total ................................................. | $15,600 | $ |
| Less Vacancy/Rent Loss ................................... | - 312   (2   %) | - (   %) |
| Effective Gross Income................................... | $15,288 | |
| **Expenses (Do not include expenses for owner-occupied units)** | | |
| Electricity .............................................. | 500 | |
| Gas .................................................... | | |
| Fuel Oil ................................................ | | |
| Fuel ...................... (Type - Gas       ) | 1,500 | |
| Water/Sewer ............................................ | 800 | |
| Trash Removal ........................................... | | |
| Pest Control ............................................ | 100 | |
| Other Taxes or Licenses ................................. | | |
| Casual Labor ........................................... | 250 | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating ................................. | 250 | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance ............................. | 250 | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses .................................... | | |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies ............................................... | | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2   ........... | 478 | |
| Miscellaneous  Insurance ................................ | 1,200 | |
| .................................................... | | |
| .................................................... | | |
| .................................................... | | |
| .................................................... | | |
| .................................................... | | |
| .................................................... | | |
| **Total Operating Expenses** ........................... | $5,328 | $ |

**M.A.P. Appraisals**

## REPLACEMENT RESERVE SCHEDULE

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.-should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | | Remaining Life | | By Applicant/Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|
| Stoves/Ranges .... ● | $500 | ea. ÷ 10 | Yrs. x 2 | Units = | $100 | $ |
| Refrigerators ..... ● | $500 | ea. ÷ 10 | Yrs. x 2 | Units = | $100 | $ |
| Dishwashers ...... ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| A/C Units. ....... ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| C. Washer/Dryers .. ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| HW Heaters ...... ● | $800 | ea. ÷ 15 | Yrs. x 1 | Unit = | $53.33 | $ |
| Furnace(s)........ ● | $2500 | ea. ÷ 20 | Yrs. x 1 | Unit = | $125 | $ |
| (Other) .......... ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| Roof. .......... ● | $2000 | ÷ 20 | Yrs. x One Bldg. ............ = | | $100 | $ |

Carpeting (Wall to Wall)                                                    Remaining Life

| (Units) | _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = | $ | $ |
|---|---|---|---|
| (Public Areas) | _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = | $ | $ |

Total Replacement Reserves. (Enter on Pg. 1)                         $478        $

## OPERATING INCOME RECONCILIATION

$ 15,288 _____ - $ 5,328 _____ = $ 9,960 _____ ÷ 12 = $ 830 _____
Effective Gross Income    Total Operating Expenses    Operating Income    Monthly Operating Income

$ _____ - $ _____ = $ _____
Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's Instructions for 2-4 Family Owner-Occupied Properties

■ If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's Instructions for 1-4 Family Investment Properties

■ If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (including sources for data and rationale for the projections)
The reported income and expenses are in accordance with normal expectations for a dwelling the size, age and condition as the subject.

Michael Palmieri                                                          January 28, 1997
Appraiser Name                          Appraiser Signature              Date
Underwriter's Comments and Rationale for Adjustments

Underwriter Name                        Underwriter Signature            Date

EXTERIOR OF SUBJECT

| Borrower/Client Eval Oberg | | File No. 97000048 |
|---|---|---|
| Property Address 0 Beach 96th Street | | |
| City Far Rock | County Queens | ate NY | Zip Code 11693 |
| Lender Interstate Resources | | |



**FRONT**



**REAR**



**STREET SCENE**

Form FP1  M.A.P. Appraisals  MCS, Richardson, TX 75082 (214) 699-7763

# COMPARABLE SALES

| | |
|---|---|
| Borrower/Client Eyal Cohen | File No. 97000048 |
| Property Address 0 Beach 96th Street | |
| City Far Rockaway    County Queens    State NY    Zip Code 11693 | |
| Lender Interstate Resources | |



Comparable Sale 1
6923 Decosta Ave
Far Rockaway
SP$ - $150,000
Sale Data -5/96



Comparable Sale 2
1420 E Mott Ave
Far Rockaway
SP$ - $185,000
Sale Data -9/96

Comparable Sale 3
3001 Seagirt Ave
Far Rockaway
SP$ - $174,000
Sale Date -7/96

## M.A.P. Appraisals
### SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT
Summary Appraisal Report

| | |
|---|---|
| Property Address 151 Beach 96th Street | City Far Rockaway  State NY  Zip Code 11693 |
| Legal Description Section:62 Block:16168 Lot:17 | County Queens |
| Assessor's Parcel No. SMSA 5600 | Tax Year 1997  R.E. Taxes $ 2,000E  Special Assessments $ NA |
| Neighborhood or Project Name 018 L19 | Map Reference 018 L19  Census Tract 0942.01 |
| Borrower Galia Cohen | Current Owner Ocean Front  Occupant: Owner ☐ Tenant ☐ Vacant ☒ |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium ☐ HOA $  /Mo. |
| Sales Price $ 160,000  Date of Sale Pending | Description and $ amount of loan charges/concessions to be paid by seller Unknown |
| Lender/Client Interstate Resources | Address 254 Route 17K, Newburgh, NY 12550 |
| Appraiser M.A.P Appraisals | Address 114 Old Country Road, Suite 308, Mineola, NY 11501 |

| | | | | | Predominant | Single family housing | | 2-4 family housing | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☒ Urban | ☐ Suburban | ☐ Rural | | | PRICE $ (000) | AGE (yrs) | | PRICE $ (000) | AGE (yrs) |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Occupancy | Owner | 70 Low 20 | | Owner | 100 Low 20 |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | | Tenant | 190 High 90 | | Tenant | 250 High 90 |
| Property values | ☒ Increasing | ☐ Stable | ☐ Declining | | Vacant (0-5%) | Predominant | | Vacant (0-5%) | Predominant |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | | | 110  70 | | Vacant (over 5%) | 175  70 |
| Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. | ☐ Over 6 mos. | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Typical 2-4 family bldg. Type 2 Family | No. stories 2 | No. units 8 | Age 67 yrs. | Present land use % | | Land use change |
| Typical rents $ 450 to $ 750 | ☐ Increasing | ☒ Stable | ☐ Declining | One family 55 | | ☒ Not likely  ☐ Likely |
| Est. neighborhood apt. vacancy 2 % | ☐ Increasing | ☒ Stable | ☐ Declining | 2-4 family 30 | | ☐ In process to: |
| Rent controls ☐ Yes ☒ No | ☐ Likely  If yes or likely, describe | | | Multi-family 10 | | |
| | | | | Commercial 5 | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 59 Street.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject property is located in a residential area improved with a mixture of one and two family dwellings. Two family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.

The following available listings represent the most current, similar, and proximate competitive properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market competing with the subject neighborhood and recent price and marketing time trends affecting the subject property. Listings outside the subject neighborhood are not considered applicable. The listing comparables can be rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| | 151 Beach 96th Street | 2954 Oceancrest Blvd | 468 Beach 63 Street | 361 Beach 69 Street |
| Address | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile | 1/2 Mile | 1/2 Mile |
| Listing price | $ 160,000 | ☒ Unt. ☐ Rent $ 169,000 | ☒ Unt. ☐ Rent $ 170,000 | ☒ Unt. ☐ Rent $ 172,000 |
| Approximate GBA | 1,140 | 1,800 | 1,700 | 1,760 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Tot.rms./BR/BA | 2 | 10 | 6 | 2 | 11 | 5 | 2 | 2 | 10 | 6 | 2 | 11 | 5 | 2 |
| Approximate year built | 1930 | 1965 | 1960 | 1920 |
| Approx. days on market | 60 +/- | 30 +/- | 90 +/- | 15 +/- |

Comparison of listings to subject property: All three listings are similar two-family colonials located in the subject area and utilize the same support facilities.

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing trend and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and standardization of trends in listing prices, average days on the market and any change over past year, etc.): The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers and is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.

| | | | |
|---|---|---|---|
| Dimensions 18.2 x 65.0 | | Topography | Level |
| Site area 1,222.0 Sq Ft | Corner lot ☐ No ☒ Yes | Size | Average |
| Specific zoning classification and description Residential (R6) | | Shape | Rectangular |
| Zoning compliance ☒ Legal ☐ Legal/Nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage | Appears Adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View | Average |
| | | Landscaping | Average |
| | | Driveway | None |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Apparent easements | Typical Utility |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | 110 Amps | Street | Macadam | ☒ | | | |
| Gas | ☒ | | Curb/gutter | Concrete | ☒ | | | |
| Water | ☒ | | Sidewalk | Concrete | ☒ | | FEMA Special Flood Hazard Area ☒ Yes ☐ No | |
| Sanitary sewer | ☒ | | Street lights | Electric | ☒ | | FEMA Zone A  Map Date 5-18-92 | |
| Storm sewer | ☒ | | Alley | None | | | FEMA Map No. 360497-0111C | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): Typical utility easements for electricity, sewer, gas and telephone do not effect value. There are no apparent adverse easements or encroachments that would impede marketability.

## SMALL RESIDENTIAL INCOME PROPERTY    APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should assure the reader that the units and properties selected as comparables are comparable to the subject property. Both the units and the overall property and accurately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 151 Beach 96th Street Far Rockaway | 431 Beach 63 Street Far Rockaway | 427 Beach 66 Street Far Rockaway | 6312 Beach. Channel Dr Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Lease dates (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |

| Description of property—units, design, appeal, age, vacancies, and conditions | # Units 2  # Vac. 2  Yr.Blt. 1930  2 Family  Frame  Avg. Appeal  Detached | # Units 2  # Vac. 2  Yr.Blt. 1940  2 Family  Frame  Avg. Appeal  Detached | # Units 2  # Vac. 2  Yr.Blt. 1920  2 Family  Frame  Avg. Appeal  Detached | # Units 2  # Vac. 2  Yr.Blt. 1940  2 Family  Frame  Avg. Appeal  Detached |
|---|---|---|---|---|

**Individual unit breakdown**

| | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot Br Bath | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 3 1 | 570 | | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |
| | 5 3 1 | 570 | | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |

| Utilities, furniture and amenities included in rent | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most two family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income producing potential.

Subject's rent schedule    The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent effectiveness of the comparable rents to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consonant with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| LEASES | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|
| Unit | Lease Dates Begin | End | No. Units Vacant | Per Unit Unfurnished | Furnished | Total Rents | Per Unit Unfurnished | Furnished | Total Rents |
| 1 | Vacant | | 1 | Vacant | | | 650 | | 650 |
| 1 | Vacant | | 1 | Vacant | | | 650 | | 650 |
| | | | 2 | | | | | | 1,300 |

Other monthly income (described)

Vacancy: Actual last year  0 %  Previous year  0 %  Estimated  2 %  312 Annually    Total gross estimated rent  $ 1,300

Utilities included in estimated rents:  ☐ Electric  ☒ Water  ☒ Sewer  ☐ Gas  ☐ Oil  ☐ Trash Collection  ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rental, utilities, etc.)  The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The underlined has rattled three report, sales of properties most similar and proximate to the subject property and has described and analyzed these in this analysis. If there a significant variation between the subject and comparable properties, the analysis includes a dollar adjustment reflecting the market reaction to those items of an explanation supported by the market data. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the adjusted sales price of the comparable property; if a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the adjusted sales Price of the comparable property. (ITI Sales Price  +  Gross Monthly Rents)

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 151 Beach 96th Street Far Rockaway | 6923 Decosta Avenue Far Rockaway | 11420 E Mott Avenue Far Rockaway | 3001 Seagirt Avenue Far Rockaway |
| Proximity to subject | | 1/2 Mile NE | 3/4 Mile NE | 1/2 Mile NE |
| Sales price | $ 160,000 | $ 150,000 | $ 185,000 | $ 174,000 |
| Sales price per GBA | $ 140.35 | $ 83.33 | $ 91.40 | $ 87 |
| Gross monthly rent | $ 1,300 | $ 1,200 | $ 1,600 | $ 1,500 |
| Gross rm. mt.mult.[1] | 123 | 125 | 115.6 | 116 |
| Sales price per unit | $ 80,000 | $ 75,000 | $ 92,500 | $ 87,000 |
| Sales price per room | $ 16,000 | $ 18,750 | $ 15,416 | $ 14,500 |
| Data source | Inspection | Comps Inc | Comps Inc | Comps Inc |
| Verification Sources | | Closed | Closed | Closed |

| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Sales or financing concessions | | Unknown None Noted | | FHA None Noted | | FHA None Noted | |
| Date of sale/time | | 5/96 | | 9/96 | | 7/96 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 18.8x65/Avg | 30x100/Avg | | 34x93/Avg | | 32x100/Avg | |
| View | Waterview | Average | 15,000 | Average | 15,000 | Average | 15,000 |
| Design and appeal | Colonial/Det | Colonial/SD | 5,000 | Colonial/Det | | Colonial/Det | |
| Quality of construction | Frame/Avg | Brk/Frm/Avg | -2,500 | Frame/Avg | | Frame/Avg | |
| Age | 67 | 57 | | 47 | | 47 | |
| Condition | Average | Average | | Average | | Average | |
| Gross Building Area | 1,140 Sq.Ft. | 1,800 Sq.Ft. | -10,000 | 2,024 Sq.Ft. | -13,500 | 2,000 Sq.Ft. | -13,000 |

| Unit breakdown | No. units | Rm. count Tot Br Bath | No. Vac. | No. units | Rm. count Tot Br Bath | No. Vac. | | No. units | Rm. count Tot Br Bath | No. Vac. | | No. units | Rm. count Tot Br Bath | No. Vac. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 5 2 1 | 1 | 1 | 3 1 1 | 0 | | 1 | 6 3 1.5 | 0 | -1,500 | 1 | 6 3 1 | 0 | |
| | 1 | 5 2 1 | 1 | 1 | 5 3 1.5 | 0 | -1,500 | 1 | 6 3 1.5 | 0 | -1,500 | 1 | 6 3 1 | 0 | |

| Basement description | Slab | Full-Finish | -8,000 | Full-Finish | -8,000 | Full-Finish | -8,000 |
|---|---|---|---|---|---|---|---|
| Functional utility | Average | Average | | Average | | Average | |
| Heating/cooling | Steam/None | Steam/None | | Steam/None | | Steam/None | |
| Parking on/off site | None | 1 Car | -4,000 | 1 Car | -4,000 | 1 Car | -4,000 |
| Project amenities & fee (if applicable) | Average Amenities | Average Amenities | | Average Amenities | | Average Amenities | |
| Net Adj. (total) | | + [ ] - [x] $ | -6,000 | + [ ] - [x] $ | -13,500 | + [ ] - [x] $ | -10,000 |
| Adjusted sales price of comparable | | $ | 144,000 | $ | 171,500 | $ | 164,000 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchaser's motivation in this market): The GLA was adjusted at $15 per square foot. Subject has superior waterview. Comparable 1 slightly exceeds the 6 month guideline however it was utilized due stable market conditions in last 1 year.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | None None Public Record | None Public Record | None Public Record | None Public Record |

Analysis of any current agreements of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal: There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,300 X gross rent multiplier (GRM) 125 = $ 162,500 INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including expense ratios, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................. $ 160,000
INDICATED VALUE BY INCOME APPROACH ................................................................. $ 162,500
INDICATED VALUE BY COST APPROACH .................................................................... $ 163,225

This appraisal is made [x] "as is" [ ] subject to the repairs, alterations, inspections, or conditions listed below [ ] subject to completion per plans and specifications.

Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property this is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 160,000

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Michael Palmieri | Name |
| Date Report Signed January 28, 1997 | Date Report Signed |
| State Certification # 45000012890 State NY | State Certification # [ ] Did [ ] Did Not State Inspect Property |
| Or State License # | Or State License # State |



# SKETCH/AREA TABLE ADDENDUM

File No.  97000106

| SUBJECT | | | | |
|---|---|---|---|---|
| Property Address | 151 Beach 96th Street | | | |
| City | Far Rockaway | State NY | County Queens | Zip Code 11693 |
| Borrower | Galla Cohen | | | |
| Lender/Client | Interstate Resources | | | |

```
        15'                          15'
   _____              _____
   |  Living   |             | BEDROOM  |
   |  Room     |             |          |
   |_____|             |_____|
   | Kitchen |A|             | BEDROOM  |≡|
   |         |T|             |_____|
   |_____|H|  38'        | BEDROOM  |
38'|         |_|  38'   38'  |_____|  38'
   | Kitchen |A|             | BEDROOM  |
   |         |T|             |_____|
   |_____|H|             | BEDROOM  |≡|
   |  Living  |              |_____|
   |  Room    |              | BEDROOM  |
   |_____|              |_____|
        15'                       15'

   1ST FLOOR                  2ND FLOOR
```

SCALE: 1 inch = 15.00 feet

## AREA CALCULATIONS SUMMARY

| Area | Name of Area | Size | Totals |
|---|---|---|---|
| GLA1 | First Floor | 570.00 | 570.00 |
| GLA2 | Second Floor | 570.00 | 570.00 |

## LIVING AREA CALCULATIONS

| Breakdown | | | Subtotals |
|---|---|---|---|
| 15.00 | X | 38.00 | 570.00 |
| 15.00 | X | 38.00 | 570.00 |

| TOTAL LIVABLE (rounded) | 1140 | | 1140 |
|---|---|---|---|

M.A.P. Appraisal                                                                File No. 97000108

## OPERATING INCOME STATEMENT
### One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property

| Property Address | | | | |
|---|---|---|---|---|
| 151 Beach 96th Street | Far Rockaway | NY | | 11693 |
| Street | City | State | | Zip Code |

General Instructions: This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☐ No ☒ | Vacant | $_____ | $650 | Electricity......... | ☐ | ☒ |
| Unit No. 2 | Yes ☐ No ☒ | Vacant | $_____ | $650 | Gas ............. | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | _____ | $_____ | $_____ | Fuel Oil ......... | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | _____ | $_____ | $_____ | Fuel (Other) ...... | ☒ | ☐ |
| | | | | | Water/Sewer ...... | ☒ | ☐ |
| Total ........ | | | $_____ | $1,300 | Trash Removal ..... | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning these projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 Months

| Income  (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented)................. | $15,600 | $_____ |
| Other Income (include sources)............................ | +_____ | +_____ |
| Total ............................................... | $15,600 | $_____ |
| Less Vacancy/Rent Loss.................................. | -312            (2  %) | -        (    %) |
| Effective Gross Income................................... | $15,288 | $_____ |
| Expenses (Do not include expenses for owner-occupied units) | | |
| Electricity............................................. | 500 | _____ |
| Gas ................................................. | _____ | _____ |
| Fuel Oil .............................................. | _____ | _____ |
| Fuel....................(Type - Gas           ) | 1,500 | _____ |
| Water/Sewer .......................................... | 800 | _____ |
| Trash Removal ........................................ | _____ | _____ |
| Pest Control .......................................... | 100 | _____ |
| Other Taxes or Licenses ................................. | _____ | _____ |
| Casual Labor ......................................... | 250 | _____ |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating................................. | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance ............................ | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses .................................. | _____ | _____ |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies ............................................. | _____ | _____ |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 ............... | 478 | _____ |
| Miscellaneous  Insurance............................... | 1,200 | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| ........................................... | _____ | _____ |
| Total Operating Expenses .................... | $5,328 | $_____ |

## REPLACEMENT RESERVE SCHEDULE

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.-should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | | | Remaining Life | | | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges .... ● | $500 | ea. ÷ | 10 | Yrs. x | 2 | | Units = | $100 | | $ |
| Refrigerators ..... ● | $500 | ea. ÷ | 10 | Yrs. x | 2 | | Units = | $100 | | $ |
| Dishwashers ..... ● | $ | ea. ÷ | | Yrs. x | | | Units = | $ | | $ |
| A/C Units........ ● | $ | ea. ÷ | | Yrs. x | | | Units = | $ | | $ |
| C. Washer/Dryers .. ● | $ | ea. ÷ | | Yrs. x | | | Units = | $ | | $ |
| HW Heaters ...... ● | $800 | ea. ÷ | 15 | Yrs. x | 1 | | Units = | $53.33 | | $ |
| Furnace(s)........ ● | $2500 | ea. ÷ | 20 | Yrs. x | 1 | | Units = | $125 | | $ |
| (Other) .......... ● | $ | ea. ÷ | | Yrs. x | | | Units = | $ | | $ |
| Roof............ ● | $2000 | ÷ | 20 | Yrs. x One Bldg. ........... | | | = | $100 | | $ |

Carpeting (Wall to Wall)

Remaining Life

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (Units) | | Total Sq. Yds. @ $ | | Per Sq. Yd. ÷ | | Yrs. = | $ | $ |
| (Public Areas) | | Total Sq. Yds. @ $ | | Per Sq. Yd. ÷ | | Yrs. = | $ | $ |

Total Replacement Reserves. (Enter on Pg. 1)                          $478          $

## OPERATING INCOME RECONCILIATION

$ 15,288 − $ 5,328 = $ 9,960 ÷ 12 = $ 830

| Effective Gross Income | Total Operating Expenses | Operating Income | Monthly Operating Income |
|---|---|---|---|

$ _____ − $ _____ = $ _____

| Monthly Operating Income | Monthly Housing Expense | Net Cash Flow |
|---|---|---|

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

### Underwriter's instructions for 2-4 Family Owner-Occupied Properties

■ If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

### Underwriter's instructions for 1-4 Family Investment Properties

■ If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

■ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the borrower's primary residence to the borrower's stable monthly income.

### Appraiser's Comments (including sources for data and rationale for the projections)

The reported income and expenses are in accordance with normal expectations for a dwelling the size, age and condition as the subject.

| | | |
|---|---|---|
| Michael Palmieri | | January 28, 1997 |
| Appraiser Name | Appraiser Signature | Date |

Underwriter's Comments and Rationale for Adjustments

| | | |
|---|---|---|
| Underwriter Name | Underwriter Signature | Date |

M.A.P. Appraisals

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable, and if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report, and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraiser report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the Appraiser's Certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** <u>151 Beach 96th Street, Far Rockaway</u>

| **APPRAISER:** | **SUPERVISORY APPRAISER** (only if required): |
|---|---|
| Signature: | Signature: _____ |
| Name: <u>Michael Palmieri</u> | Name: _____ |
| Date Signed: <u>January 28, 1997</u> | Date Signed: _____ |
| State Certification No.: <u>45000012890</u> | State Certification No.: _____ |
| or State License No.: _____ | or State License No.: _____ |
| State: <u>New York</u> | State: _____ |
| Expiration Date of Certification or License: <u>01/20/99</u> | Expiration Date of Certification or License: _____ |
| | ☐ Did  ☐ Did Not Inspect the Property |



**SCHEDULE C**

ALL that certain plot, piece or parcel of land, situate, lying and being at Rockaway Beach, in the Fifth Ward of the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Beach 96th Street, (formerly Bond Avenue), distant 469.00 feet southerly from the corner formed by the intersection of the easterly side of Beach 96th Street and the southerly side of Rockaway Beach Boulevard, as presently constituted;

THENCE easterly at right angles to the easterly side of Beach 96th Street, 27.50 feet;

THENCE southerly parallel with the easterly side of Beach 96th Street, 65.50 feet;

THENCE westerly at right angles to the easterly side of Beach 96th Street, 27.50 feet to easterly side of Beach 96th Street;

THENCE northerly along the easterly side of Beach 96th Street, 65.50 feet to the point or place of BEGINNING.


TOGETHER with a proposed Easement or Right of Way over the northerly 4 feet of the premises immediately adjoining on the south and SUBJECT to a similar proposed Easement or Right of Way over the southerly 4 feet of the premises herein described to be used in common for ingress and egress.

## SKETCH/AREA TAB~ ADDENDUM

File No.   97000044

| | | | |
|---|---|---|---|
| Property Address | 152 Beach 96th Street | | |
| City   Far Rockaway | State   NY | County   Queens | Zip Code   11693 |
| Borrower   Joee Cruz | | | |
| Lender/Client   Interstate Resources | | | |

15'

(living room)

Kitchen

38'          38'          38'

Kitchen

Living room

15'

**1st Floor**

15'

Bedroom

Bedroom

Bedroom          38'

Bedroom

Bedroom

Bathroom

15'

**2nd Floor**

SCALE: 1 inch = 15.00 feet

### AREA CALCULATIONS SUMMARY

| Area | Name of Area | Size | Totals |
|---|---|---|---|
| GLA1 | First Floor | 570.00 | 570.00 |
| GLA2 | Second Floor | 570.00 | 570.00 |

### LIVING AREA CALCULATIONS

| Breakdown | | | Subtotals |
|---|---|---|---|
| 15.00 | x | 38.00 | 570.00 |
| 15.00 | x | 38.00 | 570.00 |

| | | | |
|---|---|---|---|
| TOTAL LIVABLE   (rounded) | | 1140 | 1140 |

M.A.P. Appraisals          MCS, Richardson, TX (214) 808-7783          APX-8100 Apex 8

Borrower/Client Jo    Cruz    File No. 97000044
Property Address    ch 96th Street
City Far Rockaway    County Queens    State NY    Zip Code 11693
Lender Interstate Resources



Comparable Sale 1
6923 Decosta Ave
Far Rockaway
SP$ - $150,000
Sale Date -5/96



Comparable Sale 2
1420 E Mott Ave
Far Rockaway
SP$ - $185,000
Sale Date -9/96



Comparable Sale 3
3001 Seagirt Ave
Far Rockaway
SP$ - $174,000
Sale Date -7/96

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable, and if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report, and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   If a supervisory appraiser signed the appraiser report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the Appraiser's Certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   152 Beach 96th Street, Far Rockaway

| APPRAISER: | SUPERVISORY APPRAISER  (only if required): |
|---|---|
| Signature: | Signature: _____ |
| Name:   Michael Palmieri | Name: _____ |
| Date Signed:   January 28, 1997 | Date Signed: _____ |
| State Certification No.:  45000012890 | State Certification No.: _____ |
| or State License No.: _____ | or State License No.: _____ |
| State:   New York | State: _____ |
| Expiration Date of Certification or License:  01/20/99 | Expiration Date of Certification or License: _____ |
|  | ☐ Did  ☐ Did Not Inspect the Property |

**Residential Appraisal Field Review Report**

98-
File No. **37658**

The purpose of this review is to determine the completeness and accuracy of the data in an appraisal report and to verify the accuracy of the market value estimate as of the effective date of the original appraisal. The appraisal review must address all factual, judgmental, and appraisal technique discrepancies. This field review is a spot-check on the original appraisal report as part of a mortgage quality review. It is not intended to be used as a new appraisal. (Please attach a copy of the original appraisal report to this report.)

| | |
|---|---|
| Property Address **142-44 BEACH 96 STREET** | City **ROCKAWAY** State **N.Y.** Zip Code **11693** |
| Legal Description **SECT: 62 BLOCK: 16168 LOT: 17.** | |
| Property Rights Appraised **FEE SIMPLE** | Client Reference Number **NC 7035485/0698-08** |
| Effective Date of Original Appraisal and Field Review ORIG:**1/28/97** | REVIEW:**6/18/98** |
| Borrower **FARIN** | |
| Review Appraiser **FRED S JURNOVE** | Company Name **J&S APPRAISALS** |
| Address **496A SUNRISE HIGHWAY, WEST BABYLON, N.Y.** | |
| Telephone Number **516-376-0200** | Sec. Sec. or Tax ID. Number **11-3437067** |

Instructions: The review appraiser must personally inspect (by, at least, driving by) the exterior of the subject property and the comparables used in the analysis. Photographs are required for: the front of the comparables; the front of the subject; and a street scene of the subject property. Additional photographs are suggested if any adverse conditions that were not noted in the original appraisal report are observed. (NOTE: The review appraiser is not required to inspect the interior of the subject property. The review appraiser should verify the data in the original appraisal report, using the assessment records, the real estate broker, or any other data source that he or she considers to be reliable and reasonably available.) Based on the exterior inspection of the subject and the comparables, a thorough desk review of the appraisal report, and a review of the relevant market data for the subject market area, respond to the following questions, form an opinion about the appropriateness of the appraisal methods and techniques that were used, and indicate any areas of disagreement (giving reasons for the differences). Do not limit your responses to the space provided; attach an addendum, if necessary.

1. Provide a sales and refinance history for the subject property for the last three years (if it is reasonably available from a data source that the review appraiser considers to be reliable.)

| Conveyance Recordation Date | Sales Price | Asking Price | Mortgage Amount | Grantor/Grantee | Data Source |
|---|---|---|---|---|---|
| SEE ATTACH | ED ADD | | | | |
| | | | | | |
| | | | | | |

2. Is the appraiser's overall description of the neighborhood complete and accurate (location, general market conditions [i.e., plant closings, crop failures, etc.], property values, demand/supply, marketing time, general appearance of properties, appeal to market, etc.)? [X] Yes [ ] No
(If no, explain.)

3. Is the appraiser's overall description of the site complete and accurate (zoning compliance, apparent adverse conditions, apparent environmental hazards, size, flood hazard, etc.)? [ ] Yes [X] No    (If no, explain.) AS PER ASSESSORS RECORDS, THIS SITE IS 131 FEET BY 100 FEET, AND HAS 9 SEPERATE BUILDINGS ON IT.

4. Is the appraiser's overall description of the improvements complete and accurate (property description, depreciation, condition, apparent environmental hazards, etc.)? [ ] Yes [X] No (If no, explain.) SEE ADDENDUM

5. Are the design and appeal, quality of construction, and size of the subject similar to others in this area? [ ] Yes [X] No
(If no, how is the subject different?) SEE ADDENDUM

6. Are the comparables used in the analysis truly comparable to the subject property, representative of the subject market, and were they the best ones available as of the effective date of the appraisal? [ ] Yes [X] No    (If no, explain and provide an adjustment grid with the appropriate comparables and adjustments on an addendum.) SEE ADDENDUM

7. (a) Can the date of sale (contract date and/or closing/settlement date), sales price, and sales or financing concessions for the comparables be confirmed through the data source that the appraiser indicated? [X] Yes [ ] No    (If no, explain.)

(b) Were the comparables actual closed or settled sales as of the effective date of the original appraisal? [X] Yes [ ] No (If no, explain.)

**Residential Appraisal Field Review Report**

98-
File No. 37658

8. Is the specific data for the comparables accurate (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)? [X] Yes ☐ No (If no, explain.) _____

9. Are the individual adjustments to the comparables reasonable and supported (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)? ☐ Yes [X] No (If no, explain.) WATERVIEW ADJUSTMENTS APPEAR EXCESSIVE

10. If the subject property is a small residential income property (2-4 unit), or a single-family investment property, are the comparable rental and expense data accurate and reasonable? ☐ Yes ☐ No [X] N/A (If no, explain.) _____

11. If the subject property is an individual unit in a condominium or PUD project, is the project description complete and accurate? ☐ Yes ☐ No [X] N/A (If no, explain.) _____

12. Is the estimate of market value for the subject property reasonable as of the effective date of the appraisal? ☐ Yes [X] No (If no, provide an appropriate estimate of market value for the subject property and state the assumptions [exterior inspection only, property description and condition, etc.] that the opinion is subject to.) SEE ADDENDUM

13. Has there been a substantial change in the base economy in the area since the effective date of the appraisal? ☐ Yes [X] No (If yes, please explain.) _____

14. If the subject property is a cooperative unit, the review appraiser must address the completeness and accuracy of the original appraiser's description and analysis of the cooperative project and specifically comment on the accuracy of: (a) the number of shares attributable to the unit; (b) the pro-rata share of the blanket mortgage payments; and (c) the treatment of the monthly assessments of the comparable sales. _____

I certify that, to the best of my knowledge and belief, the facts and data used herein are true and correct; that I personally inspected the exterior of the subject property and the comparables used in the report; that the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions; that I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest in or bias with the respect to the parties involved; that my compensation is not contingent on any action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report; and that my analyses, opinions, and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

Signature of Review Appraiser _____    45-3897, N.Y.    Date
FRED S JURNOVE    6/18/98

**Client Use Only**

Review Underwriter's Comments _____

Signature of Review Underwriter _____    Date

Freddie Mac Form 1032 1/90
1-4 Family Properties

Page 2 of 2

Robert A. Brancato, Inc.

Fannie Mae Form 2000 4/90
1-4 Family Properties

98—
File No. 37658

PLEASE NOTE THE FOLLOWING DEFICIENCIES FOUND IN THE APPRAISAL REPORT.

THIS DWELLING, AS PER THE ASSESSORS RECORDS, IS A PART OF A GROUP OF NINE HOMES ON A SINGLE LOT. THE HOMES FACE A PRIVATE WALKWAY, WHICH IS GATED AND PRIVATE FROM THE STREET. THERE IS NO INDICATION WHETHER OR NOT THIS HOME HAS BEEN CONVERTED TO A SEPARATE 1,2,OR 3 FAMILY DWELLING. THE REPORT SHOULD BE SUBJECT THE SUBDIVIDING OF THE LOT INTO SEPARATE LOTS AND DWELLINGS. SALES ARE ALL 2 TO 5 MILES DISTANT.

THE SUBJECT APPEARS TO BE VACANT AND IN DISREPAIR.

SUBJECT HAS CHANGED HANDS REPEATEDLY OVER THE PAST SEVERAL YEARS, NO MENTION OF THIS IS IN THE REPORT.

FOLLOWING ARE THE TRANSFER DATES AND PRICES OF THE HOME.

MURPHY TO OCEANFRONT ENT.    $290,000.  9/96
OCEANFRONT ENT. TO LARGO ENT  $500,000   12/96
LARGO TO FARIN          $205,000.   2/97
    THIS LAST SALE IS PART OF SEVERAL SALES OF THESE PROPERTIES, ALL OF WHICH HAVE THE SAME SECT, BLOCK, AND LOT.

UNTIL THERE IS SOME CONFIRMATION OF WHAT TYPE OF PROPERTIES THESE ARE, NO DETERMINATION OF VALUE CAN BE MADE.

## SUBJECT PROPERTY PHOTO ADDENDUM



98-
File No. 37658

**FRONT VIEW OF
SUBJECT PROPERTY AT:**

142-44 BEACH 96 STREET
ROCKAWAY, N.Y.  11693

**REAR VIEW OF
SUBJECT PROPERTY**

**STREET SCENE**



COMPARABLE PHOTOS



COMPARABLE 1



COMPARABLE 2



COMPARABLE 3



M.A.P. Appraisals

**SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT**
Summary Appraisal Report

File No. 97000065

| | | | |
|---|---|---|---|
| Property Address 142-144 Beach 96th Street | City Far Rockaway | State NY | Zip Code 11693 |

Legal Description Section:62 Block:16168 Lot:17    County Queens

Assessor's Parcel No. SHSA 5600    Tax Year 1997    R.E. Taxes $ 3,500%    Special Assessments $ NA

Neighborhood or Project Name    Map Reference 018-119    Census Tract 0962.01

Borrower Udi Farin    Current Owner Ocean Front    Occupant □ Owner □ Tenant □ Vacant

Property rights appraised ☒ Fee Simple □ Leasehold    Project Type □ PUD □ Condominium    HOA $ ___ /Mo.

Sales Price $ 205,000    Date of Sale Pending    Description and $ amount of loan charges/concessions to be paid by seller Unknown

Lender/Client Interstate Resources    Address 254 Route 17K, Newburgh, NY 12550

Appraiser M.A.P. Appraisals    Address 114 Old Country Road, Suite 308, Mineola, NY 11501

| Location | □ Urban ☒ Suburban □ Rural | Predominant occupancy | Single family housing PRICE $(000) / AGE (yrs) | 2-4 family housing PRICE $(000) / AGE (yrs) |
|---|---|---|---|---|
| Built up | ☒ Over 75% □ 25-75% □ Under 25% | ☒ Owner | 70 Low 20 | ☒ Owner | 100 Low 20 |
| Growth rate | □ Rapid ☒ Stable □ Slow | □ Tenant | 190 High 90 | □ Tenant | 275 High 90 |
| Property values | □ Increasing ☒ Stable □ Declining | □ Vacant (0-5%) | Predominant | □ Vacant (0-5%) | Predominant |
| Demand/supply | □ Shortage ☒ In balance □ Over supply | □ Vacant (over 5%) | 110 70 | □ Vacant (over 5%) | 205 70 |
| Marketing time | □ Under 3 mos. ☒ 3-6 mos. □ Over 6 mos. | | | | |

| Present land use % | | Land use change |
|---|---|---|
| One family 55 | | ☒ Not likely □ Likely |
| 2-4 family 30 | | □ In process to: |
| Multi-family 10 | | |
| Commercial 5 | | |

Typical 2-4 family bldg. Type 3 Family    No. units 2.7    No. stories 3    Age 67 yrs.

Typical rent $ 450 to $ 750    Rents are: □ Increasing ☒ Stable □ Declining

Est. neighborhood apt. vacancy 2 %    Vacancy is: □ Increasing ☒ Stable □ Declining

Rent controls □ Yes ☒ No □ Likely    If yes or likely, describe

Describe those and the rental composition of the subject property are not reported herein.

Neighborhood boundaries and characteristics The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 59 Street.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.) The subject property is located in a residential area improved with a mixture of one and two family dwellings. Three family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.

The following analysis helps represent the most current, similar, and predominant competitive properties to the subject property in the subject neighborhood. This analysis is intended to condense the boundary currently on the market comparing with the subject, currently in the subject neighborhood and recent price and marketing. Some trends affecting the subject property. Listings outside the subject neighborhood are not considered comparables. The listing comparables can be rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| | 142-144 Beach 96th Street | 1322 Trist Place | 2247 Cornaga Avenue | 1112 Mc Bride Street |
| Address | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 3/4 Mile NE | 3/4 Mile NE | 3/4 Mile NE |
| Listing price | $ 205,000 | ☒ Unit □ Rm $ 239,000 | ☒ Unit □ Rm $ 255,000 | ☒ Unit □ Rm $ 240,000 |
| Approximate GBA | 2,598 | 3,456 | 3,176 | 2,500 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Total rooms/bdrms | 3 | 14 | 6 | 3 | 3 | 13 | 6 | 3 | 3 | 17 | 10 | 3 | 3 | 15 | 7 | 3 |
| Approximate year built | 1930 | 1905 | 1920 | 1920 |
| Approximate lot size | 60 +/- | 15 +/- | 15 +/- | 120 +/- |

Comparison of listings to subject property All three listings are similar three-family colonials located in the subject area and utilize the same support facilities.

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above-referenced instances of grants use, present values, demand/supply, and marketing time) and the conditions and impact in the subject market area regarding loan discounts, interest payments, and identification of trends in being place, present state in the market and any change over past year, etc.) The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers and is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.

| | | | |
|---|---|---|---|
| Dimensions 39.0 x 65.0 | | Topography | Level |
| Site area 2,535.0 Sq Ft | Corner lot □ No ☒ Yes | Size | Average |
| Specific zoning classification and description Residential (R6) | | Shape | Rectangular |
| Zoning compliance ☒ Legal □ Legal nonconforming (Grandfathered use) □ Illegal □ No zoning | | Drainage | Appears Adequate |
| Highest & best use as improved: ☒ Present use □ Other use (explain) | | View | Waterview |
| | | Landscaping | Average |

| Utilities | Public | Other | Off-site improvements | Type | Public | Private | Driveway | None |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | 110 Amps | Street | Macadam | ☒ | □ | Apparent easements | Typical Utility |
| Gas | ☒ | | Curb/gutter | Concrete | ☒ | □ | | |
| Water | ☒ | | Sidewalk | Concrete | ☒ | □ | FEMA Special Flood Hazard Area ☒ Yes □ No | |
| Sanitary sewer | ☒ | | Street lights | Electric | ☒ | □ | FEMA Zone A    Map Date 3-18-92 | |
| Storm sewer | ☒ | | Alley | None | □ | □ | FEMA Map No. 360497-0111C | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): Typical utility easements for electricity, sewer, gas and telephone do not affect value. There are no apparent adverse easements or encroachments that would impede marketability.

M.A.P. Appraisals

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| General description | | Exterior description | (Materials/condition) | Foundation | | Insulation (Previous if known) | |
|---|---|---|---|---|---|---|---|
| Units/Bldgs. | 3 / 1 | Foundation | Conc. Block | Slab | No | [x] Roof | Unknown |
| Stories | 2.7 | Exterior walls | Aluminum | Crawl space | No | [x] Ceiling | Unknown |
| Type (det./att.) | Detached | Roof surface | Asphalt | Sump Pump | Not Noted | [x] Walls | Unknown |
| Design (style) | Exp Cape | Gutters/dwnspts | Aluminum | Dampness | Not Noted | [x] Floor | Unknown |
| Existing/proposed | Yes/No | Window type | Dbl Hng | Settlement | Not Noted | [x] None | Unknown |
| Under construction | No | Storm sash/Screens | Yes/Yes | Infestation | Not Noted | | Adequacy Unknown |
| Year Built | 1930 | Manufactured housing * | [ ] Yes [x] No | Basement | 100 % of 1st floor area | Energy efficient items: | |
| Effective age(yrs.) | 15-20 | *(Complies with the HUD Manufactured Housing Construction and Safety Standards.) | | Basement finish | Unfinished | Insulated Windows | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrms | # Baths | Laundry | Other | Sq. ft. Area | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | 1 | 1 | | | 3 | 1 | | | 1,485 | 1,48 |
| 1 | 1 | | 1 | | 1 | | | 2 | 1 | | | 742 | 74 |
| 1 | 1 | | 1 | | 1 | | | 1 | 1 | | | 371 | 37 |

Improvements contain: 14 Rooms; 6 Bedroom(s); 3 Bath(s); 2,598 Square feet of GROSS BUILDING AREA

**GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.**

| Surfaces | (Materials/condition) | Heating | | Kitchen equip. (#/Amt-cond.) | Area | Car Storage | No. Cars |
|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Avg | Type | Steam | Refrigerator 3/Avg | [x] None | Garage | |
| Walls | Drywall/Plas/Avg | Fuel | Gas | Range/oven 3/Avg | Stairs | Carport | |
| Trim/finish | Wood/Avg | Condition | Average | Disposal | Drop stair | Attached | |
| Bath floor | Ceramic/Avg | | | Dishwasher 3/ | Scuttle | Detached | |
| Bth wainscot | Ceramic/Avg | Cooling | | Fan/hood 3/Avg | Floor | Adequate | |
| Doors | Wooden/Avg | Central | No | Compactor | Heated | Inadequate | |
| | All of the above | Other | No | Washer/dry | Finished | Offstreet | |
| | are in Avg Cond | Condition | N/A | Microwave | Unfinished | None | [x] |
| Fireplace(s) | None # 0 | | | Intercom | | | |

Condition of the improvements, repairs needed, quality of construction, additional features, modernization, etc.: **Subject has view of The Atlantic Ocean Terrace on second floor.**

Depreciation (physical, functional, and external inadequacies, etc.): **The subject property was in average condition for it's neighborhood at the time of inspection. External obsolescence: none noted. Functional obsolescence: none noted. Repairs/Modernization: none noted. The subject's construction quality was average.**

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: **Please see the attached Statement of Limiting Conditions.**

## VALUATION ANALYSIS

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 60,000 |

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | | | | |
|---|---|---|---|---|
| 2,598 | Sq.Ft. @ $ 75 | = $ | 194,850 |
| Base 742 | Sq.Ft. @ $ 20 | = $ | 14,840 |
| | Sq.Ft. @ $ | = $ | |
| | Sq.Ft. @ $ | = $ | |
| | Sq.Ft. @ $ | = $ | |
| | | = $ | |
| | | = $ | |
| | | = $ | |
| | | = $ | |
| | | = $ | |
| Special Energy Efficient Items None | | = $ | |
| Porches, Patios, etc. Terrace | | = $ | 1,500 |
| Total Estimated Cost New | | = $ | 211,190 |

| | Physical | Functional | External | | |
|---|---|---|---|---|---|
| Less | 35% | | | | |
| Depreciation | 73,916 | | | = $ | 73,916 |
| Depreciated Value of Improvements | | | | = $ | 137,274 |
| "As is" Value of Site Improvements | | | | = $ | 10,000 |
| INDICATED VALUE BY COST APPROACH | | | | = $ | 207,274 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life of the property):

**See attached floor plan & calculations addendum.**

**Physical depreciation was calculated using the economic age-life method.**

**There was no functional or external obsolescence noted at time of inspection.**

**The land value ratio is typical for the area and does not impede marketability.**

**M.A.P. Appraisals**

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties so similar and proximate to the subject property as possible. (The comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should convey the reader that the uses and properties selected as comparables are comparable to the subject property. Both the uses and the overall property(ies) and adequately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 142-144 Beach 96th Street<br>Far Rockaway | 1322 Trist Place<br>Far Rockaway | 2247 Cornaga Avenue<br>Far Rockaway | 1112 Mc Bride Street<br>Far Rockaway |
| Proximity to subject | | 3/4 Mile NE | 3/4 Mile NE | 3/4 Mile NE |
| Lease dates (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |

| Description of property—units, design, appeal, age, vacancies, and conditions | # Units 3  # Vac. 0  Yr Blt | # Units 3  # Vac. 0  Yr Blt | # Units 3  # Vac. 0  Yr Blt | # Units 3  # Vac. 0  Yr Blt |
|---|---|---|---|---|
| | Yr. Blt 1930 | 1905 | 1920 | 1920 |
| | 3 Family | 3 Family | 3 Family | 3 Family |
| | Frame | Frame | Frame | Frame |
| | Avg. Appeal | Avg. Appeal | Avg. Appeal | Avg. Appeal |
| | Detached | Detached | Detached | Detached |

| Individual unit breakdown | Rm. Count<br>Tot Br Bath | Size Sq.Ft. | Rm. Count<br>Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count<br>Tot Br Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count<br>Tot Br Bath | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 6 3 1 | 1,485 | 4 2 1 | 1,280 | 850 | 7 4 1 | 1,155 | Owner | 6 3 1 | 1,250 | 850 |
| | 5 2 1 | 742 | 4 2 1 | 1,280 | 850 | 7 4 1 | 1,155 | 850 | 5 2 1 | 625 | 650 |
| | 3 1 1 | 371 | 5 2 1 | 896 | 650 | 4 2 1 | 866 | 650 | 4 2 1 | 625 | 550 |

| Utilities, furniture and amenities included in rent | Heat<br>Sewer<br>Water<br>Avg. Amenities<br>Unfurnished | Heat<br>Sewer<br>Water<br>Avg. Amenities<br>Unfurnished | Heat<br>Sewer<br>Water<br>Avg. Amenities<br>Unfurnished | Heat<br>Sewer<br>Water<br>Avg. Amenities<br>Unfurnished |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Avg Functionally<br>Avg Utility<br>Individ Cooling | Avg Functionally<br>Avg Utility<br>Individ Cooling | Avg Functionally<br>Average Utility<br>Individ Cooling | Avg Functionally<br>Average Utility<br>Individ Cooling |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most three family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income-producing potential.

**Subject's rent schedule.** The rent schedule recognizes the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics of the comparable sales to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the subject comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date Begon | End | No. Units Vacant | Per Unit Unfurnished | Furnished | Total Rents | Per Unit Unfurnished | Furnished | Total Rents |
| 1 | No Lease | | | 850 | | | 850 | | 850 |
| 1 | No Lease | | | 650 | | | 650 | | 650 |
| 1 | No Lease | | | 450 | | | 450 | | 450 |
| 3 | | | | | | | | | 1,950 |

Other monthly income (itemize)                                              $
Vacancy: Actual last year  0 %  Previous year  0 %  Estimated  2 %  468 Annually    Total gross estimated rent  1,950

Utilities included in estimated rents:  ☐ Electric  ☒ Water  ☒ Sewer  ☐ Gas  ☐ Oil  ☒ Trash Collection  ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rental, utilities, etc.): The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The undersigned has visited three recent sales of properties most similar and proximate to the subject property and has described and analyzed these in the analysis. If there is a significant variation between the subject and comparable properties, the analysis includes a dollar adjustment reflecting the market reaction to these same or an explanation supported by the market data...

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 142-144 Beach 96th Street<br>Far Rockaway | 2313 Mott Avenue<br>Far Rockaway | 537 Beach 66 Street<br>Far Rockaway | 164 Beach 120 Street<br>Far Rockaway |
| Proximity to subject | | 3/4 Mile NE | 1/8 Mile East | 1/8 Mile West |
| Sales price | $ 205,000 | $ 205,000 | $ 203,000 | $ 212,000 |
| Sale price per GBA | $ 78.91 | $ 88.17 | $ 93.20 | $ 90.37 |
| Gross monthly rent | $ 1,950 | $ 2,000 | $ 1,800 | $ 1,900 |
| Gross rm. mult.(1) | 105.12 | 102.5 | 112.77 | 111.57 |
| Sales price per unit | $ 102,500 | $ 102,500 | $ 101,500 | $ 106,000 |
| Sales price per room | 14,642 | $ 13,666 | $ 14,500 | $ 13,250 |
| Data source | Inspection | Comps Inc | Comps Inc | Comps Inc |
| Verification Source | | Closed | Closed | Closed |

| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust |
|---|---|---|---|---|---|---|---|
| Sales or financing concessions | | Conv. | | Conv. | | Conv. | |
| | | None Noted | | None Noted | | None Noted | |
| Date of sale/time | | 12/96 | | 9/96 | | 2/96 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 39x65/Avg | 77x130/Avg | -20,000 | 40x100/Avg | -10,000 | 40x100/Avg | -10,000 |
| View | Waterview | Average | 15,000 | Average | 15,000 | Average | 15,000 |
| Design and appeal | ExpCape/Avg | ExpCape/Avg | | Colonial/Avg | | Colonial/Avg | |
| Quality of construction | Frame/Avg | Frame/Avg | | Frame/Avg | | Frame/Avg | |
| Age | 67 | 66 | | 72 | | 67 | |
| Condition | Average | Average | | Average | | Average | |
| Gross Building Area | 2,598 Sq.ft. | 2,325 Sq.ft. | +5,500 | 2,178 Sq.ft. | +8,500 | 2,346 Sq.ft. | +5,000 |

| | No. | Rm. count | | No. | Rm. count | | No. | Rm. count | | No. | Rm. count | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit breakdown | units | Tot Br Bath | Veg. | units | Tot Br Bath | Veg. | units | Tot Br Bath | Veg. | units | Tot Br Bath | Veg. |
| | 1 6 3 1 | 0 | | 1 5 2 1 | 0 | | 1 6 3 1 | 0 | | 1 6 3 1 | 0 | |
| | 1 5 2 1 | 0 | | 1 4 2 1 | 0 | | 1 5 2 1 | 0 | | 1 5 2 1 | 0 | |
| | 1 3 1 1 | 0 | | 1 3 1 1 | 0 | | 1 3 1 1 | 0 | | 1 3 1 1 | 0 | |
| Basement description | Full-Unfinish | Full-Unfinish | | Full-Unfinish | | Full-Finish | -8,000 |
| Functional utility | Average | Average | | Average | | Average | |
| Heating/cooling | Steam/None | Steam/None | | Steam/None | | Steam/None | |
| Parking on/off site | None | None | | None | | None | |
| Project amenities & fee (if applicable) | Average<br>Amenities | Average<br>Amenities | | Average<br>Amenities | | Average<br>Amenities | |
| Net Adj. (total) | | | 500 | | 13,500 | | 2,000 |
| Adjusted sales price of comparable | | | 205,500 | | 216,500 | | 214,000 |

Comments on sales comparison including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchaser's impression in this market:
The GIA was adjusted at $20 per square foot. All comparables deemed to have inferior views to subject. Due to lack of 3 family comparables in area appraiser exceed the 6 month guideline however market has been stable in last 1 year and comparable is considered a good comparable.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Date | None | None | None | None |
| Source for prior sales within year of appraisal | Public Record | Public Record | Public Record | Public Record |

Analysis of any current agreements of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal:
There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,950   X gross rent multiplier (GRM) 106 = $ 206,700   INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including subjective rates, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

INDICATED VALUE BY SALES COMPARISON APPROACH ........................................... $ 205,000
INDICATED VALUE BY INCOME APPROACH ........................................................... $ 206,700
INDICATED VALUE BY COST APPROACH ............................................................ $ 207,274

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections, or conditions listed below ☐ subject to completion per plans and specifications.
Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997 WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 205,000

APPRAISER:
Signature: *Michael Palmieri*
Name: Michael Palmieri
Date Report Signed: January 28, 1997
State Certification # 45000012890   State NY
Or State License #

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature: _____
Name: _____
Date Report Signed: _____
State Certification # _____
Or State License # _____
☐ Did ☐ Did Not Inspect Property



# SKETCH/AREA TABLE ADDENDUM

File No. 97000045

| | | | | | |
|---|---|---|---|---|---|
| Property Address | 142-144 Beach 98th Street | | | | |
| City | Far Rockaway | State | NY | County Queens | Zip Code 11693 |
| Borrower | Udi Farin | | | | |
| Lender/Client | Interstate Resources | | | | |

33'
16.5'
45'
45'
45'
45'
16.5'
22.5'
22.5'
33'
16.5'
16.5'
1st Floor
2nd Floor
3rd Floor

SCALE: 1 inch = 15.00 feet

**AREA CALCULATIONS SUMMARY**

| Area | Name of Area | Size | Totals |
|---|---|---|---|
| GLA1 | First Floor | 1485.00 | 1485.00 |
| GLA2 | Second Floor | 742.50 | 742.50 |
| GLA3 | Third Floor | 371.25 | 371.25 |

**LIVING AREA CALCULATIONS**

| Breakdown | | | Subtotals |
|---|---|---|---|
| 33.00 | x | 45.00 | 1485.00 |
| 16.50 | x | 22.50 | 371.25 |
| 16.50 | x | 45.00 | 742.50 |

TOTAL LIVABLE (rounded) 2599 2599

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable, and if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report, and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the Appraiser's Certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED: <u>142-144 Beach 96th Street, Far Rockaway</u>

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: _____ |
| Name: <u>Michael Palmieri</u> | Name: _____ |
| Date Signed: <u>January 28, 1997</u> | Date Signed: _____ |
| State Certification No.: <u>45000012890</u> | State Certification No.: _____ |
| or State License No.: _____ | or State License No.: _____ |
| State: <u>New York</u> | State: _____ |
| Expiration Date of Certification or License: <u>01/20/99</u> | Expiration Date of Certification or License: _____ |
| | ☐ Did ☐ Did Not Inspect the Property |

M.A.P. Appraisal

## OPERATING INCOME STATEMENT
### One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property

| Property Address | | |
|---|---|---|
| 145 Beach 96th Street | Far Rockaway | NY · 11693 |
| Street | City | State    Zip Code |

**General Instructions:** This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☒ No ☐ | No Lease | $_____ | $850 | Electricity . . . . . . . . | ☐ | ☒ |
| Unit No. 2 | Yes ☒ No ☐ | No Lease | $_____ | $650 | Gas . . . . . . . . . . . | ☐ | ☒ |
| Unit No. 3 | Yes ☒ No ☐ | No Lease | $_____ | $450 | Fuel Oil . . . . . . . . . | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $_____ | $ | Fuel (Other) . . . . . . . | ☒ | ☐ |
| | | | | | Water/Sewer . . . . . . . | ☒ | ☐ |
| Total | | | $_____ | $1,950 | Trash Removal . . . . . . | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties the applicant should provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 Months

| Income (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented) . . . . . . . . . . . . . . . . . | $23,400 | $_____ |
| Other Income (include sources) . . . . . . . . . . . . . . . . . . . . . . . | +_____ | +_____ |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $23,400 | $_____ |
| Less Vacancy/Rent Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . | -468 (2 %) | - ( %) |
| Effective Gross Income . . . . . . . . . . . . . . . . . . . . . . . . . . . | $22,932 | $_____ |
| Expenses (Do not include expenses for owner-occupied units) | | |
| Electricity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 500 | _____ |
| Gas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Fuel Oil . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Fuel . . . . . . . . . . . . . . . . . . (Type - Gas ) | 1,500 | _____ |
| Water/Sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 800 | _____ |
| Trash Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Pest Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100 | _____ |
| Other Taxes or Licenses . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| Casual Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating . . . . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance . . . . . . . . . . . . . . . . . . . . . . . | 250 | _____ |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | _____ |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 . . . . . . . . . . . . . | 578 | _____ |
| Miscellaneous Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,200 | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ | _____ |
| Total Operating Expenses . . . . . . . . . . . . . . . . . . . . . . . . . | $5,428 | $_____ |

**M.A.P. Appraisals**

## REPLACEMENT RESERVE SCHEDULE

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc. should be expensed on a replacement cost basis.

| Equipment | | Replacement Cost | | | Remaining Life | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges ..... | ● | $500 | ea. ÷ | 10 | Yrs. x | 3 | Units = | $150 | $ |
| Refrigerators ..... | ● | $500 | ea. ÷ | 10 | Yrs. x | 3 | Units = | $150 | $ |
| Dishwashers ..... | ● | $ | ea. ÷ | | Yrs. x | | Units = | $ | $ |
| A/C Units........ | ● | $ | ea. ÷ | | Yrs. x | | Units = | $ | $ |
| C. Washer/Dryers .. | ● | $ | ea. ÷ | | Yrs. x | | Units = | $ | $ |
| HW Heaters ...... | ● | $800 | ea. ÷ | 15 | Yrs. x | 1 | Units = | $53.33 | $ |
| Furnace(s)........ | ● | $2500 | ea. ÷ | 20 | Yrs. x | 1 | Units = | $125 | $ |
| (Other) .......... | ● | $ | ea. ÷ | | Yrs. x | | Units = | $ | $ |
| Roof........... | ● | $2000 | ÷ | 20 | Yrs. x One Bldg. | | = | $100 | $ |

Carpeting  (Wall to Wall)

Remaining Life

| | | | | | |
|---|---|---|---|---|---|
| (Units) | _____ Total Sq. Yds. @ $ _____ | Per Sq. Yd. ÷ _____ | Yrs. = | $ | $ |
| (Public Areas) | _____ Total Sq. Yds. @ $ _____ | Per Sq. Yd. ÷ _____ | Yrs. = | $ | $ |

Total Replacement Reserves. (Enter on Pg. 1)                 $578        $ _____

## OPERATING INCOME RECONCILIATION

| $ 22,932 | - $ 5,428 | = $ 17,504 | ÷ 12 = $ 1,458 |
|---|---|---|---|
| Effective Gross Income | Total Operating Expenses | Operating Income | Monthly Operating Income |

| $ _____ | - $ _____ | = $ _____ |
|---|---|---|
| Monthly Operating Income | Monthly Housing Expense | Net Cash Flow |

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's instructions for 2-4 Family Owner-Occupied Properties

- If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's instructions for 1-4 Family Investment Properties

- If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (Including sources for data and rationale for the projections)
The reported income and expenses are in accordance with normal expectations for a dwelling the size, age and condition as the subject.

Michael Palmieri                                          January 28, 1997
Appraiser Name                    Appraiser Signature                Date
Underwriter's Comments and Rationale for Adjustments

Underwriter Name                  Underwriter Signature              Date

**First American Field Services**
Operations Center
P.O. Box 2057, Lakewood, New Jersey, 08701-6057
1125 Ocean Avenue, Lakewood, New Jersey, 08701-4598
Telephone: 732-363-3626 • Fax: 732-363-0319

## Property Inspection

### Client # 7800 = IMC Mortgage Company - Richard Davenport

============================ PRINT DATE: 07/08/99 ============================

: 722165
-----------------------------
: 850319    Insp: 3882
-----------------------------
: Unknown
-----------------------------
: UDI FARIN
-----------------------------
et: 142-144 BEACH 96TH ST
-----------------------------
: FAR ROCKAWAY                          ATTACH
-----------------------------
e : NY   Zip: 11693                    PHOTOGRAPH
-----------------------------
# : 1255693                            HERE
-----------------------------
ge: $ 9.95
-----------------------------
nt :
-----------------------------
t :
-----------------------------
k :
-----------------------------
: $ 9.95
-----------------------------
Dt: 06/07/99
-----------------------------
Dt: 06/16/99
============================================================================

----------------- CONDITIONS AND RESULTS AS OF 06/16/99 -------------------
pied,Name Unknown              Visually Verified Status

pied & Adequate               Fair Condition

tric On                       Well Maintained Grounds

gle Family                    Frame Construction

roving Area Conditions        2 Story/

te Trim                       Gray/.

------------------- COMMENTS FOR THIS WORK ORDER --------------------
pectors Opinion of Value: $  140,000

LH 722165

950319

**First American Field Services**
Operations Center
P.O. Box 2057, Lakewood, New Jersey, 08701-8057
1125 Ocean Avenue, Lakewood, New Jersey, 08701-4598
Telephone: 732-363-3626 • Fax: 732-363-0319

## Property Inspection

### Client # 7800 = IMC Mortgage Company - Richard Davenport

======================= PRINT DATE: 07/08/99 ==========================

```
  : 526772
-----------------------------
  : 850321     Insp: 3882
-----------------------------
  : Unknown
-----------------------------
  : EYAL COHEN
-----------------------------
et: 146 BEACH 96TH ST
-----------------------------
  : FAR ROCKAWAY                          ATTACH
-----------------------------
e : NY   Zip: 11693                      PHOTOGRAPH
-----------------------------
# : 1255693                                HERE
-----------------------------
ge: $  9.95
-----------------------------
.mt :
-----------------------------
.t :
-----------------------------
.k :
-----------------------------
  : $  9.95
-----------------------------
Dt: 06/07/99
-----------------------------
Dt: 06/16/99
```
==========================================================================

------------------ **CONDITIONS AND RESULTS AS OF 06/16/99** ------------------

| | |
|---|---|
| ANT | POOR Condition |
| ne Construction | Duplex |
| roving Area Conditions | VACANT & BOARDED |
| r Grounds Maintenance | Visually Verified Status |
| er=See Comments | 2 Story/ |
| te/ | Blue Trim |

------------------- **COMMENTS FOR THIS WORK ORDER** ------------------------
pectors Opinion of Value: $  50,000
ject Property Vacancy Control #: 617011  Vacancy Date: 06/17/99

1 526 772

250321



98-
304

## Residential Appraisal Field Review Report

File No. 37634

The purpose of this review is to determine the completeness and accuracy of the data in an appraisal report and to verify the accuracy of the market value estimate as of the effective date of the original appraisal. The appraisal review must address all factual, judgmental, and appraisal technique discrepancies. This field review is a spot-check on the original appraisal report as part of a mortgage quality review. It is not intended to be used as a new appraisal. (Please attach a copy of the original appraisal report in this report.)

| | | |
|---|---|---|
| Property Address 146 BEACH 96 STREET | City ROCKAWAY | State N.Y. Zip Code 11693 |

Legal Description SECT: 62 BL: 16168 LOT: 17

Property Rights Appraised FEE SIMPLE    Client Reference Number NC 7035163/0698-08

Effective Date of Original Appraisal and Field Review ORIG:1/28/97    REVIEW:6/18/98

Borrower COHEN

Review Appraiser FRED S JURNOVE    Company Name J&S APPRAISALS

Address 496A SUNRISE HIGHWAY, WEST BABYLON, N.Y.

Telephone Number 516-376-0200    Soc. Sec. or Tax ID. Number 11-3437067

Instructions: The review appraiser must personally inspect (by, at least, driving by) the exterior of the subject property and the comparables used in the analysis. Photographs are required for: the front of the comparables; the front of the subject; and a street scene of the subject property. Additional photographs are suggested if any adverse conditions that were not noted in the original appraisal report are observed. (NOTE: The review appraiser is not required to inspect the interior of the subject property. The review appraiser should verify the data in the original appraisal report, using the assessment records, the real estate broker, or any other data source that he or she considers to be reliable and reasonably available.) Based on the exterior inspection of the subject and the comparables, a thorough desk review of the appraisal report, and a review of the relevant market data for the subject market area, respond to the following questions, form an opinion about the appropriateness of the appraisal methods and techniques that were used, and indicate any areas of disagreement (giving reasons for the differences). Do not limit your responses to the space provided; attach an addendum, if necessary.

1. Provide a sales and refinance history for the subject property for the last three years (it it is reasonably available from a data source that the review appraiser considers to be reliable.)

| Conveyance Recordation Date | Sales Price | Asking Price | Mortgage Amount | Grantor/Grantee | Data Source |
|---|---|---|---|---|---|
| SEE ATTACHED ADD | | | | | |

2. Is the appraiser's overall description of the neighborhood complete and accurate (location, general market conditions [i.e., plant closings, crop failures, etc.], property values, demand/supply, marketing time, general appearance of properties, appeal to market, etc.)? [X] Yes [ ] No (If no, explain.) _____

3. Is the appraiser's overall description of the site complete and accurate (zoning compliance, apparent adverse conditions, apparent environmental hazards, size, flood hazard, etc.)? [ ] Yes [X] No (If no, explain.) AS PER ASSESSORS RECORDS, THIS SITE IS 131 FEET BY 100 FEET, AND HAS 9 SEPERATE BUILDINGS ON IT.

4. Is the appraiser's overall description of the improvements complete and accurate (property description, depreciation, condition, apparent environmental hazards, etc.)? [ ] Yes [X] No (If no, explain.) SEE ADDENDUM

5. Are the design and appeal, quality of construction, and size of the subject similar to others in this area? [ ] Yes [X] No (If no, how is the subject different?) SEE ADDENDUM

6. Are the comparables used in the analysis truly comparable to the subject property, representative of the subject market, and were they the best ones available as of the effective date of the appraisal? [ ] Yes [X] No (If no, explain and provide an adjustment grid with the appropriate comparables and adjustments on an addendum.) SEE ADDENDUM

7. (a) Can the date of sale (contract date and/or closing/settlement date), sales price, and sales or financing concessions for the comparables be confirmed through the data source that the appraiser indicated? [X] Yes [ ] No (If no, explain.) _____

(b) Were the comparables actual closed or settled sales as of the effective date of the original appraisal? [X] Yes [ ] No (If no, explain.) _____

EL 6/98

**Residential Appraisal Field Review Report**

98–

File No. 37634

8. Is the specific data for the comparables accurate (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)? [X] Yes   [ ] No  (If no, explain.)

_____

_____

_____

_____

9. Are the individual adjustments to the comparables reasonable and supported (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)?  [ ] Yes   [X] No  (If no, explain.) WATERVIEW ADJUSTMENTS APPEAR EXCESSIVE

_____

_____

_____

_____

_____

10. If the subject property is a small residential income property (2–4 unit) or a single-family investment property, are the comparable rental and expense data accurate and reasonable?   [ ] Yes   [ ] No   [X] N/A   (If no, explain.) _____

_____

_____

_____

_____

11. If the subject property is an individual unit in a condominium or PUD project, is the project description complete and accurate?  [ ] Yes   [ ] No   [X] N/A   (If no, explain.) _____

_____

_____

_____

_____

12. Is the estimate of market value for the subject property reasonable as of the effective date of the appraisal? [ ] Yes   [X] No  (If no, provide an appropriate estimate of market value for the subject property and state the assumptions [exterior inspection only, property description and condition, etc.] that the opinion is subject to.)   SEE ADDENDUM

_____

_____

_____

_____

_____

13. Has there been a substantial change in the base economy in the area since the effective date of the appraisal? [ ] Yes   [X] No   (If yes, please explain.) _____

_____

_____

_____

14. If the subject property is a cooperative unit, the review appraiser must address the completeness and accuracy of the original appraiser's description and analysis of the cooperative project and specifically comment on the accuracy of: (a) the number of shares attributable to the unit; (b) the pro-rata share of the blanket mortgage payment; and (c) the treatment of the monthly assessments of the comparable sales.

_____

_____

_____

_____

I certify that, to the best of my knowledge and belief, the facts and data used herein are true and correct; that I personally inspected the exterior of the subject property and the comparables used in the report; that the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions; that I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest in or bias with the respect to the parties involved; that my compensation is not contingent on any action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report and that my analyses, opinions, and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

| Signature of Review Appraiser | 45-3897, N.Y. | Date |
| | FRED S JURNOVE | 6/18/98 |

**Client Use Only**

Review Underwriter's Comments _____

_____

_____

| Signature of Review Underwriter | | Date |

98-
File No. 37634

PLEASE NOTE THE FOLLOWING DEFICIENCIES FOUND IN THE APPRAISAL
REPORT.

THIS DWELLING, AS PER THE ASSESSORS RECORDS, IS A PART OF A GROUP OF
NINE HOMES ON A SINGLE LOT.   THE HOMES FACE A PRIVATE  WALKWAY,
WHICH IS  GATED AND  PRIVATE FROM THE STREET.   THERE IS NO INDICATION
WHETHER OR NOT THIS HOME HAS BEEN CONVERTED TO A SEPARATE 1,2,OR 3
FAMILY DWELLING. THE REPORT SHOULD BE SUBJECT THE SUBDIVIDING OF
THE LOT INTO SEPARATE LOTS AND DWELLINGS. SALES ARE ALL 2 TO 5  MILES
DISTANT.

THE SUBJECT APPEARS TO BE VACANT AND IN DISREPAIR.

SUBJECT HAS CHANGED  HANDS REPEATEDLY OVER  THE PAST SEVERAL  YEARS,
NO MENTION OF THIS IS IN THE REPORT.

FOLLOWING ARE THE TRANSFER DATES AND PRICES OF THE HOME.

MURPHY TO OCEANFRONT ENT.    $290,000.  9/96
OCEANFRONT ENT.  TO LARGO ENT  $500,000   12/96
LARGO TO COHEN            $175,000.   6/97
        THIS LAST SALE IS PART OF SEVERAL SALES OF THESE PROPERTIES, ALL OF
WHICH HAVE THE SAME SECT, BLOCK, AND LOT.

UNTIL THERE  IS SOME  CONFIRMATION OF  WHAT TYPE  OF PROPERTIES  THESE
ARE, NO DETERMINATION OF VALUE CAN BE MADE.

SUBJECT PROPERTY PHOTO ADDENDUM



98-
File No. 37634

**FRONT VIEW OF
SUBJECT PROPERTY AT:**

146 BAECH 96 STREET
ROCKAWAY, N.Y.  11693

**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PHOTOS

98-
File No. 37633



COMPARABLE 1



COMPARABLE 2



COMPARABLE 3

M.A.P. Appraisals

SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No.: 97000042

Summary Appraisal Report

NC7035163

| | | |
|---|---|---|
| Property Address **146 Beach 96th Street** | City **Far Rockaway** | State **NY** Zip Code **11693** |
| Legal Description **Section:62 Block:16168 Lot:17** | | County **Queens** |
| Assessor's Parcel No. **SMSA 5600** | Tax Year **1997** | R.E. Taxes $ **3,000E** Special Assessments $ **NA** |
| Neighborhood or Project Name | Map Reference **018 L19** | Census Tract **0942.01** |
| Borrower **Eyal Cohen** | Current Owner **Ocean Front** | Occupant ☐ Owner ☐ Tenant ☒ Vacant |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium | HOA $ ____ /Mo. |
| Sales Price $ **175,000** Date of Sale **Pending** Description and $ amount of loan charges/concessions to be paid by seller **Unknown** | | |
| Lender/Client **Interstate Resources** | Address **254 Route 17K, Newburgh, NY 12550** | |
| Appraiser **M.A.P Appraisals** | Address **114 Old Country Road, Suite 308, Mineola NY 11501** | |

| | | | Predominant Single Family housing | | | Predominant 2-4 family housing | | |
|---|---|---|---|---|---|---|---|---|
| Location | ☒ Urban ☐ Suburban ☐ Rural | | | PRICE $ (000) | AGE (yrs) | | PRICE $ (000) | AGE (yrs) |
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Occupancy | | | Occupancy | | |
| Growth rate | ☒ Rapid ☐ Stable ☐ Slow | ☒ Owner | | 70 Low 20 | | ☒ Owner | 100 Low 20 | |
| Property values | ☒ Increasing ☐ Stable ☐ Declining | ☐ Tenant | | 190 High 90 | | ☐ Tenant | 250 High 90 | |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | | Predominant 110 70 | | ☒ Vacant (0-5%) | Predominant 175 70 | |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | ☐ Vacant (over 5%) | | | | ☐ Vacant (over 5%) | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Typical 2-4 family bldg. Type **2 Family** | No. stories **2** | No. units **2** | Age **67** yrs. | Present land use % | | Land use change |
| Typical rents $ **450** to $ **750** | ☐ Increasing ☒ Stable ☐ Declining | | | One family **55** | | ☒ Not likely ☐ Likely |
| Est. neighborhood apt. vacancy **2** % | ☐ Increasing ☒ Stable ☐ Declining | | | 2-4 family **30** | | ☐ In process to: |
| Rent controls ☐ Yes ☒ No ☐ Likely If yes or likely, describe: | | | | Multi-family **10** | | |
| | | | | Commercial **5** | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: **The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 59 Street.**

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): **The subject property is located in a residential area improved with a mixture of one and two family dwellings. Two family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.**

The following available listings represent the most current, similar, and proximate competitive properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market competing with the subject property in the subject neighborhood and recent price and marketing time trends affecting the subject property. Listings outside the subject neighborhood are not considered applicable. The listing comparables can be rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| | 146 Beach 96th Street | 626 Seagirt Blvd | 3127 Dwight Ave | 1301 Cornaga Ave |
| Address | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Listing price | $ 175,000 | ☒ List. ☐ Rent. $ 209,900 | ☒ List. ☐ Rent. $ 209,900 | ☒ List. ☐ Rent. $ 195,000 |
| Approximate GBA | 1,408 | 1,920 | 2,000 | 2,000 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Tot.rms./BR/BA | 2 \|10 \|4 \|2 | 2 \|11 \|5 \|2.5 | 2 \|12 \|6 \|4 | 2 \|11 \|6 \|3.5 |
| Approximate year built | 1930 | 1989 | 1965 | 1930 |
| Approx. days on market | 60 +/- | 60 +/- | 120 +/- | 90 +/- |

Comparison of listings to subject property: **All three listings are similar two-family colonials located in the subject area and utilize the same support facilities.**

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on the market and any change over past year, etc.: **The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers and is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.**

| | | | |
|---|---|---|---|
| Dimensions **21.0 x 65.0** | | Topography | **Level** |
| Site area **1,365 Sq Ft** | Corner lot ☒ No ☐ Yes | Size | **Average** |
| Specific zoning classification and description **Residential (R6)** | | Shape | **Rectangular** |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage | **Appears Adequate** |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View | **Waterview** |
| | | Landscaping | **Average** |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Driveway | **None** |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | **110 Ampos** | Street | **Macadam** | ☒ | ☐ | Apparent easements | **Typical Utility** |
| Gas | ☒ | | Curb/gutter | **Concrete** | ☒ | ☐ | | |
| Water | ☒ | | Sidewalk | **Concrete** | ☒ | ☐ | FEMA Special Flood Hazard Area ☒ Yes ☐ No | |
| Sanitary sewer | ☒ | | Street lights | **Electric** | ☒ | ☐ | FEMA Zone **A** Map Date **5-18-92** | |
| Storm sewer | ☒ | | Alley | **None** | | | FEMA Map No. **360497-0111C** | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): **Typical utility easements for electricity, sewer, gas and telephone do not effect value. There are no apparent adverse easements or encroachments that would impede marketability.**

M.A.I. Appraisals

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| General description | | Exterior description | | (Materials/condition) | Foundation | | Insulation (N=n/a if known) | |
|---|---|---|---|---|---|---|---|---|
| Units/Bldgs. | 2 /1 | Foundation | Conc. Block | | Slab | No | [x] Roof | Unknown |
| Stories | 2 | Exterior walls | Wood | | Crawl space | No | [x] Ceiling | Unknown |
| Type (det./att.) | Detached | Roof surface | Asphalt | | Sump Pump | Not Noted | [x] Walls | Unknown |
| Design (style) | Colonial | Gutters/dwnspts | Aluminum | | Dampness | Not Noted | [x] Floor | Unknown |
| Existing/proposed | Yes/No | Window type | Dbl Hng | | Settlement | Not Noted | [x] None | Unknown |
| Under construction | No | Storm sash/Screens | Yes/Yes | | Infestation | Not Noted | Adequacy | Unknown |
| Year Built | 1930 | Manufactured housing | [ ] Yes [x] No | | Basement | 100 % of 1st floor area | Energy efficient items: | |
| Effective age(yrs.) | 15-20 | *(Complies with the HUD Manufactured Housing Construction and Safety Standards.) | | | Basement finish | Unfinished | Insulated Windows | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrms. | # Baths | Laundry | Other | Sq. ft./Area | Total (✓) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | 1 | 1 | | | 2 | 1 | | | 704 | 704 |
| 1 | 1 | | 1 | 1 | 1 | | | 2 | 1 | | | 704 | 704 |

Improvements contain   10   Rooms   4   Bedroom(s)   2   Bath(s)   1,408   Square feet of GROSS BUILDING AREA

**GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.**

| | (Materials/condition) | Heating | | Kitchen equip. (#/Unit-cond.) | Attic | | Car Storage | No. Cars |
|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Avg | Type | Steam | Refrigerator 2/Avg | [x] None | | Garage | |
| Walls | Drywall/Avg | Fuel | Gas | Range/oven 2/Avg | Stairs | | Carport | |
| Trim/finish | Wood/Avg | Condition | Average | Disposal | Drop stair | | Attached | |
| Bath floor | Lino/Avg | | | Dishwasher | Scuttle | | Detached | |
| Bath wainscot | Fiberglass/Avg | Cooling | | Fan/hood 2/Avg | Floor | | Adequate | |
| Doors | Wooden/Avg | Central | No | Compactor | Heated | | Inadequate | |
| | All of the above | Other | No | Washer/dry | Finished | | Off-street | |
| | are in Avg Cond | Condition | N/A | Microwave | Unfinished | | None | [x] |
| Fireplace(s) None | # 0 | | | Intercom | | | | |

Conditions of the improvements, repairs needed, quality of construction, additional features, modernization, etc.: **Subject has view of The Atlantic Ocean. Porch in Front. Terrace on second floor.**

Depreciation (physical, functional, and external inadequacies, etc.): **The subject property was in average condition for it's neighborhood at the time of inspection. External obsolescence: none noted. Functional obsolescence: none noted. Repairs/Modernization: none noted. The subject's construction quality was average.**

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: **Please see the attached Statement of Limiting Conditions.**

### VALUATION ANALYSIS

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 610,000 |

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | Sq.Ft. @ $ | | = | |
|---|---|---|---|---|
| 1,408 | Sq.Ft. @ $ 85 | | = | 119,680 |
| Base 704 | Sq.Ft. @ $ 20 | | = | 14,080 |
| | Sq.Ft. @ $ | | = | |
| | Sq.Ft. @ $ | | = | |
| | Sq.Ft. @ $ | | = | |
| | | | = | |
| | | | = | |
| | | | = | |
| Special Energy Efficient Items None | | | = | |
| Porches, Patios, etc. Porch, Terrace | | | = | 5,000 |
| Total Estimated Cost New | | | = $ | 138,760 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life of the property):

**See attached floor plan & calculations addendum.**

**Physical depreciation was calculated using the economic age-life method.**

**There was no functional or external obsolescence noted at time**

**The land value ratio is typical for the area and does not impede marketability.**

| | Physical | Functional | External | | | |
|---|---|---|---|---|---|---|
| Less Depreciation | 25% | | | | | |
| | 34,690 | | | = $ | 34,690 | |
| Depreciated Value of Improvements | | | | = $ | 104,070 | |
| "As is" Value of Site Improvements | | | | = $ | 12,000 | |
| INDICATED VALUE BY COST APPROACH | | | | = $ | 176,070 | |

M. F. Appraisals

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) This appraisal report should assure the reader that the units and properties selected as comparables are comparable to the subject property. Both the units and the overall property) and adequately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 146 Beach 96th Street Far Rockaway | 431 Beach 63 Street Far Rockaway | 427 Beach 66 Street Far Rockaway | 6312 Beach Channel Dr Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Lease dates (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |

| Description of property-units, design, appeal, age, vacancies, and conditions | # Units 2  # Vac. 2  Yr. Blt. Yr. Blt. 1930 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr. Blt. 1940 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr. Blt. 1920 2 Family Frame Avg. Appeal Detached | # Units 2  # Vac. 2  Yr. Blt. 1940 2 Family Frame Avg. Appeal Detached |

| Individual unit breakdown | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent | Rm. Count Tot / Br / Bath | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 2 1 | 704 | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |
| | 5 2 1 | 704 | 5 2 1 | 882 | 850 | 4 2 1 | 710 | 750 | 4 2 1 | 880 | 800 |

| Utilities, furniture and amenities included in rent | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most two family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income producing potential.

**Subject's rent schedule**   The rent schedule rotonalize the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics of the comparable rates to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date Begin | End | No. Units Vacant | Per Unit Unfurnished | Furnished | Total Rents | Per Unit Unfurnished | Furnished | Total Rents |
| 1 | Vacant | | | Vacant | | | 750 | | 750 |
| 1 | Vacant | | | Vacant | | | 750 | | 750 |
| Other monthly income (itemize) | | | | | | | | | |
| | | | | | | | | | 1,500 |
| Vacancy: Actual last year | 0 % | Previous year | 0 % | Estimated: | 2 % | 360 | Annually | Total gross estimated rent | 1,500 |

Utilities included in estimated rents:  ☐ Electric  ☒ Water  ☒ Sewer  ☐ Gas  ☐ Oil  ☒ Trash Collection  ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rental, address, etc.) The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

M.A.P. Appraisals

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| | 146 Beach 96th Street | 6923 Decosta Avenue | 1420 E Mott Avenue | 3001 Seagirt Avenue |
| Address | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile NE | 3/4 Mile NE | 1/2 Mile NE |
| Sales price | $ 175,000 | $ 150,000 | $ 185,000 | $ 174,000 |
| Sales price per GLA | $ 124.29 | $ 83.33 | $ 91.40 | $ 87 |
| Gross monthly rent | $ 1,500 | $ 1,200 | $ 1,600 | $ 1,500 |
| Gross rm. rnt.mult.(1) | 116 | 125 | 115.6 | 116 |
| Sales price per unit | $ 87,500 | $ 75,000 | $ 92,500 | $ 87,000 |
| Sales price per room | $ 17,500 | $ 18,750 | $ 15,416 | $ 14,500 |
| Data source | Inspection | Comps Inc | Comps Inc | Comps Inc |
| Verification Source | | Closed | Closed | Closed |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | DESCRIPTION | DESCRIPTION |
| Sales or financing concessions | | Unknown | FHA | FHA |
| | | None Noted | None Noted | None Noted |
| Date of sale/time | | 5/96 | 9/96 | 7/96 |
| Location | Average | Average | Average | Average |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 25x65/Avg | 30x100/Avg | 34x93/Avg | 32x100/Avg |
| View | Waterview | Average | Average +15,000 | Average +15,000 |
| Design and appeal | Colonial/Det | Colonial/SD +5,000 | Colonial/Det | Colonial/Det |
| Quality of construction | Frame/Avg | Brk/Frm/Avg -2,500 | Frame/Avg | Frame/Avg |
| Age | 67 | 57 | 47 | 47 |
| Condition | Average | Average | Average | Average |
| Gross Building Area | 1,408 Sq.ft. | 1,800 Sq.ft. -6,000 | 2,024 Sq.ft. -9,000 | 2,000 Sq.ft. -9,000 |
| Unit breakdown | No. Rm.count unit Tot Br Bath Vac | No. Rm.count units Tot Br Bath Vac | No. Rm.count units Tot Br Bath Vac | No. Rm.count units Tot Br Bath Vac |
| | 1 5 2 1 1 | 1 3 1 1 0 | 1 6 3 1.5 0 -1,500 | 1 6 3 1 0 |
| | 1 5 2 1 1 | 1 5 3 1.5 0 -1,500 | 1 6 3 1.5 0 +1,500 | 1 6 3 1 0 |
| Basement description | Full-Unfinish | Full-Finish -2,500 | Full-Finish -2,500 | Full-Finish -2,500 |
| Functional utility | Average | Average | Average | Average |
| Heating/cooling | Steam/None | Steam/None | Steam/None | Steam/None |
| Parking on/off site | None | 1 Car -4,000 | 1 Car -4,000 | 1 Car -4,000 |
| Project amenities & fee (if applicable) | Average Amenities | Average Amenities | Average Amenities | Average Amenities |
| Net Adj. (total) | | + 3,500 | - 500 | - 500 |
| Adjusted sales price of comparable | | $ 153,500 | $ 184,500 | $ 173,500 |

Comments on sales comparison (including reconciliation of all indicators of value as to comparison and relative strength and weakness of the typical investor's/purchaser's motivation in the market):
The GLA was adjusted at $15 per square foot. All comparables were adjusted for having inferior view. Although comparable 1 exceeds the 6 month guideline it was utilized due to its proximity, similar appeal and stable market conditions in last 1 year.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | None | None | None | None |
| | Public Record | Public Record | Public Record | Public Record |

Analysis of any current agreements of sale, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal:
There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,500 X Gross rent multiplier (GRM) 117 = $ 175,500 INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including expense ratios, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................. $ 175,000
INDICATED VALUE BY INCOME APPROACH ........................................................ $ 175,500
INDICATED VALUE BY COST APPROACH .......................................................... $ 176,070

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections, or conditions listed below ☐ subject to completion per plans and specifications.

Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 175,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature |
| Name Michael Palmieri | Name |
| Date Report Signed January 28, 1997 | Date Report Signed |
| State Certification # 45000012890    State NY | State Certification #    State |
| Or State License # | Or State License #    State |

☐ Did ☐ Did Not Inspect Property

SKETCH/AREA TABLE ADDENDUM

File No.  97000042

| Property Address | 148 Beach 96th Street | | | | |
|---|---|---|---|---|---|
| City   Far Rockaway | | State   NY | County   Queens | | Zip Code  11693 |
| Borrower   Eyal Cohen | | | | | |
| Lender/Client   Interstate Resources | | | | | |



1st Floor        2nd Floor

SCALE: 1 inch = 15.00 feet

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA CALCULATIONS | | | |
|---|---|---|---|---|---|---|---|
| Area | Name of Area | Size | Totals | Breakdown | | | Subtotals |
| GLA1 | First Floor | 704.00 | 704.00 | 16.00 | X | 44.00 | 704.00 |
| GLA2 | Second Floor | 704.00 | 704.00 | 16.00 | X | 44.00 | 704.00 |

| TOTAL LIVABLE  (rounded) | 1408 | | 1408 |
|---|---|---|---|

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable, and if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withhold any significant information from the appraisal report, and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the Appraiser's Certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED:   Beach 96th Street, Far Rockaway

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: Michael Palmieri | Name: |
| Date Signed: January 28, 1997 | Date Signed: |
| State Certification No.: 45000012890 | State Certification No.: |
| or State License No.: | or State License No.: |
| State: New York | State: |
| Expiration Date of Certification or License: 01/20/99 | Expiration Date of Certification or License: |
| | ☐ Did  ☐ Did Not Inspect the Property |

M.A.P. Appraisals    File No. 97080042

# OPERATING INCOME STATEMENT

**One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property**

| Property Address | | | |
|---|---|---|---|
| 145 Beach 96th Street | Far Rockaway | NY | 11693 |
| Street | City | State | Zip Code |

General Instructions: This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

|  | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☐ No ☒ | Vacant | $ | $ 750 | Electricity......... | ☐ | ☒ |
| Unit No. 2 | Yes ☐ No ☒ | Vacant | $ | $ 750 | Gas .............. | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | | $ | $ | Fuel Oil .......... | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $ | $ | Fuel (Other) ...... | ☒ | ☐ |
| | | | | | Water/Sewer ...... | ☒ | ☐ |
| Total ..................... | | | $ | $ 1,500 | Trash Removal .... | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

## Annual Income and Expense Projection for Next 12 Months

| Income  (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented)................. | $ 18,000 | $ |
| Other Income (include sources) ............................ | | |
| Total ................................................ | $ 18,000 | $ |
| Less Vacancy/Rent Loss ......................... | - 360  (2 %) | ( %) |
| Effective Gross Income. | $ 17,640 | $ |
| Expenses (Do not include expenses for owner-occupied units) | | |
| Electricity .............................................. | 500 | |
| Gas | | |
| Fuel Oil | | |
| Fuel ..................... (Type - Gas ) | 1,500 | |
| Water/Sewer ....................... | 800 | |
| Trash Removal ...................................... | | |
| Pest Control ............................................ | 100 | |
| Other Taxes or Licenses ................ | | |
| Casual Labor ........................................... | 250 | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating ................................. | 250 | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance ......................... | 250 | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses ............................... | | |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies ............................................ | | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 ............. | 478 | |
| Miscellaneous  Insurance ............................... | 1,200 | |
| .................................................. | | |
| .................................................. | | |
| .................................................. | | |
| .................................................. | | |
| .................................................. | | |
| .................................................. | | |
| Total Operating Expenses ................. | $ 5,328 | $ |

M.A.P. Appraisals

## LACEMENT RESERVE SCHEDULE

juate  replacement reserves must be calculated regardless of whether actual reserves are  provided for on the owner's operating statements
e customary in the local market. This represents the total average  yearly reserves. Generally, all equipment and components that have a
ining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.-
ld be expensed on a replacement cost basis.

| xment | | Replacement Cost | | Remaining Life | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|
| es/Ranges .... | @ | $ 500 | ea. ÷ | 10 | Yrs. x | 2 | Units = $ 100 | $ |
| gerators ..... | @ | $ 500 | ea. ÷ | 10 | Yrs. x | 2 | Units = $ 100 | $ |
| washers ..... | @ | $ | ea. ÷ | | Yrs. x | | Units = $ | $ |
| Units....... | @ | $ | ea. ÷ | | Yrs. x | | Units = $ | $ |
| 'asher/Dryers .. | @ | $ | ea. ÷ | | Yrs. x | | Units = $ | $ |
| -testers ...... | @ | $ 800 | ea. ÷ | 15 | Yrs. x | 1 | Units = $ 53.33 | $ |
| scats).......  | @ | $ 2500 | ea. ÷ | 20 | Yrs. x | 1 | Units = $ 125 | $ |
| or) ......... | @ | $ | ea. ÷ | | Yrs. x | | Units = $ | $ |
| ............ | @ | $ 2000 | ÷ | 20 | Yrs. x One Bldg. .......... | | = $ 100 | $ |

eding (Wall to Wall)                                                                 Remaining
                                                                                       Life

| s) | _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = | $ | $ |
| ic Areas) | _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = | $ | $ |

t Replacement Reserves. (Enter on Pg. 1)                                  $ 478        $

## RATING INCOME RECONCILIATION

$ 17,640 — $ 5,328 = $ 12,312 ÷ 12 = $ 1,026
Effective Gross Income    Total Operating Expenses    Operating Income    Monthly Operating Income

$ 1,026 — $ = $ 1,026
Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

: Monthly  Housing Expense includes  principal and interest on the mortgage, hazard  insurance premiums, real estate taxes, mortgage
ance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

rwriter's instructions for 2-4 Family Owner-Occupied Properties

If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac
Form 65/Fannie Mae Form 1003. If Monthly Operating  Income  is a negative number, it must be included as a liability for qualification
purposes.

The borrower's monthly housing expense-to-income ratio must be  calculated by comparing the total  Monthly Housing  Expense for
the subject property to the borrower's stable monthly income.

rwriter's instructions for 1-4 Family Investment Properties

If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/
Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the
borrower's primary residence to the borrower's stable monthly income.

aiser's Comments (including sources for data and rationale for the projections)
  reported income and expenses are in accordance with normal expectations for a dwelling the
e, age and condition as the subject.

nael Palmieri                                                            January 28, 1997
aiser Name                          Appraiser Signature                   Date
rwriter's Comments and Rationale for Adjustments

rwriter Name                    Underwriter Signature                Date





**First American Field Services**
Operations Center
P.O. Box 2057. Lakewood. New Jersey. 08701-6057
1125 Ocean Avenue. Lakewood. New Jersey. 08701-4598
Telephone: 732-363-3626 • Fax: 732-363-0319

## Property Inspection

### Client # 7800 = IMC Mortgage Company - Richard Davenport

============================ PRINT DATE: 07/08/99 =================================

oan  : 526756
-----------------------------------
/O  : 850320   Insp: 3882
-----------------------------------
ype  : Unknown
-----------------------------------
ame  : MARIANA SANCHEZ
-----------------------------------
treet: 145 BEACH 96TH ST
-----------------------------------
ity  : FAR ROCKAWAY
-----------------------------------
State : NY  Zip: 11693                      ATTACH
-----------------------------------
Inv.# : 1255693                          PHOTOGRAPH
-----------------------------------
Charge: $ 9.95                              HERE
-----------------------------------
Pd Amt:
-----------------------------------
Pd Dt :
-----------------------------------
Check :
-----------------------------------
Due  : $ 9.95
-----------------------------------
Req Dt: 06/07/99
-----------------------------------
Cmp Dt: 06/16/99
-----------------------------------
================================================================================

----------------- CONDITIONS AND RESULTS AS OF 06/16/99 ------------------
Occupied,Name Unknown                 Visually Verified Status

Occupied & Adequate                   Good Condition

Electric On                           Water On

Well Maintained Grounds               Fourplex

Frame Construction                    Improving Area Conditions

3 Story/                              White/

White Trim

------------------- COMMENTS FOR THIS WORK ORDER ------------------------
Inspectors Opinion of Value: $  160,000

L# 526,756



**Residential Appraisal Field Review Report**

98- 307 J

File No. 37633

The purpose of this review is to determine the completeness and accuracy of the data in an appraisal report and to verify the accuracy of the market value estimate as of the effective date of the original appraisal. The appraisal review must address all factual, judgmental, and appraisal technique discrepancies. This field review is a spot-check on the original appraisal report as part of a mortgage quality review. It is not intended to be used as a new appraisal. (Please attach a copy of the original appraisal report to this report.)

| | |
|---|---|
| Property Address 145 BEACH 96 STREET | City ROCKAWAY    State N.Y.    Zip Code 11693 |
| Legal Description SECT: 62 BLOCK: 16168 LOT: 17 | |
| Property Rights Appraised FEE SIMPLE | Client Reference Number NC 7035160/0698-08 |
| Effective Date of Original Appraisal and Field Review ORIG:1/28/97 | REVIEW:6/18/98 |
| Borrower SANCHEZ | |
| Review Appraiser FRED S JURNOVE | Company Name J&S APPRAISALS |
| Address 496A SUNRISE HIGHWAY, WEST BABYLON, N.Y. | |
| Telephone Number 516-376-0200 | Soc. Sec. or Tax ID. Number 11-3437067 |

**Instructions:** The review appraiser must personally inspect (by, at least, driving by) the exterior of the subject property and the comparables used in the analysis. Photographs are required for: the front of the comparables; the front of the subject; and a street scene of the subject property. Additional photographs are suggested if any adverse conditions that were not noted in the original appraisal report are observed. (NOTE: The review appraiser is not required to inspect the interior of the subject property. The review appraiser should verify the data in the original appraisal report, using the assessment records, the real estate broker, or any other data source that he or she considers to be reliable and reasonably available.) Based on the exterior inspection of the subject and the comparables, a thorough desk review of the appraisal report, and a review of the relevant market data for the subject market area, respond to the following questions, form an opinion about the appropriateness of the appraisal methods and techniques that were used, and indicate any areas of disagreement (giving reasons for the differences). Do not limit your responses to the space provided; attach an addendum, if necessary:

1. Provide a sales and refinance history for the subject property for the last three years (if it is reasonably available from a data source that the review appraiser considers to be reliable.)

| Conveyance Recordation Date | Sales Price | Asking Price | Mortgage Amount | Grantor/Grantee | Data Source |
|---|---|---|---|---|---|
| SEE ATTACH | ED ADD | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

2. Is the appraiser's overall description of the neighborhood complete and accurate (location, general market conditions [i.e., plant closings, crop failures, etc.], property values, demand/supply, marketing time, general appearance of properties, appeal to market, etc.)? [X] Yes [ ] No (If no, explain.)

3. Is the appraiser's overall description of the site complete and accurate (zoning compliance, apparent adverse conditions, apparent environmental hazards, size, flood hazard, etc.)? [ ] Yes [X] No    (If no, explain.) AS PER ASSESSORS RECORDS, THIS SITE IS 131 FEET BY 100 FEET, AND HAS 9 SEPERATE BUILDINGS ON IT.

4. Is the appraiser's overall description of the improvements complete and accurate (property description, depreciation, condition, apparent environmental hazards, etc.)? [ ] Yes [X] No (If no, explain.) SEE ADDENDUM

5. Are the design and appeal, quality of construction, and size of the subject similar to others in this area? [ ] Yes [X] No (If no, how is the subject different?) SEE ADDENDUM

6. Are the comparables used in the analysis truly comparable to the subject property, representative of the subject market, and were they the best ones available as of the effective date of the appraisal? [ ] Yes [X] No    (If no, explain and provide an adjustment grid with the appropriate comparables and adjustments on an addendum.) SEE ADDENDUM

7. (a) Can the date of sale (contract date and/or closing/settlement date), sales price, and sales or financing concessions for the comparables be confirmed through the data source that the appraiser indicated? [X] Yes [ ] No (If no, explain.)

(b) Were the comparables actual closed or settled sales as of the effective date of the original appraisal? [X] Yes [ ] No (If no, explain.)

9 6 6/98

**Residential Appraisal Field Rev    Report**

98—
File No. 37633

8.  Is the specific data for the comparables accurate (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)? ☒ Yes    ☐ No   (If no, explain.) _____

9.  Are the individual adjustments to the comparables reasonable and supported (time, location, design and appeal, quality of construction, age, condition, size, sales or financing concessions, etc.)? ☐ Yes    ☒ No   (If no, explain.) WATERVIEW ADJUSTMENTS APPEAR EXCESSIVE

10.  If the subject property is a small residential income property (2-4 unit) or a single-family investment property, are the comparable rental and expense data accurate and reasonable? ☐ Yes    ☐ No    ☒ N/A   (If no, explain.) _____

11.  If the subject property is an individual unit in a condominium or PUD project, is the project description complete and accurate? ☐ Yes    ☐ No    ☒ N/A   (If no, explain.) _____

12.  Is the estimate of market value for the subject property reasonable as of the effective date of the appraisal? ☐ Yes    ☒ No   (If no, provide an appropriate estimate of market value for the subject property and state the assumptions [exterior inspection only, property description and condition, etc.] that the opinion is subject to.)    SEE ADDENDUM

13.  Has there been a substantial change in the base economy in the area since the effective date of the appraisal? ☐ Yes    ☒ No   (If yes, please explain.) _____

14.  If the subject property is a cooperative unit, the review appraiser must address the completeness and accuracy of the original appraiser's description and analysis of the cooperative project and specifically comment on the accuracy of: (a) the number of shares attributable to the unit; (b) the pro-rata share of the blanket mortgage payments; and (c) the treatment of the monthly assessments of the comparable sales.

I certify that, to the best of my knowledge and belief, the facts and data used herein are true and correct; that I personally inspected the exterior of the subject property and the comparables used in the report; that the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions; that I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest in or bias with the respect to the parties involved; that my compensation is not contingent on any action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report; and that my analyses, opinions, and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

Signature of Review Appraiser

45-3897, N.Y.    Date
FRED S JURNOVE   6/18/98

**Client Use Only**

Review Underwriter's Comments _____

Signature of Review Underwriter _____    Date _____

98-
File No. 37633

PLEASE NOTE THE FOLLOWING DEFICIENCIES FOUND IN THE APPRAISAL
REPORT.

THIS DWELLING, AS PER THE ASSESSORS RECORDS, IS A PART OF A GROUP OF
NINE HOMES ON A SINGLE LOT.  THE HOMES FACE A PRIVATE WALKWAY,
WHICH IS GATED AND PRIVATE FROM THE STREET.  THERE IS NO INDICATION
WHETHER OR NOT THIS HOME HAS BEEN CONVERTED TO A SEPARATE 1,2, OR 3
FAMILY DWELLING.  THE REPORT SHOULD BE SUBJECT THE SUBDIVIDING OF
THE LOT INTO SEPARATE LOTS AND DWELLINGS.  SALES ARE ALL 2 TO 5 MILES
DISTANT.

THE SUBJECT APPEARS TO BE VACANT AND IN DISREPAIR.

SUBJECT HAS CHANGED HANDS REPEATEDLY OVER THE PAST SEVERAL YEARS,
NO MENTION OF THIS IS IN THE REPORT.

FOLLOWING ARE THE TRANSFER DATES AND PRICES OF THE HOME.

MURPHY TO OCEANFRONT ENT.    $290,000.  9/96
OCEANFRONT ENT. TO LARGO ENT  $500,000   12/96
LARGO TO SANCHEZ          $175,000.   2/97
    THIS LAST SALE IS PART OF SEVERAL SALES OF THESE PROPERTIES, ALL OF
WHICH HAVE THE SAME SECT, BLOCK, AND LOT.

UNTIL THERE IS SOME CONFIRMATION OF WHAT TYPE OF PROPERTIES THESE
ARE, NO DETERMINATION OF VALUE CAN BE MADE.

10

## SU. CT PROPERTY PHOTO ADDENDUM



98–
File No. 37633

**FRONT VIEW OF
SUBJECT PROPERTY AT:**

145 BEACH 96 STREET
ROCKAWAY, N.Y. 11693

**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

## COMPARABLE PHOTOS

98–
File No. 37633



COMPARABLE 1



COMPARABLE 2



COMPARABLE 3

M.A.P. Appraisals

SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 97000041

Summary Appraisal Report

703516G

| Property Address | 145 Beach 96th Street | City | Far Rockaway | State | NY | Zip Code | 11693 |

Legal Description **Section:62 Block:16168 Lot:17**  County **Queens**

Assessor's Parcel No. SMSA 5600   Tax Year **1997**   R.E. Taxes $ **3.000E**   Special Assessments $ **NA**

Neighborhood or Project Name   Map Reference **018 L19**   Census Tract **0942.01**

Borrower **Sanchez**   Current Owner **Ocean Front**   Occupant [ ] Owner [ ] Tenant [X] Vacant

Property rights appraised [X] Fee Simple [ ] Leasehold   Project Type [ ] PUD [ ] Condominium   HOA $ ___ /Mo.

Sales Price $ **175.000**   Date of Sale **Pending**   Description and $ amount of loan charges/concessions to be paid by seller **Unknown**

Lender/Client **Interstate Resources**   Address **254 Route 17K, Newburgh, NY 12550**

Appraiser **M.A.P Appraisals**   Address **114 Old Country Road, Suite 308, Mineola NY 11501**

| Location | [X] Urban | [ ] Suburban | [ ] Rural | Predominant | Single family housing | | | | Predominant | 2-4 family housing | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | occupancy | | PRICE $(000) | AGE (yrs) | | occupancy | | PRICE $(000) | AGE (yrs) |
| Built up | [X] Over 75% | [ ] 26-75% | [ ] Under 25% | [X] Owner | | 70 Low | 20 | | [X] Owner | | 100 Low | 20 |
| Growth rate | [ ] Rapid | [X] Stable | [ ] Slow | [X] Tenant | | 190 High | 90 | | [X] Tenant | | 250 High | 90 |
| Property values | [X] Increasing | [ ] Stable | [ ] Declining | [X] Vacant (0-5%) | Predominant | | | | [X] Vacant (0-5%) | Predominant | | |
| Demand/supply | [ ] Shortage | [X] In balance | [ ] Over supply | [ ] Vacant (over 5%) | | 110 | 70 | | [ ] Vacant (over 5%) | | 175 | 70 |
| Marketing time | [ ] Under 3 mos. | [X] 3-6 mos. | [ ] Over 6 mos. | | | | | | | | | |

Typical 2-4 family bldg. Type **2 Family**   No. stories **2**   Age **67** yrs.   Present land use **55** %   Land use change [X] Not likely [ ] Likely

Typical range $ **450** to $ **750**   [ ] Increasing [X] Stable [ ] Declining   One family **55**   [ ] In process to: ___

Est. neighborhood pct. vacancy **2** %   [ ] Increasing [X] Stable [ ] Declining   2-4 family **30**

Rent controls [ ] Yes [X] No [ ] Likely If yes or likely, describe   Multi-family **10**

Commercial **5**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics **The subject property is located north of Shore Parkway, east of Beach 102 Street, south of Beach Channel Drive and west of Beach 59 Street.**

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): **The subject property is located in a residential area improved with a mixture of one and two family dwellings. Two family dwellings vary in age, size and style though similar in quality and utility. All amenities are within convenient distance.**

The following available listings represent the most current, similar, and proximate comparative properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market comparing with the subject property in the subject neighborhood and recent price and marketing time trends affecting the subject property. (Listings outside the subject neighborhood are not considered applicable). The listing comparison can be rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| | 145 Beach 96th Street | 626 Seagirt Blvd | 3127 Dwight Ave | 1301 Cornaga Ave |
| Address | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Listing price | $ 175.000 | [X] Unf. [ ] Furn. $ 209.900 | [X] Unf. [ ] Furn. $ 209.900 | [X] Unf. [ ] Furn. $ 195.000 |
| Approximate GBA | 1.408 | 1.920 | 2.000 | 2.000 |
| Data source | Inspection | MLS | MLS | MLS |
| # Units/Terms/BR&BA | 2 |10 |4 |2 | 2 |11 |5 |2.5 | 2 |12 |6 |4 | 2 |11 |6 |3.5 |
| Approximate year built | 1930 | 1989 | 1965 | 1930 |
| Approximate days on market | 60 +/- | 60 +/- | 120 +/- | 90 +/- |

Comparison of listings to subject property: **All three listings are similar two-family colonials located in the subject area and utilize the same support facilities.**

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on the market and any change over past year, etc.: **The real estate market in this neighborhood has been gradually improving as per recorded MLS statistical data and local real estate brokers and is currently in balance with marketing time typically less than 180 days. Most home purchases are generally financed with conventional and FHA fixed rate mortgages. Mortgage discount points (1-5) are usually paid by the purchasers. Buydowns and other sales concessions are rare.**

| | | | | |
|---|---|---|---|---|
| Dimensions **21.0 x 65.0** | | | Topography | **Level** |
| Site area **1.365 Sq Ft** | | Corner lot [X] No [ ] Yes Size | **Average** | |
| Specific zoning classification and description **Residential (R6)** | | | Shape | **Rectangular** |
| Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning | | | Drainage | **Appears Adequate** |
| Highest & best use as improved: [X] Present use [ ] Other use (explain) | | | View | **Waterview** |
| | | | Landscaping | **Average** |

| Utilities | Public | Other | Off-site improvements | Type | Public | Private | Driveway | **None** |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | **110 Amps** | Street | **Macadam** | [X] | [ ] | Apparent easements | **Typical Utility** |
| Gas | [X] | | Curb/gutter | **Concrete** | [X] | [ ] | | |
| Water | [X] | | Sidewalk | **Concrete** | [X] | [ ] | FEMA Special Flood Hazard Area [X] Yes [ ] No | |
| Sanitary sewer | [X] | | Street lights | **Electric** | [X] | [ ] | FEMA Zone **A** Map Date **5-18-92** | |
| Storm sewer | [X] | | Alley | **None** | | | FEMA Map No. **360497-0111C** | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): **Typical utility easements for electricity, sewer, gas and telephone do not effect value. There are no apparent adverse easements or encroachments that would impede marketability.**

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

| General description | | Exterior description | (Materials/condition) | Foundation | | | Insulation (Area if known) | |
|---|---|---|---|---|---|---|---|---|
| Units/Bldgs. | 2 /1 | Foundation | Conc. Block | Slab | No | ☒ Roof | Unknown |
| Stories | 2 | Exterior walls | Wood | Crawl space | No | ☒ Ceiling | Unknown |
| Type (det./att.) | Detached | Roof surface | Asphalt | Sump Pump | Not Noted | ☒ Walls | Unknown |
| Design (style) | Colonial | Gutters&Dwnspts | Aluminum | Dampness | Not Noted | ☒ Floor | Unknown |
| Existing/proposed | Yes/No | Window type | Dbl Hng | Settlement | Not Noted | ☒ None | Unknown |
| Under construction | No | Storm sash/Screens | Yes/Yes | Infestation | Not Noted | Adequacy | Unknown |
| Year Built | 1930 | Manufactured housing ☐ Yes ☒ No | | Basement | 100 % of 1st floor area | Energy efficient items: | |
| Effective age (yrs.) | 15-20 | *Complies with the HUD Manufactured Housing Construction and Safety Standards.) | | Basement finish | Unfinished | Insulated Windows | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrms. | # Baths | Laundry | Other | Sq. ft./Area | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | 1 | 1 | | | 2 | 1 | | | 704 | 704 |
| 1 | 1 | | 1 | 1 | 1 | | | 2 | 1 | | | 704 | 704 |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Improvements contain **10** Rooms; **4** Bedroom(s); **2** Bath(s); **1,408** Square feet of GROSS BUILDING AREA

**GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.**

| Surfaces | (Materials/condition) | Heating | | Kitchen equip. (#/unit-cond.) | | Attic | | Car Storage | No. Cars |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood/Avg | Type | Steam | Refrigerator | 2/Avg | ☒ None | | Garage | |
| Walls | Drywall/Avg | Fuel | Gas | Range/oven | 2/Avg | Stairs | | Carport | |
| Trim/finish | Wood/Avg | Condition | Average | Disposal | | Drop stair | | Attached | |
| Bath floor | Lino/Avg | | | Dishwasher | ✓ | Scuttle | | Detached | |
| Bath wainscot | Fiberglass/Avg | Cooling | | Fan/hood | 2/Avg | Floor | | Adequate | |
| Doors | Wooden/Avg | Central | No | Compactor | | Heated | | Inadequate | |
| | All of the above | Other | No | Washer/dry | | Finished | | Offstreet | |
| | are in Avg Cond | Condition | N/A | Microwave | | Unfinished | | None | ☒ |
| Fireplace(s) # | 0 | | | Intercom | | | | | |

Condition of the improvements, repairs needed, quality of construction, additional features, modernization, etc.: **Subject has view of The Atlantic Ocean. Porch in Front. Terrace on second floor.**

Depreciation (physical, functional, and external inadequacies, etc.): **The subject property was in average condition for it's neighborhood at the time of inspection. External obsolescence: none noted. Functional obsolescence: none noted. Repairs/Modernization: none noted. The subject's construction quality was average.**

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: **Please see the attached Statement of Limiting Conditions.**

## VALUATION ANALYSIS

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED SITE VALUE ........................... = $ | | 610,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square feet calculation and, for HUD and VA, the estimated remaining economic life of the property): | | |
| ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS: | | | | | |
| 1,408 Sq.Ft. @ $ 85 = $ | | 119,680 | **See attached floor plan & calculations addendum.** | | |
| Base 704 Sq.Ft. @ $ 20 = $ | | 14,080 | | | |
| _____ Sq.Ft. @ $ _____ = $ | | | **Physical depreciation was calculated using the economic age-life method.** | | |
| _____ Sq.Ft. @ $ _____ = $ | | | | | |
| _____ Sq.Ft. @ $ _____ = $ | | | **There was no functional or external obsolescence noted at time of inspection.** | | |
| _____ = $ | | | | | |
| _____ = $ | | | **The land value ratio is typical for the area and does not impede marketability.** | | |
| _____ = $ | | | | | |
| Special Energy Efficient Items None = $ | | | | | |
| Porches, Patios, etc. Porch, Terrace = $ | | 5,000 | | | |
| Total Estimated Cost New = $ | | 138,760 | | | |

| | Physical | Functional | External | |
|---|---|---|---|---|
| Less | 25% | | | |
| Depreciation | 34,690 | | | = $ 34,690 |

| | | |
|---|---|---|
| Depreciated Value of Improvements ........................... = $ | | 104,070 |
| "As is" Value of Site Improvements ........................... = $ | | 12,000 |
| INDICATED VALUE BY COST APPROACH ........................... = $ | | 176,070 |

SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data; therefore, the rental comparables typically are not the same comparables used in the sales comparison analyses.) The appraisal report should assure the reader that the units and properties selected as comparables to the subject property (both the units and the overall property) and accurately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 145 Beach 96th Street Far Rockaway | 431 Beach 63 Street Far Rockaway | 427 Beach 66 Street Far Rockaway | 6312 Beach Channel Dr Far Rockaway |
| Proximity to subject | | 1/2 Mile East | 1/2 Mile East | 1/2 Mile East |
| Lease date (if available) | See Below | No Leases | No Leases | No Leases |
| Rent survey date | Appr. Date | Appr. Date | Appr. Date | Appr. Date |
| Data source | Inspection | Office Files | Office Files | Office Files |
| Rent concessions | None Noted | None Noted | None Noted | None Noted |
| Description of property—area, design, appeal, age, vacancies, and conditions | # Units 2  # Vac. 2  Yr. Blt. 1930 | # Units 2  # Vac. 2  Yr. Blt. 1940 | # Units 2  # Vac. 2  Yr. Blt. 1920 | # Units 2  # Vac. 2  Yr. Blt. 1940 |
| | 2 Family | 2 Family | 2 Family | 2 Family |
| | Frame | Frame | Frame | Frame |
| | Avg. Appeal | Avg. Appeal | Avg. Appeal | Avg. Appeal |
| | Detached | Detached | Detached | Detached |

| Individual unit breakdown | Rm. Count | | | Size Sq.Ft. | | Rm. Count | | | Size Sq.Ft. | Total Monthly Rent | Rm. Count | | | Size Sq.Ft. | Total Monthly Rent | Rm. Count | | | Size Sq.Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | | |
| | 5 | 2 | 1 | 704 | | 5 | 2 | 1 | 882 | 850 | 4 | 2 | 1 | 710 | 750 | 4 | 2 | 1 | 880 | 800 |
| | 5 | 2 | 1 | 704 | | 5 | 2 | 1 | 882 | 850 | 4 | 2 | 1 | 710 | 750 | 4 | 2 | 1 | 880 | 800 |

| Utilities, furniture and amenities included in rent | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished | Heat Sewer Water Avg. Amenities Unfurnished |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Avg Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling | Avg Functionally Average Utility Individ Cooling |

Analyses of rental data and support for estimated market rents for the individual subject units including the adjustments used, the adequacy of comparables, rental concessions, etc.:

All rentals are considered to be similar in appeal and marketability. Rental comparables support the estimated market rents for the subject property. Most two family dwellings in this area are owner/tenant occupied. Therefore all rental comparables reflect owner/tenant rents and do not reflect their full income producing potential.

Subject's rent schedule   The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics of the comparable sales to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date | | No. Units Vacant | Per Unit | | Total Rents | Per Unit | | Total Rents |
| | Begin | End | | Unfurnished | Furnished | | Unfurnished | Furnished | |
| 1 | Vacant | | | Vacant | | | 750 | | 750 |
| 1 | Vacant | | | Vacant | | | 750 | | 750 |
| | | | | | | | | | |
| | | | | | | | | | 1,500 |

Other monthly income (itemize):

Vacancy: Actual last year  0 %  Previous year  0 %  Estimated:  2 %  x  360 Annually  Total gross estimated rent  1,500

Utilities included in estimated rents:  ☐ Electric  ☒ Water  ☒ Sewer  ☐ Gas  ☐ Oil  ☒ Trash Collection  ☐

Comments on rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rents, utilities, etc.): The subject's estimated rents are based on the rental comparables listed above. Note: These rents are typical of the demand for housing in or near major employment centers.

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The undersigned has reviewed three recent sales of properties most similar and proximate to the subject property and has described and analyzed those in this analysis. If there is a significant variation between the subject and comparable properties, the analysis includes a dollar adjustment reflecting the market reaction to those items of an explanation supported by the market data. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the adjusted sales price of the comparable; if a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the adjusted sales Price of the comparable property. (C) Sales Price  +  Gross Monthly Rent)

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 145 Beach 96th Street | 6923 Decosta Avenue | 1420 E Mott Avenue | 3001 Seagirt Avenue |
| | Far Rockaway | Far Rockaway | Far Rockaway | Far Rockaway |
| Proximity to subject | | 1/2 Mile NE | 3/4 Mile NE | 1/2 Mile NE |
| Sales price | $ 175,000 | $ 150,000 | $ 185,000 | $ 174,000 |
| Sales price per GBA | $ 124.29 | $ 83.33 | $ 91.40 | $ 87 |
| Gross monthly rent | $ 1,500 | $ 1,200 | $ 1,600 | $ 1,500 |
| Gross rent mult.mult.(1) | 116 | 125 | 115.6 | 116 |
| Sales price per unit | $ 87,500 | $ 75,000 | $ 92,500 | $ 87,000 |
| Sales price per room | $ 17,500 | $ 18,750 | $ 15,416 | $ 14,500 |
| Data and/or | Inspection | Comps Inc | Comps Inc | Comps Inc |
| Verification Sources | | Closed | Closed | Closed |

| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing concessions | | Unknown | | FHA | | FHA | |
| | | None Noted | | None Noted | | None Noted | |
| Date of sale/time | | 5/96 | | 9/96 | | 7/96 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 21x65/Avg | 30x100/Avg | | 34x93/Avg | | 32x100/Avg | |
| View | Waterview | Average | 15,000 | Average | 15,000 | Average | 15,000 |
| Design and appeal | Colonial/Det | Colonial/SD | 5,000 | Colonial/Det | | Colonial/Det | |
| Quality of construction | Frame/Avg | Brk/Frm/Avg | -2,500 | Frame/Avg | | Frame/Avg | |
| Age | 67 | 57 | | 47 | | 47 | |
| Condition | Average | Average | | Average | | Average | |
| Gross Building Area | 1,408 Sq.ft. | 1,800 Sq.ft. | -6,000 | 2,024 Sq.ft. | -9,000 | 2,000 Sq.ft. | -9,000 |

| Unit breakdown | No. units | Rm. count Tot Br Bath | No. Vac | No. units | Rm. count Tot Br Bath | No. Vac | | No. units | Rm. count Tot Br Bath | No. Vac | | No. units | Rm. count Tot Br Bath | No. Vac |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 5 | 2 1 | 1 | 1 3 | 1 1 | 0 | | 1 6 | 1.5 0 | -1,500 | 1 6 | 1 0 | |
| | 1 5 | 2 1 | 1 | 1 5 | 1.5 0 | -1,500 | | 1 6 | 1.5 0 | 1,500 | 1 6 | 1 0 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basement description | Full-Unfinish | Full-Finish | -2,500 | Full-Finish | -2,500 | Full-Finish | -2,500 |
| Functional utility | Average | Average | | Average | | Average | |
| Heating/cooling | Steam/None | Steam/None | | Steam/None | | Steam/None | |
| Parking on/off site | None | 1 Car | -4,000 | 1 Car | -4,000 | 1 Car | -4,000 |
| Project amenities & fee (if applicable) | Average Amenities | Average Amenities | | Average Amenities | | Average Amenities | |
| Net Adj. (total) | | + 3,500 | | - 500 | | - 500 | |
| Adjusted sales price of comparable | | $ 153,500 | | $ 184,500 | | $ 173,500 | |

Comments on sales comparison (including reconciliation of all indicators of value as to commonality and relative strength and evaluation of the typical investor's/purchaser's motivation in that market) The GLA was adjusted at $15 per square foot. All comparables were adjusted for having inferior view. Although comparable 1 exceeds the 6 month guideline it was utilized due to its proximity, similar appeal and stable market conditions in last 1 year.

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | None | None | None | None |
| Source for prior sales within year of appraisal | Public Record | Public Record | Public Record | Public Record |

Analysis of any current agreements of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of date of appraisal: There are no further comments as neither the subject property nor the comparable sales are noted to have sold within the past year or are currently listed for sale.

Total gross monthly estimated rent $ 1,500 _____ X gross rent multiplier (GRM) 117 _____ = $ 175,500 INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including expense ratios, if available, and reconciliation of the GRM) The income approach is a good indicator of value for rental properties in this market.

INDICATED VALUE BY SALES COMPARISON APPROACH ........................................ $ 175,000
INDICATED VALUE BY INCOME APPROACH ..................................................... $ 175,500
INDICATED VALUE BY COST APPROACH ...................................................... $ 176,070

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections, or conditions listed below ☐ subject to completion per plans and specifications.

Comments and conditions of appraisal: This appraisal is for mortgage lending purposes. All contingencies and limiting conditions apply. Personal property was not included in the appraised value.

Final reconciliation: Although all three approaches to value have been considered in this report, most emphasis has been placed on the sales comparison approach as it best reflects the actions of buyers and sellers in the market place.

The purpose of this appraisal is to estimate the market value of the real property this is the subject of the report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF January 28, 1997 WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 175,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature |
| Name Michael Palmieri | Name |
| Date Report Signed January 28, 1997 | Date Report Signed |
| State Certification # 45000012890 State NY | State Certification # State |
| Or State License # State | Or State License # State |
| | ☐ Did ☐ Did Not Inspect Property |

## SKETCH/AREA TABLE ADDENDUM

| | | | | File No. 97000041 |
|---|---|---|---|---|
| Property Address | 145 Beach 96th Street | | | |
| City Far Rockaway | State NY | County Queens | | Zip Code 11693 |
| Borrower Sanchez | | | | |
| Lender/Client Interstate Resources | | | | |



1st Floor               2nd Floor

SCALE: 1 inch = 15.00 feet

| AREA CALCULATIONS SUMMARY | | | | | LIVING AREA CALCULATIONS | | | |
|---|---|---|---|---|---|---|---|---|
| Area | Name of Area | Size | Totals | | Breakdown | | | Subtotals |
| GLA1 | First Floor | 704.00 | 704.00 | | 16.00 | x | 44.00 | 704.00 |
| GLA2 | Second Floor | 704.00 | 704.00 | | 16.00 | x | 44.00 | 704.00 |

| TOTAL LIVABLE (rounded) | 1408 | | 1408 |
|---|---|---|---|

# OPERATING INCOME STATEMENT
## One-to Four-Family Investment Property and Two-to Four-Family Owner-Occupied Property

Property Address
**145 Beach 96th Street**          **Far Rockavay**          **NY**                    **11693**
Street                            City                      State                     Zip Code

**General Instructions:** This form is to be prepared jointly by the loan applicant, the appraiser, and lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an unfurnished unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1  Yes ☐ No ☒ | | Vacant | $_____ | $750 | Electricity......... | ☐ | ☒ |
| Unit No. 2  Yes ☐ No ☒ | | Vacant | $_____ | $750 | Gas .............. | ☐ | ☒ |
| Unit No. 3  Yes ☐ No ☐ | | | $_____ | $_____ | Fuel Oil .......... | ☐ | ☐ |
| Unit No. 4  Yes ☐ No ☐ | | | $_____ | $_____ | Fuel (Other) ...... | ☒ | ☐ |
| | | | | | Water/Sewer ...... | ☒ | ☐ |
| Total ................................ | | | $_____ | $1,500 | Trash Removal ..... | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided ). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item). Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

## Annual Income and Expense Projection for Next 12 Months

| Income  (Do not include income for owner-occupied units) | By Applicant/Appraiser | | Adjustments by Lender's Underwriter | |
|---|---|---|---|---|
| Gross Annual Rental (from unit(s) to be rented)................ | $18,000 | | $_____ | |
| Other Income (include sources) ........................... | +_____ | | +_____ | |
| Total ............................................... | $18,000 | | $_____ | |
| Less Vacancy/Rent Loss .................................. | -360 | (2 %) | _____ | ( %) |
| Effective Gross Income.................................. | $17,640 | | $_____ | |
| **Expenses** (Do not include expenses for owner-occupied units) | | | | |
| Electricity .............................................. | 500 | | _____ | |
| Gas ................................................... | | | _____ | |
| Fuel Oil ............................................... | | | _____ | |
| Fuel ...................... (Type · Gas          ) | 1,500 | | _____ | |
| Water/Sewer ........................................... | 800 | | _____ | |
| Trash Removal ......................................... | | | _____ | |
| Pest Control ........................................... | 100 | | _____ | |
| Other Taxes or Licenses ................................. | | | _____ | |
| Casual Labor .......................................... | 250 | | _____ | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | | | |
| Interior Paint/Decorating ................................. | 250 | | _____ | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | | | |
| General Repairs/Maintenance ............................. | 250 | | _____ | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | | | |
| Management Expenses .................................. | | | _____ | |
| These are the customary expenses that a professional management company would charge to manage the property. | | | | |
| Supplies .............................................. | | | _____ | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | | | |
| Total Replacement Reserves - See Schedule on Pg. 2 ................ | 478 | | _____ | |
| Miscellaneous  Insurance ............................... | 1,200 | | _____ | |
| ...................................................... | | | _____ | |
| ...................................................... | | | _____ | |
| ...................................................... | | | _____ | |
| ...................................................... | | | _____ | |
| ...................................................... | | | _____ | |
| ...................................................... | | | _____ | |
| **Total Operating Expenses .....................** | $5,328 | | $_____ | |

## REPLACEMENT RE___VE SCHEDULE

Adequate' replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.- should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | Remaining Life | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|
| Stoves/Ranges .... ● | $500 | ea. ÷ 10 | Yrs. x 2 | Units = | $100 | $ |
| Refrigerators .... ● | $500 | ea. ÷ 10 | Yrs. x 2 | Units = | $100 | $ |
| Dishwashers .... ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| A/C Units........ ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| C. Washer/Dryers .. ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| HW Heaters ...... ● | $800 | ea. ÷ 15 | Yrs. x 1 | Units = | $53.33 | $ |
| Furnace(s)........ ● | $2500 | ea. ÷ 20 | Yrs. x 1 | Units = | $125 | $ |
| (Other) .......... ● | $ | ea. ÷ | Yrs. x | Units = | $ | $ |
| Roof............ ● | $2000 | ÷ 20 | Yrs. x One Bldg............ = | | $100 | $ |

Carpeting (Wall to Wall)                               ~Remaining Life

| | | | | | | |
|---|---|---|---|---|---|---|
| (Units) | ____ Total Sq. Yds. @ $ ____ | Per Sq. Yd. ÷ ____ | Yrs. = | $ | | $ |
| (Public Areas) | ____ Total Sq. Yds. @ $ ____ | Per Sq. Yd. ÷ ____ | Yrs. = | $ | | $ |

Total Replacement Reserves. (Enter on Pg. 1)                    $478          $

## OPERATING INCOME RECONCILIATION

$ 17.640          – $ 5.328          = $ 12.312          ÷ 12 = $ 1.026
Effective Gross Income    Total Operating Expenses    Operating Income    Monthly Operating Income

$ 1.026          – $ ____          = $ 1.026
Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's instructions for 2-4 Family Owner-Occupied Properties

■  If Monthly Operating Income is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

■  The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's instructions for 1-4 Family Investment Properties

■  If Net Cash Flow is a positive number, enter as 'Net Rental Income' in the 'Gross Monthly Income' section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

■  The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (including sources for data and rationale for the projections)
The reported income and expenses are in accordance with normal expectations for a dwelling the size, age and condition as the subject.

Michael Palmieri                                             January 28, 1997
Appraiser Name                     Appraiser Signature                     Date
Underwriter's Comments and Rationale for Adjustments

Underwriter Name                   Underwriter Signature                   Date

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and -roximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when ppropriate-to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is super- 'r to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comp- rable, and if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a pos- ive adjustment to increase the adjusted sales price of the comparable.

.. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the ppraisal report. I have not knowingly withheld any significant information from the appraisal report, and I believe, to the best of my nowledge, that all statements and information in the appraisal report are true and correct.

'. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are sub- :et only to the contingent and limiting conditions specified in this form.

. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective per- :onal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis nd/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin f either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the :inity of the subject property.

. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my ompensation for performing this appraisal is contingent on the appraised value of the property.

. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, 1e amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my ompensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a ipecific valuation, or the need to approve a specific mortgage loan.

.I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and pro- iulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, ith the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reason- ile time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent ith the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as compar- les in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, 1 the subject site,or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments r these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also :mmented about the effect of the adverse conditions on the marketability of the subject property.

. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on sig- 'icant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal 2ort, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal 2ort. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any m in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**JPERVISORY APPRAISER'S CERTIFICATION:**   If a supervisory appraiser signed the appraiser report, he or she certifies d agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with 1 statements and conclusions of the appraiser, agree to be bound by the Appraiser's Certifications numbered 4 through 7 above, and : taking full responsibility for the appraisal and the appraisal report.

DDRESS OF PROPERTY APPRAISED:    Beach 96th Street, Far Rockaway

PPRAISER:

| | SUPERVISORY APPRAISER (only if required): |
|---|---|
| :nature: | Signature: |
| me: Michael Palmieri | Name: |
| te Signed: January 28, 1997 | Date Signed: |
| ıte Certification No.: 45000012890 | State Certification No.: |
| State License No.: | or State License No.: |
| ıte: New York | State: |
| :iration Date of Certification or License: 01/20/99 | Expiration Date of Certification or License: |
| | ☐ Did  ☐ Did Not Inspect the Property |

COMPARABLES

Borrower/Client Sanchez
Property Address Beach 9th Street
City Far Rockaway          County Queens          State NY          Zip Code 11693
Lender Interstate Resources
File No. 97000041



Comparable Sale 1
6923 Decosta Ave
Far Rockaway
SP$ - $150,000
Sale Date -5/96



Comparable Sale 2
1420 E Mott Ave
Far Rockaway
SP$ - $185,000
Sale Date -9/96



Comparable Sale 3
3001 Seagirt Ave
Far Rockaway
SP$ - $174,000
Sale Date -7/96

EXTERIOR OF SUBJECT

| | |
|---|---|
| Borrower/Client Sanche | |
| Property Address 145 Beach 96th Street | |
| City Far Rockaway | County Queens | State NY | Zip Code 11693 |
| Lender Interstate Resources | |

File No. 97000041



**FRONT**



**REAR**



**STREET SCENE**



# EXHIBIT C



**IMC MORTGAGE COMPANY** ®

5901 East Fowler Avenue
Tampa, FL 33617-2362
phone (813) 984-2551
(800) 776-2211
fax    (813) 984-2544

e-mail bmelone@imcmtg.com

June 9, 2000

Mr. Jim Ludlow                                            Via FedEx
Interstate Resources Corp.
254 Rt 17K
Newburgh  NY  12550

Re:    Notice of Default and Demand for Repurchase

Dear Mr. Ludlow:

Pursuant to the terms of the Master Agreement for Sale and Purchase of Mortgages dated November 18, 1996, as amended (the "Agreement"), between Interstate Resources Corp. (the "Seller") and IMC Mortgage Company, a Florida corporation, as successor in interest to Industry Mortgage Company, L.P. ("Buyer"), the Buyer purchased from the Seller certain mortgage loans identified below (the "Mortgage Loans"). All capitalized terms not defined herein shall have the meaning given to them in the Agreement.  The Mortgage Loans are more fully described as follows:

| Borrower/IMC Loan No. | Address | Original AV ($) | Review AV ($) | Variance (%)/ Premium ($) |
|---|---|---|---|---|
| Cruz/576355 | 151 Beach 96th St Rockaway NY | 160,000 | 30,000 | 81 / 7808.00 |
| Cruz/526806 | 152 Beach 96th St Rockaway NY | 160,000 | 50,000 | 69 / 7840.00 |
| Cruz/574004 | 150 Beach 96th St Rockaway NY | 160,000 | 50,000 | 69 / 7840.00 |
| Farin/722165 | 142-144 Bch 96th Rockaway NY | 205,000 | 140,000 | 32 / 7705.65 |
| Cohen/526772 | 146 Beach 96th St Rockaway NY | 175,000 | 50,000 | 71 / 8540.00 |
| Sanchez/526756 | 145 Beach 96th St Rockaway NY | 175,000 | 160,000 | 10 / 8540.00 |

Jim Ludlow
06/06/00
Page 2 of 3

This letter is the Buyer's notice of default and demand for repurchase of the Mortgage Loans pursuant to Article VI, Paragraph F of the Agreement. The review appraisals confirmed that the original appraisals relied upon by the Buyer were fraudulent. As noted above, each of the review appraisals indicates a disparity in value in excess of the threshold provided in the Agreement. Copies of the original appraisals and the Buyer's review appraisals are enclosed.

Additionally, each of these loans has been the subject of fraud being investigated by the FBI. Moreover, the loan documents contain irregularities with respect to the legal description of the subject properties so severe that the respective Mortgages can not be foreclosed or the properties remarketed.

Enclosed is a Payoff Statement for each Mortgage Loan detailing the Buy Back Price. Please tender the **Buy Back Price plus the Premiums** indicated above in the total aggregate amount of **$1,107,015.85** within ten(10) days after receipt of this notice.

The Buy Back Price may be wired to:

SunTrust Bank, Tampa Bay
ABA# 063 106 569
Account # 003 202 39 3932
For the Benefit of IMC Mortgage Company
Attention: Richard Davenport

The Buyer reserves all of its rights against the Seller under the Agreement or otherwise, including but not limited to indemnification for "Loss", as defined in the Agreement.

Very truly yours,

Robert F. Melone
Vice President and General Counsel

Enc

Cc:    Dennis Pitocco
       Richard Davenport



**citi financial**
Mortgage Company

5901 East Fowler Avenue
Tampa, Florida 33617

June 05, 2000

TO: Bob Melone
    Jose Cruz
    3752 89th St #5b
    Jackson Heights, NY 11372

RE: 0000576355
    Jose Cruz
    151 Bch 96th St
    Rockaway Beach NY 11694

```
        *****************************************************
        *        ONLY WIRES OR CERTIFIED FUNDS WILL BE        *
        *               ACCEPTED FOR PAYOFF                   *
        *****************************************************
```

These figures are valid until June 30, 2000.
This loan is due for the January 26, 1998 payment.

| | |
|---|---:|
| The current total unpaid Principal Balance is: | $ ` 111,092.43 |
| Interest due from extension | 1,134.07 |
| Costs Advanced by CFMC | 4,339.55 |
| Interest at 12.25000% | 34,171.24 |
| Escrow/Impound Overdraft | 2,556.00 |
| Suspense Balance | -600.00 |
| Payoff Recording Fee | 27.00 |
| Legal Fees | 2,000.00 |
| Prep/Fax Fee | 15.00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $ | 154,735.29 |

Funds received on or after June 30, 2000 will require an additional
$ 37.28 interest per Day.

Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due. A late charge of $.00 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

           CitiFinancial Mortgage Company C/O AmSouth Bank
                    Payment Clearing Account
                 (Customer's Name and Account Number)
         (Please reference your Company Name and Phone Number)
                    ABA/Routing Number 062000019
                    Account Number 7966006651



**citifinancial**
**Mortgage Company**

These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Jose Cruz /0000576355
XP011-023/LA4



Please provide the following information to expedite the satisfaction/
release process.

Mortgage Information:                    Assignment Information:
Date Recorded:_____    Dated _____ Recorded_____
Book/Liber:_____ Page:_____    Book/Liber:_____ Page_____
Document:_____ County:_____    Document_____
Customer Forwarding Address (if applicable):_____

                                         Page 2 of 2


**citi financial**
**Mortgage Company**

5901 East Fowler Avenue
Tampa, Florida 33617

June 05, 2000

TO: Bob Melone
    Jose Cruz
    152 Bch 96th St
    Far Rockaway, NY 11693

RE: 0000526806
    Jose Cruz
    152 Bch 96th St
    Far Rockaway NY 11693

```
         ************************************************
         *      ONLY WIRES OR CERTIFIED FUNDS WILL BE    *
         *            ACCEPTED FOR PAYOFF                *
         ************************************************
```

These figures are valid until June 30, 2000.
This loan is due for the January 14, 1998 payment.

| | | |
|---|---|---|
| The current total unpaid Principal Balance is: | $ | 126,996.57 |
| Interest due from extension | | 2,653.68 |
| Costs Advanced by CFMC | | 2,762.75 |
| Interest at 12.50000% | | 40,382.27 |
| Escrow/Impound Overdraft | | 4,520.15 |
| Suspense Balance | | -600.00 |
| Unpaid Late Charges | | 581.80 |
| Payoff Recording Fee | | 27.00 |
| Legal Fees | | 2,000.00 |
| Prep/Fax Fee | | 30.00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * | $ | 179,354.22 |

Funds received on or after June 30, 2000 will require an additional
$ 43.49 interest per Day.

Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due. A late charge of $ 29.09 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

```
         CitiFinancial Mortgage Company C/O AmSouth Bank
                    Payment Clearing Account
                 (Customer's Name and Account Number)
            (Please reference your Company Name and Phone Number)
                     ABA/Routing Number 062000019
                      Account Number 7966006651
```


**Mortgage Company**

These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Jose Cruz /0000526806
XP011-023/LA4



Please provide the following information to expedite the satisfaction/
release process.

Mortgage Information:                   Assignment Information:
Date Recorded:_____         Dated_|_____  Recorded_____
Book/Liber:_____  Page:_____   Book/Liber:_____  Page_____
Document:_____  County:_____   Document_____

Customer Forwarding Address (if applicable):_____


**Mortgage Company**

                                    5901 East Fowler Avenue
                                    Tampa, Florida 33617

June 05, 2000


TO: Bob Melone
    Jose Cruz
    3752 89th St #5b
    Jackson Heights, NY 11372

RE: 0000574004
    Jose Cruz
    150 Bch 96th St
    Rockaway Beach NY 11694

```
*************************************************
*       ONLY WIRES OR CERTIFIED FUNDS WILL BE      *
*            ACCEPTED FOR PAYOFF                    *
*************************************************
```
These figures are valid until June 30, 2000.
This loan is due for the January 11, 1998 payment.
The current total unpaid Principal Balance is:      $     110,637.83
Interest due from extension                                1,231.89
Costs Advanced by CFMC                                       975.00
Interest at 12.25000%                                     34,588.40
Escrow/Impound Overdraft                                   2,544.00
Suspense Balance                                            -150.00
Payoff Recording Fee                                         27.00
Legal Fees                                                2,000.00
Prep/Fax Fee                                                 30.00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * *   $    151,884.12

Funds received on or after June 30, 2000 will require an additional
$ 37.13 interest per Day.


Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $.00 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

            CitiFinancial Mortgage Company C/O AmSouth Bank
                    Payment Clearing Account
                (Customer's Name and Account Number)
            (Please reference your Company Name and Phone Number)
                    ABA/Routing Number 062000019
                    Account Number 7966006651
                                            Page 1 of 2
```


**citifinancial**
**Mortgage Company**

These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Jose Cruz /0000574004
XP011-023/LA4



Please provide the following information to expedite the satisfaction/
release process.

Mortgage Information:                    Assignment Information:
Date Recorded:_____           Dated_____ Recorded_____
Book/Liber:_____ Page:_____      Book/Liber:_____ Page_____
Document:_____ County:_____     Document_____

Customer Forwarding Address (if applicable):_____

                                                    **Page 2 of 2**



**citi** financial
Mortgage Company

5901 East Fowler Avenue
Tampa, Florida 33617

June 05, 2000

TO: Bob Melone
    Udi Farin
    142-144 Bch 96th St.
    Far Rockaway, NY 11693

RE: 0000722165
    Udi Farin
    142 -144 Bch 96th S
    Far Rockaway NY 11693

```
*****************************************************
*       ONLY WIRES OR CERTIFIED FUNDS WILL BE       *
*             ACCEPTED FOR PAYOFF                    *
*****************************************************
```
These figures are valid until June 30, 2000.
This loan is due for the October 14, 1998 payment.
The current total unpaid Principal Balance is:          $     160,583.52
Interest due from extension                                     3,105.99
Costs Advanced by CFMC                                          1,095.10
Interest at 11.50000%                                          33,127.05
Escrow/Impound Overdraft                                        3,883.07
Unpaid Late Charges                                               664.62
Payoff Recording Fee                                              27.00
Legal Fees                                                     2,000.00
Prep/Fax Fee                                                      15.00
* * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * *      $     204,501.35

Funds received on or after June 30, 2000 will require an additional
$ 50.59 interest per Day.


Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $ 34.98 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

              CitiFinancial Mortgage Company C/O AmSouth Bank
                     Payment Clearing Account
                  (Customer's Name and Account Number)
          (Please reference your Company Name and Phone Number)
                 ABA/Routing Number 062000019
                   Account Number 7966006651
                                                    Page 1 of 2
```



citi financial
Mortgage Company

These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Udi Farin /0000722165
XP011-023/LA4


Please provide the following information to expedite the satisfaction/
release process.

Mortgage Information:                    Assignment Information:
Date Recorded:_____    Dated_____ Recorded_____
Book/Liber:_____ Page:_____     Book/Liber:_____ Page_____
Document:_____ County:_____     Document_____

Customer Forwarding Address (if applicable):_____

                                              **Page 2 of 2**



**Mortgage Company**

5901 East Fowler Avenue
Tampa, Florida 33617

June 05, 2000

TO: Bob Melone
Eyal Cohen
146 Bch 96th St
Far Rockaway, NY 11693

RE: 0000526772
Eyal Cohen
146 Bch 96th St
Far Rockaway NY 11693

```
**************************************************
*        ONLY WIRES OR CERTIFIED FUNDS WILL BE        *
*             ACCEPTED FOR PAYOFF                     *
**************************************************
```

These figures are valid until June 30, 2000.
This loan is due for the January 14, 1998 payment.

| | | |
|---|---|---|
| The current total unpaid Principal Balance is: | $ | 138,608.28 |
| Interest due from extension | | 1,338.60 |
| Costs Advanced by CFMC | | 2,734.05 |
| Interest at 11.50000% | | 40,548.64 |
| Escrow/Impound Overdraft | | 4,934.47 |
| Suspense Balance | | -450.00 |
| Unpaid Late Charges | | 597.20 |
| Payoff Recording Fee | | 27.00 |
| Legal Fees | | 2,000.00 |
| Prep/Fax Fee | | 30.00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * | $ | 190,368.24 |

Funds received on or after June 30, 2000 will require an additional
$ 43.67 interest per Day.

Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $ 29.86 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

CitiFinancial Mortgage Company C/O AmSouth Bank
Payment Clearing Account
(Customer's Name and Account Number)
(Please reference your Company Name and Phone Number)
ABA/Routing Number 062000019
Account Number 7966006651



These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Eyal Cohen /0000526772
XP011-023/LA4



Please provide the following information to expedite the satisfaction/
release process.

Mortgage Information:                    Assignment Information:
Date Recorded:_____          Dated_,_____ Recorded_____
Book/Liber:_____ Page:_____     Book/Liber:_____ Page_____
Document:_____ County:_____       Document_____

Customer Forwarding Address (if applicable):_____

                                         Page 2 of 2



## citi financial
### Mortgage Company

5901 East Fowler Avenue
Tampa, Florida 33617

June 05, 2000

TO: Bob Melone
    Mariana Sanchez
    145 Bch 96th St.
    Far Rockaway, NY 11693

RE: 0000526756
    Mariana Sanchez
    145 Bch 96th St
    Far Rockaway NY 11693

```
***************************************************
*     ONLY WIRES OR CERTIFIED FUNDS WILL BE        *
*          ACCEPTED FOR PAYOFF                     *
***************************************************
```

These figures are valid until June 30, 2000.
This loan is due for the October 14, 1998 payment.

| | |
|---|---:|
| The current total unpaid Principal Balance is: | $ 136,900.04 |
| Interest due from extension | 4,181.70 |
| Costs Advanced by CFMC | 2,778.85 |
| Interest at 11.99000% | 29,444.59 |
| Escrow/Impound Overdraft | 2,561.56 |
| Suspense Balance | -624.96 |
| Unpaid Late Charges | 616.20 |
| Payoff Recording Fee | 27.00 |
| Legal Fees | 2,000.00 |
| Prep/Fax Fee | 15.00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * | $ 177,899.98 |

Funds received on or after June 30, 2000 will require an additional
$ 44.97 interest per Day.


Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $ 30.81 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.

Certified payoff funds may be forwarded via mail to the address above or
bank wire using the instructions below.

        CitiFinancial Mortgage Company C/O AmSouth Bank
                 Payment Clearing Account
             (Customer's Name and Account Number)
       (Please reference your Company Name and Phone Number)
               ABA/Routing Number 062000019
               Account Number 7966006651



**Mortgage Company**

These figures are subject to final verification by the noteholder.
Figures may be adjusted if any check/money order previously received
is rejected by the institution upon which it was drawn.  We make every
effort to provide accurate payoff figures, however, this payoff letter
is provided as a courtesy only.

WE RESERVE THE RIGHT TO COLLECT ADDITIONAL OR OTHER AMOUNTS DUE SHOULD
THE AMOUNTS SHOWN IN THIS LETTER BE INACCURATE OR INCOMPLETE.

If an updated report is needed after the demand date as shown there
will be a $15.00 update fee.


Customer Service Department

Mariana Sanchez /0000526756
XP011-023/LA4



Please provide the following information to expedite the satisfaction/
release process.

| Mortgage Information: | Assignment Information: |
|---|---|
| Date Recorded:_____ | Dated_____ Recorded_____ |
| Book/Liber:_____ Page:_____ | Book/Liber:_____ Page_____ |
| Document:_____ County:_____ | Document_____ |

Customer Forwarding Address (if applicable):_____

                                                    Page 2 of 2